MATTHEW T. HEARTNEY (Bar No. 123516)
matthew.heartney@arnoldporter.com
DANIEL SHIMELL (Bar No. 300931)
daniel.shimell@arnoldporter.com
DANIA QAHOUSH (Bar No. 335202)
dania.qahoush@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000

RITU MAHAJAN (Bar No. 252970)
rmahajan@publiccounsel.org
SOPHIA L. WRENCH (Bar No. 354416)
swrench@publiccounsel.org
CASSIDY J. BENNETT (Bar No. 347811)*
cbennett@publiccounsel.org
ELIZABETH R. BROWN (Bar No. 360601)*
ebrown@pubclicounsel.org
JACOB MADDOX (Bar No. 354368)
jmaddox@publiccounsel.org
**PUBLIC COUNSEL**
610 South Ardmore
Los Angeles, CA 90005
Telephone: 213.385.2977

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| INLAND COALITION FOR IMMIGRANT JUSTICE, | Case No. 5:25-cv-2092 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| CITY OF FONTANA, CITY COUNCIL OF FONTANA, MAYOR ACQUANETTA WARREN, PHILLIP BURUM, FONTANA CODE COMPLIANCE DEPARTMENT, 4LEAF, INC., CRAIG TOLE, PETE ROQUE, | |
| Defendants. | |

*USDC Central District Admissions pending

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................1

JURISDICTION AND VENUE ............................................................4

PARTIES ..................................................................................4

FACTUAL ALLEGATIONS ...............................................................14

I.    California's Legalization of Sidewalk Vending and the City of Fontana's Imposition Of Unlawful Practices Violating Sidewalk Vendor Rights. ........14

    A.    California's Legislature Imposes Statewide Standards on Local Government Regulation of Sidewalk Vending: SB-946 and SB-972....................................................................................16

    B.    Responding to the State's Legislation, the City of Fontana Incorporates Unlawful Provisions into Its Vending Ordinance.............19

    C.    Unsatisfied with Its Ordinance's Results, the City Adopts a Further Vending Ordinance and Hires Private Personnel to Enforce Its Terms..................................................................................22

    D.    4Leaf And Its Personnel Unleashed a Widespread Campaign to Seize Vendors' Property, Coupled with Unlawful Harassment.............24

II.    The Violations of Law Committed by the City and 4Leaf Pursuant to the City's Sidewalk Vending Ordinances and Their Implementation. ...............25

    A.    The City's "Enforcement Obstruction Consequences" Provision Violates the First, Fifth, and Fourteenth  Amendments and Criminalizes Sidewalk Vendors.............................................26

    B.    The City's Impoundment Provisions and Their Implementation Violate the Fourth, Fifth and Fourteenth Amendments.......................29

    *Unlawful Seizures of Property Violating the Fourth and Fourteenth Amendments.* ......................................................................30

        1.    The City lacks lawful authority to impound sidewalk vendors' property under its Ordinance provisions. ............31

            a.    Or. 1925, § 15-829(b)(3) – no local sidewalk vending permit.................................................32

i

b.    Or. 1925, § 15-829(b)(1) – no County health permit. .......................................................................33

c.    Or. 1925, § 15-829(b)(2) -- seizure of unattended property. ..........................................................35

d.    Or. 1789, § 15-828 – seizure of vendor property as evidence. ..........................................................36

e.    The remaining City impoundment provisions. ...........36

(1)    Impoundment provisions dependent on other violations of the City's sidewalk vending Article -- Or. 1925, §§ 15-829 (b)(4), (5), (9) & (c)..............................................................37

(2)    Other impoundment provisions based on vendor conduct – Or. 1925, § 15-829(b) (6) & (8). ..............................................................38

2.    The Fourth Amendment reasonableness test weighs decisively in favor of sidewalk vendors and Plaintiff. ........40

*Unlawful Seizures Violating the Fifth and Fourteenth Amendments and Due Process.* ........................................................................42

3.    The City and 4Leaf Personnel Deprive Sidewalk Vendors of Due Process and a Notice and Opportunity to be Heard..................................................................43

C.    The City's Ordinances and Practices Are Barred by California's Statutory Framework for Sidewalk Vendors. ...........................45

FIRST CAUSE OF ACTION 42 U.S.C. § 1983 Violation of First, Fifth and Fourteenth Amendments (Against All Defendants) ........................49

SECOND CAUSE OF ACTION 42 U.S.C. § 1983 Violations of Fourth, Fifth and Fourteenth Amendments  (Against All Defendants)............................52

THIRD CAUSE OF ACTION SB-946 and SB-972 Preemption by State Law (Against All Defendants) ................................................................56

PRAYER FOR RELIEF ...............................................................58

---

ii

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

## <u>Cases</u>

*AE ex rel. Hernandez v. Cnty. of Tulare*,
    666 F.3d 631 (9th Cir. 2012) ........................................................51, 54

*Am. Fin. Servs. Ass'n v. City of Oakland*,
    34 Cal. 4th 1239 (2005) .................................................................*passim*

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal.
    Dep't of Transp.*,
    713 F.3d 1187 (9th Cir. 2013) ..............................................................11

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
    520 U.S. 397 (1997)........................................................................51, 54

*Brown v. Texas*,
    443 U.S. 47 (1979)..........................................................................38, 49

*California Rest. Ass'n v. City of Berkeley*,
    89 F.4th 1094 (9th Cir. 2024) .................................................................9

*Chevron U.S.A. Inc. v. County of Monterey*,
    15 Cal. 5th 135 (2023) ...................................................................48, 56

*City of Houston, Texas v. Hill*,
    482 U.S. 451 (1987).................................................................27, 28, 50

*Clement v. City of Glendale*,
    518 F.3d 1090 (9th Cir. 2008) ......................................................43, 53

*Coalition on Homelessness v. City & County of San Francisco*,
    758 F. Supp. 3d 1102 (N.D. Cal. 2024).......................................11, 12

*East Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) ...........................................................7, 8

*Eastlick v. City of Los Angeles*,
    29 Cal. 2d 661 (1947) ...........................................................................46

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) and (2) ........................................................7, 8, 9

*Florida v. Royer*,
    460 U.S. 491 (1983).................................................................38, 42, 49

*Fuentes v. Shevin*,
    407 U.S. 67 (1972)...........................................................29, 43, 44, 53

*Fund for Empowerment v. City of Phoenix*,
    646 F. Supp. 3d 1117 (D. Ariz. 2022 ).....................................30, 40, 42

*Ganwich v. Knapp*,
    319 F.3d 1115 (9th Cir. 2003) ..............................................................42

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)...............................................................................8

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977).........................................................8, 9, 11, 12

*In re Lane*,
    58 Cal. 2d 99 (1962) ...................................................................46, 47, 56

*Justin v. City of Los Angeles*,
    2000 WL 1808426 (C.D. Cal. Dec. 5, 2000).......................................30

*Kincaid v. City of Fresno*,
    2006 WL 3542732 (E.D. Cal. Dec. 8, 2006) ...................................35, 40

*Kolender v. Lawson*,
    461 U.S. 352 (1983)..........................................................27, 28, 29, 50

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2012) ..........................................30, 43, 49, 53

*Lavan v. City of Los Angeles*,
    797 F. Supp. 2d 1005 (C.D. Cal. 2011), *aff'd*, 693 F.3d 1022 (9th
    Cir. 2012) ...........................................................................30, 35, 40, 44

*Lewis v. City of New Orleans*,
    415 U.S. 130 (1974).........................................................27, 28, 50

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...............................................................................7

*Miranda v. City of Cornelius*,
    429 F.3d 858 (9th Cir. 2005) ................................................30, 31, 36

iv

*Nat'l Council of La Raza v. Cegavske,*
     800 F.3d 1032 (9th Cir. 2015) ..............................................8, 10, 11, 12

*Oregon Advoc. Ctr. v. Mink,*
     322 F.3d 1101 (9th Cir. 2003) .............................................................9

*Papachristou v. City of Jacksonville,*
     405 U.S. 156 (1972)...........................................................................28

*Santiago v. City of Los Angeles,*
     2016 WL 7176694 (C.D. Cal. Nov. 17, 2016) ..................................40

*Sherwin-Williams Co. v. City of Los Angeles,*
     4 Cal. 4th 893 (1993) ...................................................................*passim*

*Smith v. Goguen,*
     415 U.S. 566 (1974)..........................................................28, 29, 50

*Soldal v. Cook Cnty., Illinois,*
     506 U.S. 56 (1992)............................................................29, 30, 53

*United States v. Cervantes,*
     703 F.3d 1135 (9th Cir. 2012) ...........................................................36

*United States v. Jacobsen,*
     466 U.S. 109 (1984)...........................................................30, 31, 40

*United States v. James Daniel Good Real Property,*
     510 U.S. 43 (1993)............................................................................43

*United States v. Nordling,*
     804 F.2d 1466 (9th Cir. 1986) .........................................................35

*Vasquez Perdomo v. Noem,*
     __ F.4th __, No. 25-4312, 2025 WL 2181709 (9th Cir. Aug. 1, 2025) ...................................................................................................9, 11

*Water Quality Ass'n v. Cnty. of Santa Barbara,*
     44 Cal. App. 4th 732 (1996) ......................................................45, 56

## **Statutes**

28 U.S.C. §§ 1331 and 1343 ......................................................................4

28 U.S.C. § 1367 ........................................................................................4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

42 U.S.C. § 1983 ...................................................................................4, 52, 55

Cal. Gov't Code
    §§ 51036(a) ......................................................................................14
    §§ 51036 *et seq.* .................................................................................1
    § 51037(a) ....................................................................................16, 47
    § 51038(b) ....................................................................................17, 46
    § 51038(b), (c) ....................................................................................17
    § 51038(c) ..............................................................................2, 17, 21
    § 51038(c)(4) ....................................................................................32
    § 51039(a)(1) ..............................................................................*passim*
    § 51039(a)(3)(A) ................................................................................48
    § 51039(d)(1) ....................................................................................36
    § 51039(d)(1)-(2) ................................................................................48

Cal. Health & Safety Code
    Division 104, Part 7 ....................................................................18, 47
    § 113703 ..........................................................................................18
    § 113705 ....................................................................................18, 33
    §§ 113763, 113773 ............................................................................18
    § 113773 ....................................................................................18, 33
    §§ 113773 & 113774 ..........................................................................47
    §§ 113818, 113831, 113868 & ch. 11.7 ...............................................1
    § 113818(a) ......................................................................................19
    § 113831(c) ................................................................................18, 39
    § 114368.1(b)(2) ........................................................................19, 39
    § 114368.5(e) & (f) ............................................................................39
    § 114368.8(a), (c), (d) ........................................................................19
    § 114368.8(b) ....................................................................................48
    §114368.8 (c) & (d) ............................................................................34
    §114368.8 (d) & (e) ............................................................................33
    § 114393 ..........................................................................................34

Cal. Stat. ch. 459 (2017-2018 Reg. Sess.) ................................................16

Cal. Stat. ch. 489 (2021-2022 Reg. Sess.) ................................................16

Fontana, Cal. Ordinance 1882 (2022) ("Or. 1882") ................................33

Municipal Code Amendment No. 22-01 ....................................................33

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Other Authorities**

United States Constitution:

First Amendment ......... ...........................................................21, 27, 28, 49, 50

Fourth Amendment ...................................................... …………*passim*

Fifth and Fourteeth Amendments ........................................... . *passim*

Anthony Victoria, KVCR 91.9 NPR, *Fontana credits 4Leaf for its
effective street vending law. Vendors say their livelihoods are hurt*
(June 27, 2024), https://www.kvcrnews.org/2024-06-27/fontana-
credits-4leaf-for-its-effective-street-vending-law-vendors-say-
their-livelihoods-are-hurt (accessed 8/6/2025)......................................25

City of Fontana, 10/10/2023 City Council Meeting,
https://fontana.granicus.com/player/clip/897?view_id=1&redirect=
true (7/28/2025), video recording time stamps at the following:

City Manager Burum at 0:55:05:12..................................................…41

City Inspector Barber at 0:56:34-36 ........................………………..26

Mayor Warren at 1:19:51-1:20:01 & 1:20:08-1:20:23 ...........................3, 24, 41

City of Fontana, Appeal Checklist,
https://www.fontanaca.gov/DocumentCenter/View/8248/Appeal --
Checklist ..............................................................................44

City of Fontana, *Impacts of Unlicensed Street Vending in Fontana*,
https://www.Fontanaca.gov/3641/Impacts-of-Unlicensed-Vending
(last accessed 8/6/2025)……………………………... 6, 20, 21, 41

Company Profile, 4Leaf, Inc., https://www.4leafinc.com/company-
profile/ (last accessed on 8/6/2025) ....................................................13

Dick Carpenter, UPWARDLY MOBILE, STREET VENDING AND THE
AMERICAN DREAM (Institute of Justice, 2015) ....................................14

Keith Miziguchi, KQED, *Fontana's New Street Vending Law Has
Mixed Results* (July 16, 2024),
https://www.kqed.org/news/11995171/11995171-revision-v1 (last
accessed 8/6/2025)................................................................25

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

City of Fontana, 2/14/2023 City Council Meeting, https://fontana.granicus.com/player/clip/797?view_id=1&redirect=true (last accessed 8/8/2025), time stamp at 0:58:00 – 1:02:25 .................. …………………………………………………..…24

City of Fontana, 2/28/23 City Council meeting, https://fontana.granicus.com/player/clip/816?view_id=1&redirect=true (last accessed 8/8/2025), time stamp at 2:24:26--2:26:43 .........................24

Madison Hart, San Bernardino Sun, *Fontana council cuts off public comments as community lambastes new vendor rules* (Oct. 26. 2023), https://www.sbsun.com/2023/10/25/fontana-council-cuts-off-public-comments-as-community-lambastes-new-vendor-rules/ (last accessed 8/6/2025) .......................................................10

Nichole Heil, *Increasing Equity in Los Angeles' New Street Vending Program* (June 1, 2019)...........................................14, 15

*Webster's Third New International Dictionary* (1981) ...........................................17

Yvonne Yen Liu, Patrick Burns, & Daniel Flaming, SIDEWALK STIMULUS: ECONOMIC AND GEOGRAPHIC IMPACT OF LOS ANGELES STREET VENDORS 4 (Economic Roundtable, 2015)...........................................15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

1. Through this lawsuit, Plaintiff Inland Coalition for Immigrant Justice ("ICIJ" or "Coalition") challenges the unlawful campaign of the City of Fontana ("City" or "Fontana") to deny and override the rights of sidewalk vendors which are secured by the U.S. Constitution and by the laws of the State of California. In doing so, Plaintiff carries out its mission to restore the rights of sidewalk vendors and enable them to carry out their businesses in the City of Fontana.

2. Sidewalk vendors, selling clothing, foods and other goods, are a familiar sight in California's cities. In addition to the valuable contribution sidewalk vending makes to State and local economies, it provides a means of upward mobility for low-income, BIPOC (i.e., Black, indigenous and people of color), and immigrant communities who often face discrimination, low wages, labor violations, and limited pathways for economic advancement.

3. In 2018, recognizing the significance of sidewalk vending to "promot[ing] entrepreneurship and support[ing] immigrant and low-income communities," the California Legislature passed Senate Bill No. 946 ("SB-946"), adopting state-wide standards safeguarding vendors against discriminatory local regulation and requiring local governments to treat vendors as a legitimate part of the State's economy. Cal. Gov't Code §§ 51036 *et seq.*; SB-946, §1(b); *see* Legislative Counsel's Digest of Senate Bill No. 946, at 2. In 2022, Senate Bill No. 972 ("SB-972") followed, ending the treatment of sidewalk vendors selling food as a misdemeanor offense and creating a new category for vendors – "compact mobile food operation[s]" – in the State's Retail Food Code. Cal. Health & Safety Code §§ 113818, 113831, 113868 & ch. 11.7. Across the State, many localities have embraced these enactments.

4. The City of Fontana, however, along with certain other local governments, has chosen a very different path, subjecting sidewalk vendors to

unlawful regulations and illegal seizures of their property, and hiring contracted private agents to enforce these rules. This conduct contravenes sidewalk vendors' rights under the First, Fourth, Fifth, and Fourteenth Amendments, is preempted by the State of California's statutory enactments, and greatly undercuts Plaintiff's mission.

5.    The City's first step was to enact Ordinance 1789 in 2019. Among its terms is a provision purportedly authorizing the seizure of sidewalk vendor property "as evidence" of a violation of the City's vending Article. Fontana, Cal. Ordinance 1789 (2019) ("Or. 1789"), (amending Chapter 15, Article XVII of the Fontana Municipal Code ("FMC") (Art. XVII §§ 15-818 - 15-828)). It also singles out sidewalk vendors, mandating onerous permitting requirements that go far beyond what the City requires of other small businesses. Or. 1789, § 15-820. These requirements are unrelated to any "objective health, safety, or welfare concerns" and therefore violate the State's requirements. Cal. Gov't Code § 51038(c). These include that vendors must (a) obtain a multimillion dollar insurance policy naming the City, (b) pay for annual LiveScan background checks ostensibly to reduce vendors' "risks to children," and (c) agree to use public sidewalks at their own risk despite the City not taking any steps to ensure the sidewalks are "safe or conducive to sidewalk vending." Or. 1789, § 15-820-15-821 & 11th Whereas cl.

6.    Although the City initially moved slowly to utilize these provisions, by early 2022, City officers had begun enforcing them against local vendors. This step not only resulted in hundreds of seizures of vendors' perishable goods – which officers discarded, rather than use *as evidence* – it also deterred vendors from even attempting to apply for permits. Or. 1789, §§ 15-820, 15-828. But the City remained unsatisfied and, in the fall of 2023, the City Council and Mayor Acquanetta Warren adopted a new and more aggressive strategy to combat

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sidewalk vending.  Having failed to drive sidewalk vendors out of the City, Mayor Warren announced on October 10, 2023 that it was "time to grab a couple of hammers," and the City Council passed Ordinance 1925 two weeks later. Fontana, Cal. Ordinance 1925 (2023) ("Or. 1925") (adding FMC sections 1-14 and 15-829); *see* Fontana City Council Meeting (Oct. 10, 2023), at 1:20:08 – 1:20:23,[1] https://fontana.granicus.com/player/clip/897 (hereafter, "10/10/2023 City Council Meeting").

7.    This further Ordinance escalated the City's attack on sidewalk vendors by making it a criminal misdemeanor for a vendor to "interfere in any way" with City officers, punishable by fines up to "$1,000 or . . . imprisonment" for up to six months.  Or. 1925, § 1-14 (the "Enforcement Obstruction Consequences" provision or "EOC").  It also added a new impoundment section purporting to authorize City officers to seize vendors' goods and equipment under multiple additional grounds.  Or. 1925, § 15-829.  Chillingly, moreover, the City has paid $645,000 or more to retain an outside contractor, 4Leaf Inc. ("4Leaf"), to enforce its new and existing regulations, and agreed to allow 4Leaf personnel to "operate independently" in carrying out its enforcement activities.  *Infra*, pp. 24-25.

8.    Unconstrained by significant City oversight, 4Leaf agents have since conducted a lawless campaign to harass, intimidate, and ultimately coerce vendors to abandon their rights and leave the City.  Repeatedly, 4Leaf agents confiscate vendors' property without giving vendors any notice or an opportunity to be heard.  Through its unlawful enactments and its agents' implementation thereof, the City

---

[1] This citation, and others like it, are linked to the City of Fontana's website and indicate the type of City meeting being recorded, date and the range of time identifying the place on the recording of the meeting.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

has succeeded in expelling – or at least greatly restricting, through intimidation – a majority of its vending population.

9.     To end these irreparable harms, Plaintiff seeks a determination by the Court (a) declaring that the challenged provisions of Ordinances 1789 and 1925 are unconstitutional, unlawful, and preempted by the express terms of SB-946 and SB-972, and (b) enjoining the City and its personnel and 4Leaf and its operatives from implementing or enforcing the challenged provisions.

## JURISDICTION AND VENUE

10.     This is an action for injunctive relief, declaratory relief and other lawful relief pursuant to 42 U.S.C. § 1983, based upon Defendants' ongoing violations of the United States Constitution and laws of the State of California that deny and override the rights of Plaintiff, its members, and other sidewalk vendors that now or before have operated in the City of Fontana.  Jurisdiction exists under 28 U.S.C. §§ 1331 and 1343 as this case is brought pursuant to 42 U.S.C. § 1983 and raises questions of federal constitutional law under the First, Fourth, Fifth, and Fourteenth Amendments.  There is also supplemental jurisdiction in this Court over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in the Central District because the events and conduct complained of in this action occurred in the Central District, Eastern Division.

## PARTIES

12.     Plaintiff Inland Coalition for Immigrant Justice is a nonprofit organization dedicated to supporting vulnerable communities throughout the Inland Empire.  Founded in 2008, Plaintiff's mission is to advocate to improve the lives of those residing in San Bernardino and Riverside counties.  Its work focuses on improving the quality of life for these communities by increasing their access to needed resources, education, and policy decision-making.  Today, some 35 grassroots, community, faith-based, legal service, and workers' rights organizations

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

are part of the Coalition.  Importantly, sidewalk vending is a core focus of Plaintiff's programs because sidewalk vending represents one of the primary means for these vulnerable individuals to earn a living and provide for their families.

13.    Plaintiff has two types of members: organizational members and individual community members.  Organizational members sign a coalition agreement with Plaintiff and pay dues based upon their own operating budgets.  Community members join Plaintiff by completing an online application and paying initial dues of $25, and are asked to continue such payments yearly if they are able to.  Plaintiff currently has some 520 community members, more than half of whom are sidewalk vendors, and the great majority of whom are low-income, monolingual Spanish speakers.  Moreover, a significant number of Plaintiff's sidewalk vendor members have been seriously harmed by the City's Ordinances and unlawful conduct set forth herein.

14.    Plaintiff, through its multiple programs, workshops, and advocacy, has built strong relationships with the sidewalk vendors operating in Inland Empire cities, including Fontana.  These relationships include providing vendors with small business training, peer-to-peer technical assistance, grant opportunities nd other valuable individualized assistance.  Plaintiff also has long conducted legal clinics, KYR ("Know Your Rights") trainings and educational workshops that are open to sidewalk vendors.  In 2018, Plaintiff joined the California Street Vending Campaign and was active in advocating for statewide changes to street vending laws, namely through the passage of California's SB-946.  After enactment of SB-946, Plaintiff played a substantial role in assisting the City of San Bernardino in developing its sidewalk vending ordinance, and has assisted numerous other Inland Empire cities, including Palm Springs, Ontario, Redlands, and Coachella in fashioning their own vending ordinances, which seek to remain within the bounds

of California law.  Moreover, Plaintiff has continued to speak out against unfair or discriminatory provisions in vending ordinances adopted by other Inland Empire cities, including Fontana.

15.    With respect to Fontana, Plaintiff also reached out to the City in 2019 as it was preparing its ordinance, and met with City officials, including a City Council member and the chief of police, to discuss the ordinance, but without appreciable impact.  By the year 2022, Fontana's treatment of sidewalk vendors had begun to deteriorate significantly.  This included, for example, the City's increased use of its Or. 1789 provision (§15-828) to seize vendors' perishable goods and food, which expanded from only a limited number of seizures during 2022 to more than four hundred in 2023.[2]  Accordingly, Plaintiff found it necessary to invest additional resources in the City, including educating its vendors of these developments and how to respond thereto.  By mid-2023, however, the Mayor and City Council remained unsatisfied by the results of the City's officers, and in October 2023, the City escalated its attacks on sidewalk vendors by enacting Or. 1925 and its punitive provisions and hiring 4Leaf personnel to enforce them.

16.    Thereafter, Fontana's escalating attacks on sidewalk vendors have had severe consequences – a large number of the vendors previously operating there have left the City and not returned to date.  Plaintiff has responded to the City's increased actions by shifting substantial resources to Fontana to ensure that the City's vendors learned of the attacks and their consequences.  Initially, three or more staff members were assigned daily to reach out to the City's vendors to help prepare them for Fontana's heightened targeting of vendors, and to mobilize other City residents to petition the City Council in support of vendors.  Plaintiff also

---

[2] City of Fontana, *Impacts of Unlicensed Street Vending in Fontana*, https://www.Fontanaca.gov/3641/Impacts-of-Unlicensed-Vending (last accessed on 8/6/2025) (reporting seizures of vendor property "on 13 occasions" in 2022 but "over 400 times" in 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

conducted numerous media interviews forcefully raising its concerns over the City's conduct, which was gaining attention in nearby cities. Between October and December 2023 alone, at least 40-60 hours a week of staff resources were spent assisting sidewalk vendors in Fontana. Later, however, as the City's sidewalk vendor population dwindled, Plaintiff's efforts have necessarily been reduced. While Plaintiff has continued to support Fontana's remaining vendors, many fewer of them continue to operate in the City today. These losses represent harms to both Plaintiff and the vendors themselves.

17.    Plaintiff views its mission to improve and enrich the quality of life of the vulnerable communities it serves very seriously, and places a high priority on its relationships with sidewalk vendors in the Inland Empire. However, due to the City's unlawful conduct in Fontana, Plaintiff has lost contact with more than a few Fontana sidewalk vendors and seen a corresponding drop in attendance at its workshops, clinics, educational training and the like, with significant impact to its mission. Moreover, Plaintiff now must worry not only for the future of street vendors in Fontana, but also for vendors in other cities across California which look to Fontana as the playbook for eliminating street vendors from their city with impunity.

18.    <u>Article III standing</u>. "The Article III standing inquiry serves a single purpose: to maintain the limited role of courts by ensuring they protect against only concrete, non-speculative injuries. . . . Parties must have a 'personal stake in the outcome' sufficient to ensure the court that, absent judicial review, they will suffer or have suffered some direct injury." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*¸ 504 U.S. 555, 583 (1992)). Here, Plaintiff has satisfied the requirements of Article III standing by (1) the doctrine of organizational standing, *FDA v. All. for Hippocratic Med.*, 602 U.S.

367, 380-81, 393-97 (2024) and (2) the doctrine of associational standing, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

   (a) Organizational standing exists when an association "sue[s] on [its] own behalf for injuries [it has] sustained." *Hippocratic Medicine*, 602 U.S. at 394. "To determine whether organizational standing requirements have been satisfied, we 'conduct the same inquiry as in the case of an individual: Has the plaintiff "alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction."'" *East Bay*, 993 F.3d at 662 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). In *Havens Realty*, the organizational standing's seminal case, the plaintiff organization ("HOME"), a housing counseling organization assisting low-income clients, learned it had been provided false information about apartment availability (i.e., "racial steering") by owners of an apartment complex and then sued the latter. *Id.* at 378-79. As that Court held, because the apartment owners' racial "steering practices [had] perceptibly impaired HOME's ability to provide counseling and referral services for low-and-moderate-income homeseekers, there can be no question that [HOME] has suffered injury in fact. Such concrete and demonstrable injury to the [HOME's] activities – with the consequent drain on [that] organization's resources – constitutes far more than simply a setback to [its] abstract social interests." *Id.* at 379. Accordingly, the Court concluded, "in view of HOME's allegations of injury it was improper for the District Court to dismiss for lack of standing the claims of the organization in its own right." *Id.*; *accord Hippocratic Medicine*, 602 U.S. at 395; *see Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (organization standing established when "Plaintiffs expended additional resources that they would not otherwise have expended and in ways that they would not have expended them" and that "[b]ut for

defendants' violations . . . Plaintiffs' 'would be able to allocate substantial resources to other activities central to [their] mission[s]").

       (b)    The doctrine of associational standing "permits an organization to 'sue to redress its members' injuries, even without a showing of injury to the association itself.'" *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003). As held in *Hunt*, 432 U.S. at 343, "we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *E.g., Vasquez Perdomo v. Noem*, __ F.4th __, No. 25-4312, 2025 WL 2181709, at *11 (9th Cir. Aug. 1, 2025) (same); *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1099-1100 (9th Cir. 2024) (same).

    19.   <u>Organizational standing</u>. Here, the City's challenged conduct – its adoption and implementation of the unconstitutional and unlawful provisions of its Ordinances 1789 and 1925 aimed at sidewalk vendors – has "directly affected and interfered with" one of Plaintiff's core organizational goals – to assist sidewalk vendors to earn a living and provide for their families. *E.g.*, *Hippocratic Medicine*, 602 U.S. at 395. To achieve this goal, Plaintiff has long pursued (1) building strong relationships with vendors in the City and elsewhere by providing sidewalk vendors with small business training, peer-to-peer technical assistance, grant opportunities, and other individualized assistance, (2) conducting legal clinics, KYR ("Know Your Rights") training and similar educational workshops for them, and (3) working with multiple other Inland Empire cities to assist them in fashioning their own vending ordinances in a lawful manner, to name only a few. Plaintiff first found it necessary to invest additional resources in the City of Fontana in 2022-2023, when its code compliance officers began confiscating

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sidewalk vendors' perishable goods and discarding them pursuant to Or. 1789 (§15-828), eventually conducting over four hundred such seizures during 2023. Later, in the fall of 2023, after the City had enacted Or. 1925 and its severely punitive provisions, Plaintiff was forced to shift still substantially more resources to addressing the City's mounting attacks on sidewalk vendors. This required, among other things, that Plaintiff assign multiple additional staff members on a daily basis to ensure that City vendors learned of the City's heightened enforcement actions and understood their consequences as well as mobilizing other City residents to petition the City Council in support of the City vendors[3] and conducting numerous media interviews raising Plaintiff's concerns over the City's unlawful conduct, which was gaining attention in nearby cities. Thereafter, as time passed and the City's sidewalk vendor population has dwindled further due to the City's actions, Plaintiff is continuing its support for the City's vendors. Unquestionably, Plaintiff has suffered "injuries of the sort that . . . are concrete and particular for purposes of Article III" in that (1) Plaintiff has "expended additional resources [it] would not otherwise have expended" and (2) "[b]ut for defendants' violations," Plaintiff could have "allocate[ed] substantial resources to other activities central to [its] mission[]." *National Council of La Raza*, 800 F.3d at 1040.

---

[3] Madison Hart, *Fontana council cuts off public comments as community lambastes new vendor rules*, San Bernardino Sun, Oct. 26. 2023, https://www.sbsun.com/2023/10/25/fontana-council-cuts-off-public-comments-as-community-lambastes-new-vendor-rules/ (accessed 8/6/2025) ("Nearly 130 street vendors, community activists and residents marched up to and inside Fontana City Hall Tuesday evening, Oct. 24, to protest the ordinance targeting any vendor who does not possess or display a valid health permit. . . . 'We're hoping a lot of people will turn out to not only tell Fontana that they can do better, and that they need to listen to the community voice, but (that) they're also telling the rest of the region that criminalizing street vendors is right,' . . . a director for *Inland Coalition for Immigrant Justice* said".).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

20.    <u>Associational standing</u>.  While associational standing allows an organization to sue to redress its members' injuries without any injury to itself, the organization must "'allege that its members, or any one of them, are suffering" an "immediate or threatened injury" as a result of the defendant's conduct.  *Hunt*, 432 U.S. at 342-43.  As set forth in *Coalition on Homelessness v. City & County of San Francisco*, 758 F. Supp. 3d 1102, 1122-23 (N.D. Cal. 2024), the organization must make "'specific allegations establishing that at least one identified member had suffered or would suffer harm,'" although this "does not necessarily require the operative complaint to identify an injured member by name."  *Id.* (quoting *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013)).  As further held by the Ninth Circuit in *Vasquez Perdomo,* a recent case involving extensive patrols by federal immigration agents seeking undocumented workers in the Southern California area, "'[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury,' *the organization is not required to 'identify by name the member or members injured' to establish associational standing*."  2025 WL 2181709, at *11 (quoting *Nat'l Council of La Raza*, 800 F.3d at 1041).[4]  The remaining two elements of associational standing

---

[4] Plaintiff has identified two of its members who have suffered serious harm that is attributable to the Defendants here, referred to by their initials as A. C. and A. M. Just as in *Vasquez Perdomo* where the "intense fear of discriminatory stops" by immigration agents "may prevent the association . . . members from active participation in the lawsuit" (2025 WL 2181709, at *12), in today's tumultuous time and place and where sidewalk vendors may equally be concerned of being named or recognized in court proceedings in this lawsuit, there are strong reasons why "the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury."  *Nat'l Council of La Raza*, 800 F.3d at 1041; *Coal. on Homelessless*, 758 F. Supp 3d at 1122 (same).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

are straightforward.  These are one, that the "interests [the organization] seeks to protect are germane to the organization's purpose," and two, that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt*, 432 U.S. at 343.  In this case, the first of these is self-evident and the second is plainly satisfied because the relief that Plaintiff seeks here is limited to a declaratory judgment and/or injunctive relief.

21.    The Defendants are as follows:

(a)    Defendant City of Fontana is a municipal corporation and general law city.  The City has adopted Or. 1789 and Or. 1925 regulating sidewalk vending within its boundaries that contain myriad unlawful provisions violating the United States Constitution and laws of the State of California.  The City has utilized both City officers and 4Leaf personnel to implement these provisions.

(b)    Defendant City Council of Fontana (herein, "City Council" or "Council") is the governing legislative body of the City and consists of five voting members, including its Mayor.  The City Council is responsible, among other things, for enacting, modifying and amending City ordinances, including Ordinances 1789 and 1925 that are challenged here, as well as making policy and taking steps to regulate sidewalk vending in the City.  Currently, the members of the City Council are Mayor Acquanetta Warren, Mayor Pro Tem Peter Garcia, and City Council members Phillip Cothran, John Roberts and Jesus "Jesse" Sandoval. The City Council is sued in an official capacity.

(c)    Defendant Mayor Warren has played a central role in the enactment of Ordinances 1789 and 1925 and in developing the City's policies and procedures regarding sidewalk vending.  She is sued in an official capacity.

(d)    Defendant Phillip Burum is a Deputy City Manager who has played a central role in negotiating the City' contract with 4Leaf.  On information

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

and belief, Mr. Burum has continued to play an active role in overseeing the 4Leaf contract and interfacing with 4Leaf personnel. He is sued in an official capacity.

(e) Defendant Fontana Code Compliance Department is the City department responsible for administering many of the City's sidewalk vending regulations, including issuing local vending permits, addressing citations of sidewalk vendors for alleged code violations, and managing the confiscation of sidewalk vendors' property.

(f) Defendant 4Leaf is a California corporation with its principal place of business in Pleasanton, California. It has, among others, an office in San Bernardino, California. According to its website, 4Leaf "specialize[s] in construction projects" for municipalities, and its services are largely focused upon such projects. Company Profile, 4Leaf, Inc., https://www.4leafinc.com/company-profile/ (last accessed on 8/6/2025). In the fall of 2023, 4Leaf entered into a contract with the City to assist with regulating sidewalk vending by providing the City with Code Enforcement Officers on six days and evenings per week. Under this contract, 4Leaf has taken over from City officers the role of enforcing the City's sidewalk vending ordinances challenged herein.

(g) Defendant Craig Tole is 4Leaf's Vice President for Community Development and Project Manager for 4Leaf's services provided to the City. On information and belief, Mr. Tole has played a central role in obtaining and managing the City's contract.

(h) Defendant Pete Roque is 4Leaf's Director of Code Enforcement. As the offsite manager for the City contract, he is responsible for the management and training of 4Leaf code enforcement officers as well as the day-to-day administration of 4Leaf's activities addressing sidewalk vending in the City.

22. Plaintiff is currently unaware of the true names and capacities of the Defendants sued as John Does 1-40 and therefore sues those parties by these

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of these persons once they have been ascertained. Plaintiff is informed and believes, and on this basis alleges, that each of these Defendants is responsible in some manner for the legal violations set forth in the Complaint.

## FACTUAL ALLEGATIONS

**I.    California's Legalization of Sidewalk Vending and the City of Fontana's Imposition Of Unlawful Practices Violating Sidewalk Vendor Rights.**

23.    Sidewalk vendors sell food or merchandise from "a pushcart, stand, display, pedal-driven cart, wagon, showcase, [or] rack . . . or from one's person, upon a public sidewalk or other pedestrian path.." Cal. Gov't Code §§ 51036(a). Sidewalk vendors have been a staple of California's culture since before statehood, but by the early 20th century cities and towns across the State began enacting strict regulations that often treated these vendors' operations as unlawful. Beginning in the 1980s, cities such as Los Angeles saw an increase in sidewalk vending, particularly among recent immigrant communities and often as a matter of economic survival.[5] Nichole Heil, *Increasing Equity in Los Angeles' New Street Vending Program*, at 5 (June 1, 2019) (Master's capstone, UCLA). Over this period, the growth in sidewalk vendor populations in California cities also gave rise to concerns regarding vendors' presence and operations. By the 1990s, misdemeanor arrests of sidewalk vendors had increased substantially, a fact "attributed to nearby storefronts complaining about [the] vendors." *Id.* In addition to such complaints, sidewalk vendors have long been viewed with distrust or animus because of their race, ethnicity or immigration status, and are especially

---

[5] Dick Carpenter, UPWARDLY MOBILE, STREET VENDING AND THE AMERICAN DREAM, at 6 (Institute of Justice, 2015) ("For much of our nation's history, street vending . . . has been a way for lower-income workers, particularly new immigrants, to make a living and climb the economic ladder").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

vulnerable due to their visibility on the streets.  *Id.* ("fears of racism and
harassment [have] kept street vendors in the shadows for the better part of the 20th
century").

24.    Despite persistent efforts to restrict sidewalk vending during this
period, its significance within California's economy has grown steadily.  As a 2015
study evaluating the "economic and geographic impact of . . . street vendors" in
Los Angeles reported:

> Street vending is a $504 million industry in Los Angeles.
> Every year, 50,000 microbusinesses set up shop on the
> sidewalks of the city, according to the Bureau of Street
> Services.  Three-quarters sell merchandise, such as
> clothing and cell phone accessories.  The other 10,000
> sell bacon-wrapped hotdogs, tamales, and ice cream . . . .

Yvonne Yen Liu, Patrick Burns, & Daniel Flaming, SIDEWALK STIMULUS:
ECONOMIC AND GEOGRAPHIC IMPACT OF LOS ANGELES STREET VENDORS 4
(Economic Roundtable, 2015) ("As Los Angeles street vendors sell food and goods
to passersby, the multiplier effects from the supplies they purchase and the income
they spend accumulate and reverberate through the local economy"); *e.g.,* D.
Carpenter, *supra* note 5, at 5 (in-depth study of "vendors' contributions to the New
York City economy" amount to "an estimated 17,960 jobs, $192.3 million in wages
and $292.7 million in value added," including "an estimated $71.2 million to local,
state and federal tax coffers").  Over time, the growing statewide economic
benefits of sidewalk vending—along with the essential economic support it
provides for immigrant and economically disadvantaged communities—drew the
attention of social scientists, activists, politicians, and eventually, State lawmakers.
Nonetheless, it took years of organizing and campaigning by sidewalk vendors to
win significant protections for themselves and their operations.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**A.     California's Legislature Imposes Statewide Standards on Local Government Regulation of Sidewalk Vending: SB-946 and SB-972.**

25.     Over the last eight years, the California Legislature has enacted two transformative statutes that limit how local governments may regulate sidewalk vending.  The first was SB-946, enacted in September 2018, which (1) decriminalized sidewalk vending throughout the State, (2) established a comprehensive framework of state-wide standards that local governments must observe in regulating sidewalk vendors, and (3) prescribed the penalties that local governments may lawfully impose upon vendors for violations of their sidewalk vending regulations.  The second was SB-972, enacted in September 2022, which recognized sidewalk vendors as legitimate retail food providers through a new legal category added to the California Retail Food Code – the "compact mobile food operation" – and which ended the treatment of sidewalk vendors selling food as a misdemeanor offense.  Through these steps, the California Legislature sought to end the discriminatory treatment of sidewalk vendors and enable this long-marginalized community to join fully and legally in the State economy. SB-946, § 1(a), 1(a)(6), 2018 Cal. Stat. ch. 459 (2017-2018 Reg. Sess.); SB-972 (adding Chapter 11.7 to Part 7 of Division 104 of the California Health & Safety Code), 2022 Cal. Stat. ch. 489 (2021-2022 Reg. Sess.).

26.     To achieve its goals in SB-946, the Legislature adopted an array of provisions that expressly prohibit local governments, including the City of Fontana, from "regulat[ing] sidewalk vendors, except in accordance with" that statute's provisions.  Cal. Gov't Code § 51037(a) ("A local authority shall not regulate sidewalk vendors except in accordance with Sections 51038 and 51039" of the Government Code); *id.* § 51038(b) ("A local authority's sidewalk vending program shall comply with all of the following standards"); *id.* § 51039(a)(1), (c) (prohibiting local governments from treating violations of their sidewalk vending

regulations as misdemeanors and requiring that such violations be "punishable only by" a prescribed range of administrative fines).  To leave no doubt of this, the Legislature made explicit legislative findings determining that the sidewalk vendor issues which SB-946 addressed are "matters of statewide concern" and that its provisions "appl[y] to any city, county, or city and county" in the State.  SB-946, § (a)(1)(6).

27.    While some of SB-946's provisions are unconditional – for example, its prohibition of sanctions for sidewalk vending violations other than prescribed administrative fines – other provisions bar local governments from imposing restrictions on particular categories of vendor activities unless the restrictions are justified by an "objective health, safety, or welfare concern[]" that is "directly related" to the vendor conduct.  Cal. Gov't Code § 51038(b), (c); *see id.* § 51039(a)(1).  This "objective health, safety, or welfare concern" requirement lies at the heart of SB-946's regulation of local governments' vending programs.  Where this standard applies, any "health, safety, or welfare concern" that a local government offers to justify a particular vendor restriction must be established by "objective" facts[6] demonstrating that such restriction is necessary to address a "health, safety, or welfare" concern of significant importance to the public.  *Id.* § 51038(c).  SB-946 also forbids local governments from justifying a vendor restriction by citing "perceived community animus" or the "economic competition" between vendors and local merchants as an "objective health, safety, or welfare concern."  *Id.* § 51038(e).  Through these provisions, the Legislature has

---

[6] In this context, "objective" denotes known or provable facts, data or documentation as opposed to assumptions, suppositions, or statements unsupported by known facts. *E.g.*, *Webster's Third New International Dictionary*, 1555-56 (1981) (Objective: "observable or verifiable, especially by scientific methods . . . involving the use of facts without distortion by personal feelings or prejudices").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

proactively protected vendors from local governments' discriminatory or prejudicial enactments not needed to protect the public at large.

28.    As to SB-972, the Legislature, by incorporating that statute's provisions into the California Retail Food Code (Cal. Health & Safety Code, Division 104, Part 7), turned the food safety measures applicable to sidewalk vendors over to the State Department of Public Health (the "Department") and certain lawfully designated local health agencies.  *See* Cal. Health & Safety Code, §§ 113763, 113773 (defining these agencies).  Through this step, it is the Department of Public Health and the designated local health agencies, and not the local cities, that are tasked with "safeguard[ing] public health and provid[ing] to consumers food that is safe, unadulterated, and honestly presented . . . "  Cal. Health & Safety Code § 113703; *see also id.* § 113705 (Legislative finding that "the public health interest requires that there be uniform statewide health and sanitation standards [governing] retail food facilities").  The Retail Food Code, moreover, has designated its "[e]nforcement agenc[ies]" as the Department itself or the "local health agency having jurisdiction over [a] food facility," a designation that does not include the City of Fontana. *E.g.* Cal. Health & Safety Code § 113773.

29.    SB-972, in addition to ending the criminalization of sidewalk vendors selling food as a misdemeanor, adopted the category of "compact mobile food operation" ("CMFO") for vendors operating from "a pushcart, stand, display, pedal-driven cart, wagon . . . or other nonmotorized conveyance."  Cal. Health & Safety Code § 113831(c).  Under this category, vendors may legally sell a wide range of foods under guidelines and requirements specified in the Code, which

govern food sales, preparation, storage, sanitation, equipment and the like.[7] Vendors are also subject to permitting requirements and "routine inspections or inspections on the basis of a consumer complaint" by an appropriate enforcement agency – here, the San Bernardino County Department of Environmental Health Services ("DEHS"). Cal. Health & Safety Code § 114368.1(b)(2). Also, as in SB-946, SB-972 prohibits its designated enforcement agencies from imposing sanctions on sidewalk vendors for violations of the CMFO regulations beyond a specified range of administrative fines. Cal. Health & Safety Code § 114368.8(a), (c), (d).

30.    Both SB-946 and SB-972 are comprehensive state-wide enactments that overcome, and preempt, local governments' conflicting enactments. As held by the California Supreme Court, when a city's "local legislation conflicts with state law, it is preempted by such law and is void." *Sherwin-Williams Co. v. City of Los Angeles,* 4 Cal. 4th 893, 897 (1993) (citation omitted); *see Am. Fin. Servs. Ass'n v. City of Oakland*, 34 Cal. 4th 1239, 1251 (2005); *see infra*, pp. 45-49

## B. Responding to the State's Legislation, the City of Fontana Incorporates Unlawful Provisions into Its Vending Ordinance.

31.    On February 12, 2019, the Fontana City Council adopted its Ordinance 1789, purportedly to comply with SB-946, and even attaching a copy of that statute as part of the Ordinance's official version. Or. 1789 (amending Chapter 15, Article XVII of the FMC) (Art. XVII § 15-818 – 15-828).[8] But while some of its provisions track those of SB-946, others do not.

---

[7] *E.g.*, Cal. Health & Safety Code § 113818(a) (listing the types of "limited food preparation" potentially available for CMFO treatment, including food prepared by "[h]eating, frying, baking, roasting, . . . or [the] assembly of nonprepackaged food.")

[8] When adopted, Ordinance 1789 served to repeal and replace the then existing Article XVII which addressed another subject. Later, when Ordinance 1925 was adopted, its impoundment provisions were incorporated into Article XVII as well.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

32.    The two most pertinent provisions in conflict with SB-946 are (1) Or. 1789, § 15-828, which purports to authorize City officers to "seize as evidence any item used [by a sidewalk vendor] in the commission of a violation of any provision" of the City's sidewalk vending Article, and (2) Or. 1789, §15-820, which, *inter alia*, imposes three requirements on sidewalk vendors to obtain a local vending permit:

(a)    The purchase of a costly insurance policy that includes multi-million-dollar coverage provisions (ranging from $1 million to $2 million per occurrence) purportedly needed to protect the City (§ 15-820(A)(10));

(b)    Yearly purchases of a LiveScan background check by the California Department of Justice intended to monitor sidewalk vendors' purported "risks to children" when operating in public areas (§ 15-820(B); *see* Or. 1789, 11th Whereas cl.); and

(c)    Vendors' agreement to utilize public sidewalks "at [their] own risk" and without any steps by the City "to ensure public property is safe or conducive to sidewalk vending" (§ 15-820(A)(15)).

These onerous and unlawful requirements, which the City does not require for other small businesses operating in its jurisdiction, have contributed significantly to local sidewalk vendors' unwillingness to apply for a local vending permit.

33.    <u>The City's unlawful seizures of vendor property</u>.  While City officers initially used Or. 1789, § 15-828 only sparingly, if at all, its enforcement escalated substantially over time.  According to a City report, by January 2022, its "Code Compliance teams [had begun] the enforcement" of this provision to "confiscate[e] [vendors'] perishable goods" – purportedly to "protect public health" – and confiscations continued to grow thereafter.  City of Fontana, *Impacts of Unlicensed Street Vending in Fontana*, https://www.Fontanaca.gov/3641/Impacts-of-Unlicensed-Vending- (accessed 8/6/2025).  By 2023, City officers reportedly "confiscated [vendors'] perishable goods over 400 times," and comments from the

City's community meetings confirm such confiscations.  *Id.*; *see, e.g.*, City of Fontana, Minutes of July 30, 2024 Area 2 Community Meeting) ("Cynthia Gil with Code Compliance advised we do street vendor details 3 times a week.  We are throwing away their items, but they keep coming back"), attached hereto as Exhibit 1.

34.   The City's utilization of Or. 1789, § 15-828 to seize sidewalk vendors' property is unlawful.  Even putting aside the Fourth, Fifth and Fourteenth Amendment issues discussed below, vendors' perishable goods seized by the City clearly have not been used "as evidence" as required by the text of the provision itself.  Instead, after the City's officers have seized the vendors' goods, they discarded those goods without using them for any evidentiary purposes.  The sidewalk vendors thereby lost their valuable merchandise for no lawful purpose, with no opportunity to be heard and no recompense.

35.   The City's unlawful permit requirements.  While SB-946 allows the City to require sidewalk vendors to obtain local vending permits and provides a list of provisions that permits may include, it expressly requires that any such provisions must satisfy SB-946's "objective health, safety or welfare" standard. Cal. Gov't Code § 51038(c) (allowing permit provisions only if they can be justified as "directly related to objective health, safety, or welfare concerns"). Here, however, none of the three provisions in question meet this standard.  These provisions require: (1) the purchase of a multi-million-dollar insurance coverage policy typically reserved for large-scale commercial transactions,[9] Or. 1789, § 15-820(A)(10); (2) annual purchases of a background check purportedly needed to

---

[9] By comparison, the City's contract with 4Leaf – a private company the City pays more than half a million dollars to enforce the City's sidewalk vending Article  – requires that 4Leaf provide coverage amounts of the same level (between $1 million to $2 million per occurrence) as those required by Or. 1789 for a single sidewalk vendor selling goods on the street.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

address alleged "risks to children" created by vendors in public areas "frequented by children," Or. 1789, § 15-820(B); *see* Or. 1789, at p. 2, 11th & 12th Whereas cls.; and (3) a waiver by sidewalk vendors of their rights when utilizing City sidewalks that all other City residents enjoy, Or. 1789, § 15-820(A)(15).  None of these provisions are even remotely necessary to satisfy any "objective health, safety, or welfare" concerns cognizable under SB-946.  In adopting Or. 1789, the City has – unsurprisingly and on information and belief – deterred vendors from applying for local vending permits.

### C.    Unsatisfied with Its Ordinance's Results, the City Adopts a Further Vending Ordinance and Hires Private Personnel to Enforce Its Terms.

36.    In the fall of 2023, unsatisfied with Or. 1789's results despite the City's increase in confiscation and enforcement, the City Council, Mayor Warren, and other senior City officials adopted a new and still more aggressive strategy to end what they viewed as a troubling problem.  On October 24, 2023, the City Council adopted a new ordinance – which became Or.  1925 – adding substantial new provisions to the City's sidewalk vending Article and retaining 4Leaf to supply contracted personnel to replace City officers in enforcing the new restrictions.  *See, e.g.*, Or. 1925.

37.    Or. 1925's first component, titled the "Enforcement Obstruction Consequences" ("EOC") provision, created a new criminal misdemeanor offense under which sidewalk vendors who "interfere[d] in any way" with City officials engaged in their duties would face "fine[s] of not more than $1,000 or . . . imprisonment" for up to six months.  Or. 1925, § 1-14.  Its second component added an "Impoundment" provision to the City's sidewalk vending Article, purportedly authorizing "[a]ny City official" to "impound a Sidewalk Vendor's vending cart, equipment, food, utensils, goods, flowers, toys, furniture, or merchandise" used "in violation of" that Article for any of eleven enumerated

vending offenses, nine of which are challenged here.[10]  Or. 1925, § 15-829(b); *see infra,* pp. 25, 27 & n.10.  Under this provision, once a vendor's property is seized, all items that "are perishable and/or cannot be safely stored" are to be "immediately dispose[d] of" and the remaining items "held by the City for not less than 30, nor more than 60, calendar[] days" after the impoundment.  *Id*. §15-829(d)-(e).

38.    At the same October meeting, the City Council and Mayor also approved the new contract with 4Leaf.  This contract, signed November 14, 2023, committed the City to pay $644,498 for 4Leaf's services over six months, subject to further extension.  City of Fontana Professional Services Agreement, BS-24-5-SP-1 ("Contract"), attached hereto as Exhibit 2.  The City's requirements for 4Leaf, set forth in the Contract's "Scope of Work," call upon 4Leaf to "provide contracted Code Enforcement Officers (CCEO)" to the City to address its issues with "all non-permitted sidewalk vendors."  Contract, at Exhibit A.  To accomplish this, the City agreed to provide 4Leaf with the "locations" of the targeted vendors. *Id.*  For those vendors "continu[ing] to operate without proper[] permits" after an initial warning, the City directed 4Leaf personnel to "confiscate all perishable/non-perishable items" in their possession and then process these items pursuant to Or. 1925's provisions.  *Id.*  The City also agreed that 4Leaf's personnel would "operate independently," contacting the City's police department "for support only when necessary."  Contract, attaching City of Fontana, Action Report, City Council Meeting, at 1.  The City has thus given 4Leaf's personnel free rein to interact with sidewalk vendors with little or no City supervision or oversight.

---

[10] Of the eleven impoundment provisions included in Or. 1925, two (§ 15-829(b)(7) and § 15-829(b)(10)) are not challenged here because other statutes or regulations allow the City to address the same conduct.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### D. 4Leaf And Its Personnel Unleashed a Widespread Campaign to Seize Vendors' Property, Coupled with Unlawful Harassment.

39. Public statements by City officials, including Mayor Warren, have long displayed their hostility toward sidewalk vendors and a clear intent to exclude them from the City. For instance, months before the City's adoption of Or. 1925, Mayor Warren used consecutive City Council meetings to characterize sidewalk vendors as "illegal" and urge the public to boycott them. City of Fontana, City Council Meeting Minutes (Feb. 14, 2023)[11] (Mayor Warren: "[T]here is something everyone can do, and that is not to patronize those illegal street vendors"); City Council Meeting Minutes (Feb. 28, 2023)[12] (Mayor Warren: "DO NOT purchase at these street vendors"). Mayor Warren reiterated this stance during the October 10, 2023 Council meeting, declaring:

> "[I]t's time for us to take a stand. We have tried everything we can . . .to help people [sidewalk vendors] get legal . . . . *So now it's time to grab a couple of hammers. Done.* Any more questions?"

City of Fontana, 10/10/2023 City Council Meeting, at 1:20:08 – 1:20:23 https://fontana.granicus.com/player/clip/897?view_id=1&redirect=true (emphasis added). Clearly, these sentiments were promptly adopted by 4Leaf and its personnel, whose ongoing conduct continues to reflect the City's hostility toward sidewalk vendors.

40. Once 4Leaf operatives were tasked with enforcing the City's sidewalk vending regulations, they have been, and are now, threatening sidewalk vendors with the misdemeanor EOC provision and its criminal sanctions and seizing

---

[11] City of Fontana, 2/14/2023 City Council Meeting, https://fontana.granicus.com/player/clip/797?view_id=1&redirect=true (last accessed 8/8/2025), time stamp at 0:58:00--1:02:25.
[12] City of Fontana, 2/28/23 City Council meeting, https://fontana.granicus.com/player/clip/816?view_id=1&redirect=true (last accessed 8/8/2025), time stamp at 2:24:26--2:26:43.

vendors' goods and equipment.[13]  4Leaf operatives confront individual vendors unannounced and in organized groups, wearing all black garb and frequently covering their faces with balaclavas, masks or hoods.  They tell vendors they are from the City but lack badges or nametags disclosing this information and often refuse to identify themselves.  They tell vendors that they have no right to vend in the City and must leave immediately.  This conduct is plainly intended to, and does, intimidate vendors.  Rather than educate vendors about the City's requirements, as the City sometimes claims, 4Leaf operatives hand out only a short bulletin, which largely advises vendors to get permits or else leave the City.  Nor when confiscating vendors' goods and equipment do 4Leaf operatives provide vendors *any* opportunity to be heard in their own defense.  Instead, they tell vendors that in order to get their property back, they must wait 30 days and then return to the City, paying an impound fine that varies from $230 to $300.  For all of these unlawful actions, 4Leaf operatives act under color of law and in the name of the City.

## II.    The Violations of Law Committed by the City and 4Leaf Pursuant to the City's Sidewalk Vending Ordinances and Their Implementation.

41.    The challenged violations – committed both by the City of Fontana and by 4Leaf and its personnel – are:

---

[13] Anthony Victoria, KVCR 91.9 NPR, *Fontana credits 4Leaf for its effective street vending law. Vendors say their livelihoods are hurt* (June 27, 2024), https://www.kvcrnews.org/2024-06-27/fontana-credits-4leaf-for-its-effective-street-vending-law-vendors-say-their-livelihoods-are-hurt (accessed 8/6/2025) ("At a city-county conference, Fontana officials said 4Leaf has issued 500 warnings to vendors, thrown away food at least 90 times and impounded equipment 43 times since December [2023]"); Keith Miziguchi, KQED, *Fontana's New Street Vending Law Has Mixed Results* (July 16, 2024), https://www.kqed.org/news/11995171/11995171-revision-v1 (accessed 8/6/2025) (same).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

* The City's "Enforcement Obstruction Consequences" criminal misdemeanor provision, which violates the First, Fifth, and Fourteenth Amendments by employing intimidation to block vendors from exercising their constitutional right to be heard;

* The City's multiple impoundment provisions adopted in its Ordinances 1789 and 1925 and their unlawful implementation by the City, 4Leaf and 4Leaf's personnel, which violate the Fourth, Fifth, and Fourteenth Amendments and SB-946 and SB-972 by their unlawful and unreasonable confiscations of vendors' goods and equipment and failure to provide the procedural protections required by the Due Process clause;

* The City's adoption of onerous and unlawful requirements to obtain local vending permits, which contravene SB-946's "objective health, safety, or welfare concerns" standard;

* The City's disregard of the provisions of SB-946 and SB-972 which, through their mandatory statewide standards and provisions, preempt and void the City's foregoing unlawful enactments and conduct.

**A.    The City's "Enforcement Obstruction Consequences" Provision Violates the First, Fifth, and Fourteenth Amendments and Criminalizes Sidewalk Vendors.**

42.    During the October 10, 2023 City Council meeting in which Or. 1925 was introduced, the City's code compliance inspector, Jason Barber, described the EOC provision as necessary to "provide safety to staff" when enforcing the new Ordinance.  City of Fontana, 10/10/2023 City Council Meeting, at 56:34-36, https://fontana.granicus.com/player/clip/897?view_id=1&redirect=true.  Rather than protect City staff, this provision is clearly intended to "criminalize[] . . . [sidewalk vendors'] constitutionally protected speech" by silencing them when

their property is seized. *See City of Houston, Texas v. Hill*, 482 U.S. 451, 466 (1987). This provision states:

> It shall be unlawful for any person to obstruct, impede, threaten, follow, intimidate, or interfere in any way with any City official including a code compliance officer . . . or other officers or employees of this City engaged in the performance of their respective duties, job description, and/or enforcement authority . . . . Such person shall be guilty of a misdemeanor and, upon conviction thereof, … shall be subject to a fine of not more than $1,000 or by imprisonment . . . for a period of not more than six months, or by both . . . .

Or. 1925, § 1-14. The operative language – which makes it unlawful for sidewalk vendors to "obstruct, impede, threaten, follow, intimidate or interfere in any way" with any City employees in performance of their duties – mirrors provisions held facially invalid under the First Amendment in several Supreme Court decisions, including *Hill*, 482 U.S. at 453, *Lewis v. City of New Orleans*, 415 U.S. 130, 131-33 (1974) and *Kolender v. Lawson*, 461 U.S. 352, 353-54 (1983). Underlying these holdings are two separate constitutional doctrines.

43.     First, the Supreme Court has consistently rejected state or local enactments as facially overbroad under the First Amendment when they prohibit speech that "'interrupt[s]' an officer'" in carrying out his duties. *E.g. Hill*, 482 U.S. at 462. In *Hill*, the Court held that, where a city ordinance "prohibits speech that 'in any manner . . . interrupt[s]' an officer," "[t]he Constitution does not allow such speech to be made a crime." *Id.* at 462. The Court explained that (1) "[c]riminal statutes must be scrutinized with particular care" and (2) "those [statutes] that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.* at 459; *Lewis*, 415 U.S. at 131-34 (striking down a City of New Orleans ordinance as "overbroad in violation of the First and Fourteenth Amendments and .

. . therefore facially invalid").  Here, by forbidding sidewalk vendors (as well as others) from "obstruct[ing], imped[ing], threat[ing], . . . intimidat[ing] or interfer[ing] in any way" with an official's duties, the EOC criminalizes a broad swath of constitutionally protected conduct under the First Amendment.  *Hill,* 482 U.S. at 460-61 ("contrary to the city's contention, the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers").  This provision is constitutionally overbroad and facially invalid in its entirety.

44.    Second, enactments of this kind are also "unconstitutionally vague within the meaning of the Due Process clause of the Fourteenth Amendment." *Kolender*, 461 U.S. at 353-54; *see, e.g., Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (finding ordinance void for vagueness "both in the sense that it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden . . .' [citation] and because it encourages arbitrary and erratic arrests and convictions" under this overbroad ordinance).[14]  On its face, the EOC's language, which seeks to outlaw any and all conduct by sidewalk vendors to "obstruct, impede, threaten, follow, intimidate, or interfere in any way" with a City official's duties, is already plainly so overly broad that persons of "of common intelligence" would be "forced to guess" at its meaning.  *E.g., Smith v. Goguen,* 415 U.S. 566, 574 (1974).  But, as *Kolender* further held, "the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine – the requirement that a legislature establish minimal guidelines to govern law enforcement.'  Where the legislature fails to provide such minimal

---

[14] Where the ordinance being examined under "the due process doctrine of vagueness" is "capable of reaching expression sheltered by the First Amendment," this doctrine "demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974).  Here, as described above, the EOC provision plainly reaches substantial expression sheltered by the First Amendment and therefore requires a higher degree of specificity

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" 461 U.S. at 358 (quoting *Smith*, 415 U.S. at 574, 575 (citation omitted)); *see id.* at 361 (holding that the statute in question "is unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do" to satisfy its terms). So also here, the City's overbroad and unconstitutionally vague language wholly fails to inform sidewalk vendors as to how its terms could be satisfied. As such, the City's EOC provision fails in all respects.

### B. The City's Impoundment Provisions and Their Implementation Violate the Fourth, Fifth and Fourteenth Amendments.

45. In enacting and implementing the impoundment provisions adopted in Ordinances 1925 and 1789, the City ignored two fundamental constitutional principles: (1) the Fourth and Fourteenth Amendments' protection against unreasonable interferences with one's property, *Soldal v. Cook Cnty., Illinois*, 506 U.S. 56, 61-62 (1992) ("the [Fourth] Amendment protects property as well as privacy"), and (2) the Fifth and Fourteenth Amendments' guarantee of due process, i.e., one's "right to notice and an opportunity to be heard . . . 'at a meaningful time and in a meaningful manner,'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). As detailed *infra*, these principles are violated by:

\*    Or. 1925, § 15-829, its lengthy impoundment provisions that purports to authorize "[a]ny city official" to "impound a Sidewalk Vendor's vending cart, equipment, food, utensils, goods, flowers, toys, furniture, or merchandise . . . used in violation of" the eleven provisions set forth in the City's Article, nine of which are challenged here; and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

\*    Or. 1789, §15-828, the earlier impoundment provision that purports to authorize "any peace officer or code enforcement officer" to "seize as evidence any item used in" any violation of the City's sidewalk vending Article.

*Unlawful Seizures of Property Violating the Fourth and Fourteenth Amendments.*

46.    Seizures of private property by a local government are without exception subject to Fourth Amendment scrutiny.  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) ("a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests" (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  Unlike the majority of Fourth Amendment cases, however, the City's seizures of sidewalk vendors' property take place "in a noncriminal context."  *Soldal,* 506 U.S. at 66-67 (the Fourth Amendment's "protection applies in the civil context as well").  When a local government's attempt to seize private property is not based upon its "authority to . . . investigate criminal activity," issues of probable cause and warrants become beside the point, and the grounds which can lawfully authorize such a seizure are substantially more limited.  *E.g.*, *Miranda v. City of Cornelius*, 429 F.3d 858, 863 (9th Cir. 2005).  Courts, for example, have repeatedly blocked local governments' ability to conduct civil impoundments of homeless persons' property[15] and, under the rubric of the "community caretaking" doctrine, have

---

[15] *E.g., Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005, 1013-16 (C.D. Cal. 2011) (preliminary injunction, finding police had "unlawfully and unreasonably seized [homeless persons'] personal property in violation of the Fourth Amendment"), *aff'd*, 693 F.3d 1022, 1030 (9th Cir. 2012) (same); *Fund for Empowerment v. City of Phoenix,* 646 F. Supp. 3d 1117, 1128-30 (D. Ariz. 2022 ) (preliminary injunction protecting property of homeless person, plaintiffs "demonstrated that they are likely to succeed on the merits of their Fourth Amendment claims"); *see Justin v. City of Los Angeles*, 2000 WL 1808426, at \*10 (C.D. Cal. Dec. 5, 2000) ("The Defendants in the instant case have not put forward

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

similarly restricted local governments' ability to impound vehicles after their driver is arrested for non-criminal violations unless such vehicles "jeopardize public safety." *Id.* at 864.

47.    Here, under the Fourth and Fourteenth Amendments, the City is barred from seizing sidewalk vendors' property on two grounds: (1) due to SB-946, SB-972 and other legal barriers, the City lacks any lawful authority to seize vendors' property under the total of ten of impoundment provisions challenged here in Ordinances 1789 and 1925, and (2) applying the Fourth Amendment's fundamental reasonableness test to the present facts – balancing the "nature and quality of the [City's] intrusion" on sidewalk vendors' possessory interests against the "importance of the governmental interests" (*Jacobsen*, 466 U.S. at 125) – the City's interest in support of impoundment falls far short of the substantial harm inflicted upon individual vendors.

### 1.    The City lacks lawful authority to impound sidewalk vendors' property under its Ordinance provisions.

48.    As shown below, each of the ten impoundment provisions challenged here cannot lawfully authorize the City's seizure of sidewalk vendors' goods and equipment.[16]

---

any justification for or interest in seizing and destroying Plaintiffs' Property. . . . Plaintiffs' property is protected by the Fourth Amendment and Plaintiffs have shown a likelihood of succeeding on the merits of this claim").

[16] Although each of these challenged provisions address a different subject matter, the City's language makes it clear that (1) in its overall "Impoundment authorization" provision in Or. 1925 (§ 15-829(b)) no matter which of the nine impoundment provisions is used to seize vendors' property, the officer conducting the impoundment is purportedly authorized to impound the "vending cart, equipment, food, utensils, goods, flowers, toys, furniture, or merchandise" present when the seizure occurs and (2) in the remaining impoundment provision in Or. 1789 (§ 15-828) that the officer is authorized to seize "any item used" by the vendor when she allegedly commits any violation of the City's vending Article.

### a. Or. 1925, § 15-829(b)(3) – no local sidewalk vending permit.

49.    This impoundment provision, which purports to allow the City to seize goods and vending equipment from sidewalk vendors who lack a local vending permit, directly conflicts with provisions of state law as enacted by SB-946. *E.g.*, *Sherwin-Williams*, 4 Cal. 4th at 897 (when a city's "local legislation conflicts with state law, it is preempted by such law and is void"). While SB-946 certainly allows local governments to require sidewalk vendors to obtain "a permit for sidewalk vending" in their jurisdictions, Cal. Gov't Code § 51038(c)(4), it does not permit local governments to seize the property of sidewalk vendors simply because they were found vending without such a permit. *Id.* § 51039(a)(1). Instead, although SB-946 treats *any* "violation of a local authority's sidewalk vending program" as "punishable only" by administrative fines, it allows localities to impose a higher fine on vendors found to be vending without a permit -- – ranging up to $1,000 for a third or subsequent violation. *Id.* §§ 51039(a)(1) & 51039(a)(3)(A)(i-iii). Thus, while SB-946 allows localities to impose a significant monetary penalty for this violation, it forbids the imposition of the much larger penalty of seizing vendors' goods or equipment used to conduct their businesses. These facts were unquestionably known to the City, and yet the City chose to ignore them in adopting Or. 1925.[17]

---

[17] Although the language of § 15-829(b)(3) refers to a "city business license" in addition to a "valid . . . sidewalk vending permit" as a basis for an impoundment, no other provision in the City's Municipal Code provides that a vendor's lack of a city business license allows the City to confiscate a sidewalk vendor's property of any kind. And, because SB-946 treats any "violation of a local authority's sidewalk vending program" as "punishable only" by administrative fines, such an administrative fine is the only other possible lawful sanction for this violation. Cal. Gov't Code § 51039(a)(1).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### b.    Or. 1925, § 15-829(b)(1) – no County health permit.

50.    This provision, which purports to allow the City to seize goods and vending equipment from sidewalk vendors selling food while not possessing a County health permit, is also unlawful.  Here, following adoption of SB-972, responsibility for sidewalk vending food safety was turned over to the Department of Public Health and its designated local health agencies, and not cities like Fontana.  Cal. Health & Safety Code § 113705 ("The Legislature finds and declares that the public interest requires that there be uniform statewide health and sanitation standards for retail food facilities"); *see id.* §113773 (Retail Food Code definition of "enforcement agency"); *id.* §113774 (same; definition of "enforcement officer").  In San Bernardino County, it is DEHS, the lawful "enforcement agency," that issues the county health permits cited in Or. 1925 and must enforce them.  *See* Cal. Health & Safety Code §114368.8 (d) & (e) (when a "compact mobile food operation is required to obtain a permit" it is provided by the relevant "enforcement agency").[18]  Further, when sidewalk vendors are required to obtain such a permit, vendors found "operating without a permit" can be sanctioned only by an administrative fine that is "not to exceed three times the cost of the permit."  Cal. Health & Safety Code §114368.8 (c) & (d).  Thus, only

---

[18] Notably, in January 2022, the Fontana City Council acknowledged that the City lacked any lawful basis to enforce the provisions of the Retail Food Code on its own and sought to reverse this situation by adopting Municipal Code Amendment (MCA) No. 22-01.  While acknowledging that only DEHS had authority to implement and enforce the Retail Food Code's provisions, the Council inserted language into its Municipal Code purporting to grant this same authority to the City itself.  Fontana, Cal. Ordinance 1882 (2022) ("Or. 1882") (amending §§ 13-27 and 13-30): *see id.*, appended Action Report, at p. 1. But because only the Legislature, and not City Council, can award such authority, this action was void and without effect.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the DEHS, and not the City, must enforce this Retail Food Code violation, and the sanction is again only the specified fine, and not any form of impoundment.

51.    Importantly, moreover, the Department of Public Health and/or DEHS possess all necessary authority to inspect and, if needed, impound sidewalk vendors' "food, equipment, or utensils," should this become necessary.  Under Cal. Health & Safety Code § 114393, it is the well-qualified health officers and environmental specialists that are called upon to inspect and, where necessary to safeguard food safety, to impound "food, equipment, or utensils."  *Id.*; *see id.*  § 113774 (designated "enforcement officer" is required to carry out this function). These Code provisions permit impoundment only where the following conditions are met:

*    The inspection is conducted by an enforcement officer with appropriate qualifications to evaluate a vendor's "food, equipment, or utensils";

*    The items inspected are "found to be, or suspected of being, unsanitary or in such disrepair that food, equipment or utensils may become contaminated or adulterated";

*    This finding is "[b]ased upon inspection findings or other evidence." *Id.*

52.    Unlike the City's unlawful impoundment provision challenged here, (1) the DEHS or State Department of Health enforcement officer conducting the inspection must be a trained expert, (2) the items in question must be found to be "unsanitary or in such disrepair" that they could become "contaminated or adulterated," and (3) the officer's determinations must be "based on inspection findings or other evidence" before the vendor's property can be impounded.  Cal. Health & Safety Code § 114393.  Critically, none of these essential steps are present in the City's unauthorized and truncated process, especially given that they are conducted by 4Leaf staff with no authorization or health enforcement training.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### c.    Or. 1925, § 15-829(b)(2) -- seizure of unattended property.

53.    This provision purports to permit the seizure of sidewalk vendor property that "appear[s] to be *unattended or abandoned* on public or private property for more than thirty . . . consecutive minutes" after "reasonable attempts [are] made to locate" the owner "within the first fifty 50 feet" around that property. Ord. 1925, § 15-829(b)(2) (emphasis added).  However, California law will permit a local government to seize unattended property "'only where [it] is intentionally abandoned,' [and] not simply 'unattended.'"  *Lavan v. City of Los Angeles,* 797 F. Supp. 2d 1005, 1012 (C.D. Cal. 2011), *aff'd*, 693 F.3d 1022, 1030 (9th Cir. 2012) (lower court "correctly held that the Fourth Amendment's protections extend to Appellees' unabandoned property"); *Kincaid v. City of Fresno*, 2006 WL 3542732, at *37 (E.D. Cal. Dec. 8, 2006) ("[i]n California . . . an item is the property of its owner unless the owner intentionally and voluntarily abandons it . . .").  Whether property has been voluntarily abandoned "is determined by the intent of the owner," and the "'inquiry should focus on whether, through words, act or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the . . . seizure.'"  *Lavan,* 797 F. Supp. 2d at 1013 (quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986)).  "Such a determination is 'to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property.'"  *Id.*  Accordingly, this provision's purported authorization for officers to (1) seize vendors' property that is merely unattended, (2) decide that such property is unattended after only "30 consecutive minutes" and after (3) making reasonable attempts to locate the property owner limited only "within the first 50 feet of the items" falls far outside the well-settled legal parameters for the seizure of such property and plainly violates California law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### d.     Or. 1789, § 15-828 – seizure of vendor property as evidence.

54.     This impoundment provision, adopted in Or. 1789, purports to authorize the City's officers to "seize as evidence any item used in . . . a violation of" its sidewalk vending Article.  But the City and its contractors have consistently discarded the seized items without ever using them as evidence.  *See supra*, pp. 21-22.  Even more fundamentally, the probable cause standard – which allows the seizure of property to obtain evidence of a crime with sufficient cause – does not apply to "non-criminal violation[s]" like those at issue here.  *Miranda*, 429 F.3d at 862-64 & n.3 ("[t]he standard of probable cause is peculiarly related to criminal investigations, not routine, non-criminal procedures"); *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (citing *Miranda* and rejecting the government's contention that a driver's "commit[ing] a traffic violation" can be "sufficient justification" to make a seizure of the driver's vehicle "reasonable under the Fourth Amendment").  Nor can the City subvert this rule by attempting to criminalize vending violations.  Cal. Gov't Code § 51039(d)(1) (violations of a local government's vending rules or regulation "shall not be punishable as an infraction or misdemeanor"); *see also* Or. 1789, § 15-827(F) (the City Ordinance itself provides that "[a]ny violation of [the City's sidewalk vending] Article shall not be punishable as an infraction or misdemeanor").  Thus, even if the City were in fact seizing vendors' property as evidence of alleged violations of its vending regulations (and it is not), such seizures have no lawful basis under the Fourth Amendment.

### e.     The remaining City impoundment provisions.

55.     The City's other impoundment provisions challenged herein also fail for the following reasons:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### (1) Impoundment provisions dependent on other violations of the City's sidewalk vending Article -- Or. 1925, §§ 15-829 (b)(4), (5), (9) & (c).

56.     These four impoundment provisions all rest upon a sidewalk vendor's violation of one or more other provisions of the City's sidewalk vending Article, which then are used to seize the vendor's goods and equipment.  But SB-946 expressly forbids such a sanction, instead requiring a local government to treat any "violation[s] of [its] . . . sidewalk vending program" as "punishable only" by administrative fines.  *E.g.*, Cal. Gov't Code § 51039(a)(1).  Moreover, even if SB-946 did not bar the City from effectuating such seizures (it does), many of the City's provisions are quite minor (e.g., no "balloons, flags, banners, on-site furniture, or any freestanding signs" (Or. 1789, § 15-822(B)(8) or "[e]xterior . . . display of . . . equipment, materials, goods, wares, or merchandise associated with the vendor" (*id.* § 15-822(B)(10)), and the like, and could not rationally justify seizing vendors' property in any event.

57.     Two of these provisions are based solely upon a vendor's accumulation of a specified number of violations of the City's vending Article.  *E.g.*, Or. 1925, § 15-829(b)(9) (authorizing the seizure of a vendor's property whenever, within a 24-month period, the vendor has received "three or more administrative citations" for violations of the vending Article) and Or. 1925, § 15-829(c) (authorizing a "forfeiture impoundment" where a vendor has violated the City's vending Article twice or more over a 24-month period and received a notice of violation).  As such, these provisions provide no basis for a seizure of vendor property.

58.     The two remaining provisions rest upon a violation of the City's vending Article, coupled with a further condition.  The first, § 15-829(b)(4), is triggered by (a) a vendor's violation of any part of the City's sidewalk vending

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Article and (b) the vendor's "refus[al] or fail[ure] to provide identification."  The second, § 15-829(b)(5), is triggered by (a) a vendor's violation of any part of the City's vending Article, and (b) her "fail[ure] to remove items from public or private property within" 30 minutes after being "instructed to do so by a City official."  Neither condition justifies this outcome.  As to a vendor's purported obligation to provide identification, *Brown v. Texas*, 443 U.S. 47, 52 (1979), holds that "the guarantees of the Fourth Amendment do not allow" a City officer to "stop[] and demand[] identification from an individual" when there is not a basis to believe she is involved in criminal activity.  Nor does a City officer possess the authority to require a vendor to remove her property within 30 minutes merely because of a pending vending violation.  *E.g.*, *Florida v. Royer*, 460 U.S. 491, 497-98 (1983) (person approached by police "may not be detained even momentarily without reasonable, objective grounds for doing so").

> **(2)    Other impoundment provisions based on vendor conduct – Or. 1925, § 15-829(b) (6) & (8).**

59.    The final two impoundment provisions involve vendor conduct. Section 15-829(b)(6) purports to authorize the seizure of sidewalk vendors' property when vendors "block[] or obstruct[] the free movement of pedestrians on sidewalks" and "fail[] to maintain a minimum of forty-eight inches (48") of accessible path of travel" or otherwise violate the federal Americans with Disability Act of 1990 ("ADA").  Importantly, this provision largely overlaps with § 15-822(B)(2), adopted in Or. 1789, which (i) requires vendors to leave open only a "minimum of thirty-six inches [36"] of accessible path of travel" on the sidewalk (the minimum distance required in the ADA) – one foot less than required by § 15-829(b)(6) – and (ii) makes no reference to an ADA violation.  Notwithstanding these limited additions to the earlier provision, § 15-829(b)(6) cannot escape SB-946's requirement that local governments must treat all "violation[s] of [its] . . .

38
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sidewalk vending program" as "punishable only" by administrative fines, thereby precluding the City from seizing vendors' goods and equipment.  Gov't Code § 51039(a)(1).

60.    The last impoundment provision, § 15-829(b)(8), purports to authorize the seizure of sidewalk vendor property when vendors are in possession of "items" allegedly creating "an imminent and substantial danger or environmental hazard to the health, safety, or general welfare of the public."  This provision fails for at least three reasons.  First, as explained with regard to § 15-829(b)(1) (no County health permit), the Department of Health and/or San Bernardino County DEHS are responsible to oversee sidewalk vendors' compliance with the Retail Food Code when they are selling food from "a pushcart, . . . pedal-driven cart . . . or other nonmotorized conveyance."  Cal. Health & Safety Code § 113831(c).  As part of the Retail Food Code, these State-sanctioned agencies, and not the City of Fontana, administer the CMFO guidelines and regulations applicable to sidewalk vendors that call for sidewalk vendors to utilize "food-related and utensil-related equipment" that are either accredited by an accepted accreditation body or evaluated for approval by the State  agencies themselves, and are subject to "routine inspections or inspection on the basis of a consumer complaint" by these agencies.  Cal. Health & Safety Code § 114368.5(e) & (f); *id.* § 114368.1(b)(2).  Second, like the City's other impoundment provisions, § 15-829(b)(8) is governed by SB-946's requirement that local governments must treat all "violation[s] of [its] . . . sidewalk vending program" as "punishable only" by administrative fines.  Third, this provision's extremely broad language provides no meaningful definition or criteria of what constitutes an item "creating an imminent and substantial danger or environmental hazard to the health, safety, or general welfare of the public," particularly given that the provision itself cites as alleged examples of this condition "flashing lights," "animated devices or signs," or "any radio,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

loudspeaker, or other machine or device for the producing . . . of sound," items that can in no way can be considered to jeopardize the "health, safety, or general welfare" of the public.  *See* § 15-829(b)(8).

### 2. The Fourth Amendment reasonableness test weighs decisively in favor of sidewalk vendors and Plaintiff.

61.    The Fourth Amendment's fundamental test for reasonableness – namely, "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion," *Jacobsen*, 466 U.S. at 125 – readily demonstrates that any "importance of the [City's] governmental interests alleged" to justify its seizures of vendor property falls far short of the harm inflicted by "the invasion of the Plaintiffs' possessory interests" in that property.  *Fund for Empowerment*, 646 F. Supp. 3d at 1128-29; *e.g.*, *Lavan*, 797 F. Supp. 2d at 1015 (local government's seizures of homeless persons' property "violated the Fourth Amendment despite an inherent interest in keeping public areas clean and prosperous"); *Kincaid*, 2006 WL 3542732, at *40 (finding, as to homeless persons, that "the balance of hardships weighs heavily in favor of Plaintiffs," whose "interest in protecting against unlawful seizure and immediate, irrevocable destruction of their personal property including the loss of constitutional rights" is "an injury that the law will not tolerate"); *see Santiago v. City of Los Angeles*, 2016 WL 7176694, at *6-8 (C.D. Cal. Nov. 17, 2016) (rejecting Defendants' claim that sidewalk vendors' property "posed an immediate threat to health" because a vendor "in possession of a cart, a fruit tray, a utensil . . . does not violate the law").

62.    The City, on the other hand, has described its governmental objective when impounding vendors' property in its preface to Or. 1925, where it states that adoption of the EOC misdemeanor offense and array of additional "impoundment" provisions will "protect the City's community by more effectively regulating [the]

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sale of food, goods, and merchandise creating a health and safety danger."  Or.
1925, 4th Whereas clause.  City officials further confirmed this objective in the
very City Council meeting in which Or. 1925 was proposed.  *E.g.,* City of Fontana,
10/10/2023 City Council Meeting, at 55:05-12,
https://fontana.granicus.com/player/clip/897?view_id=1&redirect=true  (Deputy
City Manager Phil Burum: "for the last two years . . . [the City has been]
combat[ing] the illegal, unlicensed, unpermitted sale of dangerous food"); *id.* at
1:19:51-1:20:01 (Mayor Warren: "This council is taking action to protect this
community.  We have people that get on social media saying they got sick at this
location"); *see also* City of Fontana, *Impacts of Unlicensed Street Vending in
Fontana*, https://www.Fontanaca.gov/3641/Impacts-of-Unlicensed-Vending (by
May 2023, City officers were working "through the confiscation of perishable
goods[] to protect public health and safety").  Strikingly, however, at no time has
the City or its senior officials provided meaningful evidence that the presence of
sidewalk vendors in the City ever created any significant health or safety danger to
its citizens.

63.    But this objective – if viewed as the City's governmental interest –
plainly cannot justify *the City's* seizures of sidewalk vendors' valuable goods and
equipment as averting any such danger.  Rather, it is the Department of Public
Health and, in San Bernardino County, DEHS that are responsible for
"safeguard[ing] public health" and, under SB-972 and the Retail Food Code,
regulating sidewalk vendors selling food.  *Supra*, pp. 19, 33-34.  Thus, even if
there were a meaningful "health and safety danger" in the City – and none has been
shown – the Legislature has tasked the Department and DEHS with redressing that
issue using their far greater regulatory authority, professional qualifications, and
expertise and available resources.  *Supra,* pp. 34-35.  Ignoring this, the City has
hired 4Leaf, whose business is construction, to enforce its unlawful restrictions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Rather than address health concerns, the City has, through 4Leaf, indiscriminately seized the property of any unpermitted vendors, regardless of whether a vendor is selling food or goods entirely unrelated to food.  These facts leave little doubt that the purported objective of the City's campaign against sidewalk vendors is only pretextual.

64.    Balanced against the City's professed interest in seizing vendors' property are the severe intrusions and harms that the City has imposed on sidewalk vendors in the form of lost, damaged or destroyed personal property and lost income and employment.  *Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003) (citing "another rule of Fourth Amendment law: A seizure becomes unlawful when it is 'more intrusive than necessary. [citation omitted] The scope of a detention 'must be carefully tailored to its underlying justification'" (quoting *Florida v. Royer*, 460 U.S. at 500, 504)); *see, e.g.*, *Fund for Empowerment*, 646 F. Supp. 3d at 1129 (homeless persons: "here the invasion of the Plaintiffs' possessory interests outweighs the City's asserted justification.  There is no indication that the City only seizes items deemed to be health or public safety hazards, which would align with their purported justifications").  Sidewalk vendors, lead lives of difficult circumstances, and the destruction of their goods and merchandise and deprivation of their carts and other vending equipment for weeks or more subjects them to real hardship.  Furthermore, when vendors are repeatedly prevented from operating in the City for meaningful spans of time, their absence deprives their customers of goods and services they enjoy, ultimately eroding their customer base and the long-term sustainability of their business.  All taken together, therefore, the Fourth Amendment's reasonableness test tilts strongly in favor of the City's sidewalk vendors.

*Unlawful Seizures Violating the Fifth and Fourteenth Amendments and Due Process.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

65.    The City, 4Leaf, and its personnel have also consistently violated the Fifth and Fourteenth Amendments and Due Process clause in their treatment of sidewalk vendors.  "Any significant taking of property by the State is within the purview of the Due Process Clause."  *Fuentes v. Shevin*, 407 U.S. at 86; *see, e.g.*, *Lavan*, 693 F.3d at 1032 ("[a]s we have repeatedly made clear, '*[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking.*' This simple rule holds regardless of whether the property in question is an Escalade or an EDAR, a Cadillac or a cart."  *Id.* (quoting *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)) (citation omitted; emphasis added). Here, the City and its agents have repeatedly violated this and other requirements of the Due Process clause.

### 3.    The City and 4Leaf Personnel Deprive Sidewalk Vendors of Due Process and a Notice and Opportunity to be Heard.

66.    Due Process violations begin as soon as the City's officers or 4Leaf personnel encounter a sidewalk vendor and, as typically happens, proceed to seize his or her property without advance notice or an opportunity to be heard.  As the Supreme Court held in *United States v. James Daniel Good Real Property*: "[o]ur precedents establish the general rule that individuals must receive notice and an opportunity to be heard *before the Government deprives them of property.*" 510 U.S. 43, 48 (1993) (emphasis added).  This is particularly true of seizures by 4Leaf personnel, who frequently refuse to identify themselves and instead immediately forcibly seize the vendor's property for disposal or impoundment.  After the seizure, the officer immediately disposes of "impounded items that are perishable and/or cannot be safely stored" (Or. 1925, § 15-829(d)), leaving the vendor with an outright loss and no recourse.  *Lavan*, 797 F. Supp. 2d at 1017-18 (a city's "practice of on-the-spot destruction of seized property" presents "an enormous risk

of erroneous deprivation"). The remaining property is "held by the [C]ity for not less than 30, nor more than 60, calendar[] days" (Or. 1925, § 15-829(e) and, if not claimed within that period, is also disposed of. Or. 1925, § 15-829(j). Each of these steps by the City and 4Leaf personnel compound the sidewalk vendors' losses and underscore the City's ongoing violations of the Due Process clause.

67. Nor does the City offer sidewalk vendors any meaningful opportunity for a post-seizure hearing. *Fuentes,* 407 U.S. at 81 ("If the right to notice and a hearing is to serve its full purpose . . . it must be granted at a time when the deprivation can still be prevented"). While sidewalk vendors may request an administrative hearing before the City Manager (or designee) "within 15 calendar days of the impoundment" (Or. 1925, § 15-829(g)), this post-seizure procedure in no way provides vendors with a genuine opportunity to be heard "'at a meaningful time and in a meaningful manner.'" *Lavan*, 797 F. Supp. 2d at 1017. In fact, when 4Leaf personnel seize vendors' property, they typically fail entirely to inform vendors of any post-seizure opportunity to be heard, telling them only to wait 30 days and then pay the impound fee.

68. Even if an officer does inform a vendor of her ability to request an administrative hearing, pursuing that option would provide little or no benefit. Under Ord. 1925, § 15-829(g), "if successful in [the] appeal," a vendor only (i) receives back from the City their remaining goods or equipment "excluding any items . . . immediately disposed of," and (ii) is excused from the City's impound fee. But a vendor must pay the City's "appeal fee" of $345[19] even to initiate such a hearing. Moreover, the lengthy steps required thereafter would likely delay the appeal's resolution well beyond 60 days, during which the vendor – had she not appealed – could have already reclaimed any remaining undestroyed property and

---

[19] *See* City of Fontana, Appeal Checklist, https://www.fontanaca.gov/DocumentCenter/View/8248/Appeal -- Checklist.

continued to operate her business.  Or. 1789, § 15-826. To complete an appeal involves (i) a 15-day period to request an appeal, within which the aggrieved vendor must file a written appeal statement, after which (ii) the City clerk has ten more days to transmit the written statement to the City manager, followed by (iii) a hearing set no "later than 60 days" after the filing of the vendor's written statement.  Or. 1789, § 15-826.  Accordingly, even a successful appeal will likely only result in the return of the vendor's still remaining items at a later time than if there was no appeal.

### C.    The City's Ordinances and Practices Are Barred by California's Statutory Framework for Sidewalk Vendors.

69.    In addition to supporting the federal claims discussed above, the State Legislature's enactment of SB-946 and SB-972 provides an independent basis to invalidate the challenged provisions of the City's Ordinances and their resulting practices.

70.    The City is a general law city under the laws and Constitution of the State of California.  "Where local legislation conflicts with general law, the local ordinance is void."  *Water Quality Ass'n v. Cnty. of Santa Barbara,* 44 Cal. App. 4th 732, 741 (1996); *see Am. Fin. Servs.*, 34 Cal. 4th at 1251; *Sherwin-Williams,* 4 Cal. 4th at 897.  Here, because the challenged provisions in the City's two Ordinances clearly conflict with provisions in SB-946 and SB-972, they are preempted on two separate grounds: (1) they have "'enter[ed] an area either expressly or impliedly fully occupied by" State law, and/or (2) they are "contradictory or inimical [to State law]."  *Am. Fin. Servs.*, 34 Cal. 4th at 1251.

71.    On the first ground, the California Supreme Court has stated:

> Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, *the entire control over whatever phases of the subject are*

> *covered by state legislation ceases as far as local legislation is concerned.*

*Id.* at 1253 (quoting *In re Lane*, 58 Cal. 2d 99, 102 (1962) (emphasis added)); *see, e.g.*, *Eastlick v. City of Los Angeles*, 29 Cal. 2d 661, 666-67 (1947) (when the Legislature provides "a general scheme for the presentation of such liability claims to be effective throughout the state . . . with respect to the subjects covered, the [legislation] occupies the entire field and it impliedly precludes control to that extent by municipal or local regulation") (citation omitted).  The "occupy the field" standard is satisfied, moreover, where "the Legislature has expressly manifested its intent to 'fully occupy' the area,'" *Am. Fin. Servs.*, 34 Cal. 4th at 1252 (quoting *Sherwin-Williams*, 4 Cal. 4th at 898), or where "there are clear indications of the Legislature's implicit intent to fully occupy the field of regulation." *Id.*  Among the important indicia of the Legislature's intent to occupy the field is when "the subject is one which . . . requires uniform treatment throughout the state." *Id.* at 1252.

72.    Clearly, SB-946 and SB-972 satisfy the "occupy the field" ground for State preemption.  In the case of SB-946, the Legislature established a comprehensive framework prescribing how local governments may formulate, implement and enforce their sidewalk vending programs, and included provisions expressly mandating local governments' compliance.  Cal. Gov't Code § 51038(b) ("A local authority's sidewalk vending program shall comply with all of the following standards"); Cal. Gov't Code § 51039(a)(1) ("A violation of a local authority's sidewalk vending program . . . is punishable only by the following," i.e., sets of tiered tables of administrative fines).  To eliminate any doubt, the Legislature expressly stated that "[a] local authority shall not regulate sidewalk vendors except in accordance with Sections 51038 and 51059." *Id*. § 51037(a).  In SB-972, the Legislature adopted a similarly comprehensive framework governing food sales, preparation, storage, sanitation and equipment – as well as inspections

46

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

and permitting – as set forth fully in the CMFO provisions of the Retail Food Code.  *E.g.,* Cal. Health & Safety Code, Division 104, Part 7.  In doing so, the Legislature chose to keep the authority to enforce these provisions with the Department and local health agencies such as DEHS.  Cal. Health & Safety Code §§ 113773 & 113774.   In each instance, SB-946 and SB-972 have adopted "a general scheme for the regulation" of an important subject requiring statewide treatment and thereby exercised "entire control over . . . the subject[s] . . . covered by state legislation."  *Am. Fin. Servs.*, 34 Cal. 4th at 1253; *see Lane*, 58 Cal. 2d at 102 ("where the state has fully occupied the field, there is no room for additional requirements by local legislation").

73.    On this ground for preemption, the California Supreme Court's decision in *Am. Fin. Servs.* is instructive.  There, the Legislature enacted comprehensive legislation combating predatory mortgage lending practices, and the City of Oakland adopted its own ordinance seeking to regulate similar practices. *Am. Fin. Servs.*, 34 Cal. 4th at 1244.  Although both measures were "similar in that they regulate[d] the same subject matter," they "differ[ed] in significant respects."  *Id.* at 1250.  In particular, Oakland's ordinance imposed substantially more severe sanctions and assigned liability to a differing and larger set of offenses.  *Id.* (citing examples).  Oakland argued that the State's legislation imposed only "statewide minimum standards, not statewide uniform standards for subprime home mortgage lending," leaving the field open for additional regulation. *Id.* at 1251-52.  The Supreme Court squarely rejected this argument.  Citing the State's "comprehensive[] regulat[ion]" of mortgage lending, it held that, "*[i]n revisiting this area fully occupied by state law, the Ordinance undermines the considered judgments and choices of the Legislature* and is therefore preempted." *Id.* at 1254, 1257 (emphasis added).   So too here.  The City's two sidewalk vending Ordinances – particularly (1) the EOC provision, (2) the impoundment

provisions, and (3) the conditioning of permits on vendors' acceptance of onerous provisions that violate SB-946's "objective health, safety or welfare concerns" requirement – undermine the considered judgments and choices of the Legislature in SB-946 and SB-972.  They are therefore preempted.

74.    As to the second ground, local legislation is also preempted when it is "contradictory or inimical [to State law]."  *Id.* at 1251; *e.g.*, *Chevron U.S.A. Inc. v. County of Monterey*, 15 Cal. 5th 135, 145 (2023) ("local law is preempted as 'contradictory' when it 'cannot be reconciled with state law'"); *id.* at 139-40 (local ordinance banning certain oil extraction activities was preempted by statewide regulations allowing those activities).  Here, each of the City's challenged provisions is preempted in this manner:

(a)    The City's EOC provision codifying a criminal misdemeanor offense  contradicts, and is preempted by, both SB-946 (Gov't Code § 51039(d)(1)-(2) (prohibiting local sidewalk vending provisions that are "punishable as an infraction or misdemeanor"; applicable to "all pending criminal prosecutions under any local ordinance . . . regulating" sidewalk vendors) and SB-972 (Health & Safety Code § 114368.8(b) (any violation of the sidewalk vending provisions of the Retail Food Code "shall not be punishable as an infraction or misdemeanor"));

(b)    The City's challenged impoundment provisions in Or. 1925 and Or. 1789 contradict, and are preempted by, the following:

| | |
|---|---|
| Or. 1925, § 15-829(b)(3) -- no local vending permit | preempted by Gov't Code § 51039(a)(3)(A) (i-iii); *see id.* at (a)(1); |
| Or. 1925, § 15-829(b)(1) - no County health permit | preempted by Gov't Code § 51039(a)(1)(A-C) and Health & Safety Code § 114368.8(c) & (d); |
| Or. 1925, § 15-829(b)(2) -- seizure of unattended property | preempted by Gov't Code § 51039(a)(1)(A-C) and California law, *e.g.*, *Lavan*, 797 F. Supp. 2d at 1012; |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | |
|---|---|
| Or. 1789, § 15-828 -- seizure of vendor property as evidence | preempted by Gov't Code § 51039(a)(1)(A-C) and *id*. at (d)(1); |
| Or. 1925, §§ 15-829(b)(4), (5), (9) & (c) – dependent on other violations of the City vendor ordinance | preempted by Gov't Code § 51039(a)(1)(A-C) and, additionally for § 15-829(b)(4), *Brown,* 443 U.S. at 52, and § 15-829(b)(5), *Florida*, 460 U.S. at 497-98; |
| Or. 1925, § 15-829(b)(6), - blockage of free movement of pedestrians | preempted by Gov't Code § 51039(a)(1)(A-C); |
| Or. 1925, § 15-829(b)(8) - alleged substantial danger or hazard | preempted by Gov't Code § 51039(a)(1)(A-C) and Health & Safety Code § 114368.8(c) |

(c)     The City's requirement in Or. 1789, § 15-820 that sidewalk vendors accept certain provisions to obtain local vending permits contradicts, and is preempted by, SB-946's "objective health, safety, or welfare concerns" requirement.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Violation of First, Fifth and Fourteenth Amendments**
**(Against All Defendants)**

75.     Plaintiff realleges and incorporates by reference each and every allegation contained in the above paragraphs.

76.     The City's EOC provision enacted by the City Council and Mayor Warren establishes a purported criminal misdemeanor offense for "any person [that] obstruct[s], impede[s], threaten[s], follow[s], intimidate[s], or interfere[s] in any way with any City official[s] . . . engaged in the performance of their . . . duties." Or. 1925, §1-14.  This provision violates the U.S. Constitution in two separate ways.  First, the Supreme Court has consistently held that city ordinances that prohibit speech which "'interrupt[s]' an officer" in conducting his or her duties

49

are facially invalid under the First Amendment. *Hill*, 482 U.S. at 459, 462; *accord Lewis*, 415 U.S. at 131-34. Second, such ordinances fail when they are "unconstitutionally vague within the meaning of the Due Process clause," including (i) where they are so overly broad that "'men of common intelligence" would be "forced to guess" at their meaning and/or (ii) they "fail to provide such minimal guidelines" and thus "may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender*, 461 U.S. at 353-54, 358; *Smith v. Goguen,* 415 U.S. 566, 574-75 (1974). This application of the Due Process Clause is particularly relevant when an ordinance is "capable of reaching expression sheltered by the First Amendment," which is certainly the case here. *Goguen*, 415 U.S. at 573.

77.    When enacted, the City's EOC provision created a powerful mechanism for the City to silence sidewalk vendors confronted while vending or during subsequent proceedings. Faced with the prospect of a $1,000 misdemeanor fine or six months of imprisonment, no sidewalk vendor is at all likely to speak up in defense of their legal rights as a vendor. Among the severe injuries, costs and other harms that the EOC provision has inflicted on vendors are (a) intimidating vendors into silence while City agents confiscate the vendor's essential equipment and goods, (b) preventing vendors from demanding that the City return their seized property (i) before the end of the 30 to 60-day impoundment period or (ii) refusing to return the property at any time whatever and (c) forcing vendors out of the City to vend in locations outside the City.

78.    Defendants City, Mayor Warren, and the City Council, by their adoption of the EOC provision and their subsequent managing, directing, and instructing of City's officers and/or 4Leaf personnel in its implementation, have violated, and continue to violate, the First, Fifth and Fourteenth Amendments. Through these actions, these Defendants have attempted to treat the EOC provision

as constituting an obligatory statute or decree, policy and/or custom of the City of Fontana and an acceptable course of action for its officers and agents to pursue. *E.g.*, *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636-38 (9th Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-05 (1997). Moreover, these Defendants, acting intentionally, recklessly and/or with deliberate indifference to the consequences, have caused and required (1) Defendants 4Leaf, Craig Tole, Pete Roque and other 4Leaf personnel, and (2) Defendants Phillip Burum, Jeffrey Baughman, the Fontana Code Compliance Department, and other City employees, all working under color of law and acting deliberately and recklessly, to use the EOC provision to silence vendors while City agents confiscate vendors' essential equipment and goods, prevent vendors from demanding that the City return their seized property before the end of the 30 to 60-day impoundment period or at any time whatever, and thereby drive Fontana vendors to vend outside of the City. 520 U.S. at 405-06. In addition, the decisions of Defendants City, Mayor Warren and the City Council, along with Philip Burum and Jeffrey Baughman, to allow 4Leaf, Craig Tole, Pete Roque and other 4Leaf personnel to operate independently with little or no City supervision has permitted 4Leaf and its personnel to utilize the EOC provision, acting under color of law, to harass vendors, refuse to identify themselves, threaten vendors that they have no right to vend in the City and must leave, and fail to inform vendors of their rights. *See supra,* pp. 24-25.

79.    Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to the following relief:

a.    In light of the actual controversy between the parties concerning the EOC provision, a declaratory judgment that the EOC provision is facially invalid, void, and in violation of the First, Fifth and Fourteenth Amendments;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

b.     Injunctive relief barring all Defendants from invoking the City's EOC provision in violation of the First, Fifth and Fourteenth Amendments at any time and under any circumstances.  Such relief may initially take the form of an initial or preliminary injunction, followed by a permanent injunction, or other appropriate form of equitable relief.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983
### Violations of Fourth, Fifth and Fourteenth Amendments
### (Against All Defendants)

80.     Plaintiff realleges and incorporates by reference each and every allegation contained in the above paragraphs.

81.     The City, by the City Council and Mayor Warren, has adopted two Ordinances containing impoundment provisions that purport to allow the City's officers or 4Leaf personnel to confiscate the property of sidewalk vendors.  The City has used these provisions very extensively:

*     Or. 1925, enacted in October 2023, which purports to authorize "[a]ny city official" to seize sidewalk vendors' "vending cart, equipment, food, utensils, goods, flowers, toys, furniture, or merchandise" used "in violation of" any of nine impoundment grounds in this Ordinance challenged here (Or. 1925, § 15-829(b)) ; and

*     Or. 1789, enacted in February 2018, which purports to authorize "any peace officer or code enforcement officer" to "seize as evidence any item used in" any violation of the City's sidewalk vending Article. Or. 1789, § 15-828.

82.     These provisions violate both (i) the Fourth Amendment and Fourteenth Amendments, which protect sidewalk vendors against unreasonable and unlawful seizures of property (*e.g.*, *Soldal*, 506 U.S. at 61-62), and (ii) the Fifth and Fourteenth Amendments, which guarantee vendors the right to notice and an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

opportunity to be heard "at a meaningful time and in a meaningful manner" before their property is seized (*e.g.*, *Fuentes* 407 U.S. at 80).

83.    Under the Fourth and Fourteenth Amendments, the City is barred from utilizing the challenged provisions to seize the property of sidewalk vendors on two grounds.  First, pursuant to California's SB-946, SB-972 and other legal barriers, the City lacks any lawful authority to seize vendors' property under any of the challenged provisions.  *See supra*, pp. 32-40.  Second, under the Fourth Amendment's balancing test for fundamental reasonableness, the City's intrusion upon vendors' possessory interests in their personal property and the substantial harm and injuries resulting from that intrusion far outweigh the City's claimed governmental interest in its challenged provisions. *See supra*, pp. 40-43.

84.    In addition, any significant taking of property by the City falls within the purview of the Fifth and Fourteenth Amendments and, in particular, the Due Process clause.  As the Supreme Court has repeatedly held, "'[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking.'" *Lavan*, 693 F.3d at 1032 (quoting *Clement*, 518 F.3d at 1093); *see Fuentes*, 407 U.S. at 81 ("If the right to notice and a hearing is to serve its full purpose . . . it must be granted at a time when the deprivation can still be prevented").  Here, the City and its agents have repeatedly violated, and continue to violate, these constitutional requirements.

85.    The City's impoundment provisions have enabled City officers and 4Leaf operatives, acting under color of law, to unlawfully punish or sanction sidewalk vendors by depriving them of essential equipment and goods.  Once having seized a vendor's property, City officers and 4Leaf operatives destroy much of this property and withhold the remainder for lengthy periods of 30 to 60 days or, in some cases, without ever returning it.  Thus, City officers initially utilized § 15-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

828, adopted in Or. 1789, to confiscate and discard vendors' perishable goods without using them for the evidentiary purpose that this provision required, stripping vendors of valuable property without recompense. *See supra,* pp. 21-23. Later, after the City had enacted Or. 1925 and entered into its 4Leaf contract, City officers and 4Leaf operatives have utilized the Ordinance's multiple challenged impoundment provisions to confiscate vendors' "vending cart[s], equipment, food, utensils, goods, flowers, toys, furniture, or merchandise" instead of only vendors' perishable goods. *See supra,* pp. 23-24. Among the severe injuries, costs and other harms that the City agents' seizures of property have inflicted on Fontana vendors are (a) vendors' loss of goods and equipment destroyed or discarded by City agents, (b) impoundment of vendors' carts and other essential equipment, preventing them from conducting business for weeks or more at a time, and (c) erosion of vendors' customer base caused by periods of non-operation, driving vendors out of Fontana and into other cities.

86.    Defendants City, Mayor Warren and the City Council, by their adoption of the impoundment provisions challenged here and their subsequent managing, directing, and instructing of the City officers and/or 4Leaf personnel in their implementation, have violated, and continue to violate, the Fourth, Fifth and Fourteenth Amendments. Through these actions, these Defendants have attempted to treat the City's impoundment provisions as constituting obligatory statutes or decrees, policies and/or customs of the City of Fontana and an acceptable course of action for its officers and agents to pursue. *E.g.*, *AE ex rel. Hernandez*, 666 F.3d at 636-38; *see Bd. of Cnty. Comm'rs*, 520 U.S. at 403-05. Moreover, these Defendants, acting intentionally, recklessly and/or with deliberate indifference to the consequences, have caused and required (1) Defendants 4Leaf, Craig Tole, Pete Roque and other 4Leaf personnel, and (2) Defendants Phillip Burum, Jeffrey Baughman, the Fontana Code Compliance Department, and other City employees,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

all working under color of law and acting deliberately and recklessly, to utilize these impoundment provisions to punish or sanction sidewalk vendors by unlawfully seizing their essential equipment and goods, destroying much of this property and withholding the remainder for weeks at a time – in some cases, without ever returning it.  In addition, the decisions of Defendants City, Mayor Warren and the City Council, along with Philip Burum and Jeffrey Baughman, to allow 4Leaf, Craig Tole, Pete Roque and other 4Leaf personnel to operate independently with little or no City supervision has permitted 4Leaf and its personnel to utilize the City's impoundment provisions, under color of law, to harass vendors, refuse to identify themselves, threaten vendors that they have no right to vend in the City and must leave, and fail to inform vendors of their rights.

87.    Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to the following relief:

a.    In light of the actual controversy between the parties concerning the challenged impoundment provisions and the seizures implemented pursuant to them, a declaratory judgment that these provisions – and the seizures of sidewalk vendors' property they purport to authorize – are unlawful and in violation of the Fourth, Fifth and Fourteenth Amendments;

b.    Injunctive relief barring all Defendants from invoking the City's challenged impoundment provisions in violation of the Fourth, Fifth and Fourteenth Amendments and/or utilizing any such provisions to seize, destroy or withhold the equipment, goods or any other property of Fontana sidewalk vendors at any time and under any circumstances.  Such relief may initially take the form of an initial or preliminary injunction, followed by a permanent injunction.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## THIRD CAUSE OF ACTION
### SB-946 and SB-972
### Preemption by State Law
### (Against All Defendants)

88.    Plaintiff realleges and incorporates by reference each and every allegation contained in the above paragraphs.

89.    The challenged provisions of the City's Ordinances 1789 and 1925 conflict with, and therefore are preempted by, the California Legislature's enactment of SB-946 and SB-972.  As the California Supreme Court has repeatedly held, when a city government's "local legislation conflicts with state law, it is preempted by such law and is void."  *Sherwin-Williams Co.*, 4 Cal. 4th at 897; *see Water Quality Ass'n*, 44 Cal. App. 4th at 741.  Here, the City's Ordinances are preempted on two separate grounds:

a.    First, each of the City's challenged provisions "enter[s] an area . . . expressly or impliedly fully occupied by" State law.  *Am. Fin. Servs.*, 34 Cal.4th at 1251, 1253; *see supra*, pp. 46-48.  As discussed above, SB-946 and SB-972 have each adopted "a general scheme for the regulation" of an important subject requiring statewide treatment and have thereby exercised "entire control over . . . the subject[s] . . . covered by state legislation."  *Am. Fin. Servs.*, 34 Cal. 4th at 1253; *see Lane*, 58 Cal. 2d at 105 ("where the state has fully occupied the field, there is no room for additional requirements by local legislation").

b.    Second, local legislation is preempted when it is "contradictory or inimical [to State law]."  *Am. Fin. Servs.*, 34 Cal. 4th at 1251; *see Chevron U.S.A.*, 15 Cal. 5th at 139-40, 145.  At pages 48-50 above, each of the City's challenged provisions are shown to be contradicted by SB-946, SB-972 or both, and thereby are preempted on this ground as well.

90.    Importantly, this cause of action includes an additional violation by the City, namely its three unlawful permit requirements needed before sidewalk

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

vendors can obtain a local vending permit.  *Supra*, pp. 20-23.  While not addressed by federal constitutional provisions, the City has gone far beyond other local permit requirements imposed on its small businesses, and violates SB-946's "objective health, safety, or welfare" standard.  In particular, this SB-946 requirement bars local governments from imposing permit requirements unless the local government can establish "objective" facts that this restriction is necessary to address a "health, safety, or welfare concern" of significant importance to the public.  *Supra,* pp. 18, 22-23.  Here, none of the three challenged permit provision are even remotely necessary to satisfy any "objective health, safety, or welfare" concerns cognizable under SB-946.  As such, the City's permit requirements violate SB-946 and so are covered by this cause of action.

91.    Pursuant to SB-946 and SB-972, Plaintiffs are entitled to the following relief:

a.    In light of the actual controversy between the parties concerning the conflict between SB-946 and SB-972 and the challenged provisions of the City's Ordinances, a declaratory judgment that the City's provisions are preempted by the State enactments; and

b.    Injunctive relief barring all Defendants from utilizing any of the City's challenged provisions and prohibiting the City from imposing any further sanctions or penalties not expressly authorized by SB-946 and/or SB-972.

///

///

///

///

///

///

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

1.      For a preliminary injunction and a permanent injunction that enjoins and requires Defendants from enforcing, implementing or utilizing the provisions of Fontana's Or. 1789 and Or. 1925 that are challenged herein under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution or that are in conflict with the provisions of California's SB-946 and SB-972;

2.      For a declaratory judgment resolving the controversy between the Parties by determining that the provisions of Fontana's Or. 1789 and Or. 1925 are unlawful and in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution or are in conflict of the provisions of California's SB-946 and SB-972;

3.      For costs of the suit and attorneys' fees as provided by law;

4.      For such other relief as the Court deems just and proper.

Date:  August 11, 2025              Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

*Matthew Heartney*
Matthew Heartney (Aug 11, 2025 17:19:42 PDT)
_____
MATTHEW T. HEARTNEY (SBN 123516)
DANIEL SHIMELL (SBN 300931)
DANIA QAHOUSH (SBN 335202)


**PUBLIC COUNSEL**

*Ritu Mahajan*
Ritu Mahajan (Aug 11, 2025 17:17:52 PDT)
_____
RITU MAHAJAN (SBN 252970)
SOPHIA L. WRENCH (SBN 354416)
CASSIDY J. BENNETT (SBN 347811)*
ELIZABETH R. BROWN (SBN 360601)*
JACOB MADDOX (SBN 354368)

*Attorneys for Plaintiff*

*USDC Central District Admissions pending

58

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF