1  Stephen G. Larson (SBN 145225)
   *slarson@larsonllp.com*
2  Jonathan E. Phillips (SBN 233965)
   *jphillips@larsonllp.com*
3  Jonathan Gershon (SBN 306979)
   *jgershon@larsonllp.com*
4  **LARSON LLP**
   555 South Flower Street, 30th Floor
5  Los Angeles, California 90071
   Telephone:(213) 436-4888
6  Facsimile: (213) 623-2000

7  Attorneys for Defendant CITY OF
   FONTANA

8

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11

12  INLAND COALITION FOR         Case No. 5:25-cv-02092 SSS (SPx)
    IMMIGRANT JUSTICE,
13                                Assigned to: Hon. Sunshine S. Sykes
14          Plaintiff,           Magistrate Judge:  Hon. Sheri Pym

15     vs.                       **DEFENDANT CITY OF
                                 FONTANA'S NOTICE OF MOTION
16                               AND MOTION TO DISMISS
    CITY OF FONTANA, CITY        PLAINTIFF'S FIRST AMENDED
17  COUNCIL OF FONTANA, MAYOR    COMPLAINT PURSUANT TO FED.
    ACQUANETTA WARREN, PHILIP    R. CIV. PROC. 12(b)(6);
18  BURUM, FONTANA CODE          MEMORANDUM OF POINTS AND
    COMPLIANCE DEPARTMENT,       AUTHORITIES**
19  4LEAF, INC., CRAIG TOLE, PETE
20  ROQUE,                       Judge:  Hon. Sunshine S. Sykes
21                               Date:    December 19, 2025
22          Defendants.          Time:    2:00 p.m.
                                 Crtrm.:  2
23

24

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on December 19, 2025 at 2:00 p.m., or as soon

3    thereafter as the matter may be heard in Courtroom 2 of the above-entitled Court,

4    located at 3470 Twelfth Street Riverside, CA 92501, Defendant CITY OF

5    FONTANA will and hereby does, move to dismiss claims for relief pled by plaintiff

6    in the First Amended Complaint.[1]  Defendants bring this Motion to Dismiss

7    pursuant to Federal Rules of Civil Procedure 12(b)(6) on the following grounds that

8    the complaint fails to state a plausible claim for relief.

9         This Motion is based on this Notice of Motion and Motion, the attached

10    Memorandum of Points and Authorities, the file and records in this case, and any

11    further argument the Court deems just and proper at the hearing on this Motion.

12         This Motion is made following the conference of counsel pursuant to Local

13    Rule 7-3, which took place on Thursday, October 16, 2025, and was unsuccessful in

14    resolving the issues raised by this Motion.

15         On October 2, 2025, the City's counsel sent Plaintiff a 9-page meet and

16    confer letter which detailed the deficiencies that the City found with Plaintiff's

17    initial Complaint and a requested meet and confer by telephone or video conference.

18    The next day, on October 3, 2025, the City's counsel (Jonathan Phillips and

19    Jonathan Gershon) met and conferred with Plaintiff's counsel (consisting of at least

20    Matthew Heartney, Daniel Shimell, Ritu Mahajan, and Summer Quintana) via video

21    conference for approximately 45 minutes. During this video conference, the parties

22    discussed the deficiencies in the Complaint that the City identified in its letter,

23    namely that (1) Plaintiff failed to sufficiently alleged organizational or associational

24    standing, (2) the claims against Mayor Acquanetta Warren, Phillip Burum, the City

25    
_____

26    [1] The original Complaint named the City Council of Fontana, the Fontana Code
Compliance Department, Mayor Acquanetta Warren, and Philip Burum as additional

27    defendants. However, those defendants were effectively dismissed when Plaintiff filed the
First Amended Complaint, which only identifies the City, 4LEAF, Inc., Craig Tole, and

28    Pete Roque as defendants.

1   Council, and the Code Compliance Department were duplicative of the claims
2   against the City, (3) the challenge to the EOC Provision failed because the ordinance
3   was not facially overbroad or vague, (4) the Complaint did not sufficiently allege
4   that the street vending ordinances authorizing seizures facially violated the Fourth,
5   Fifth, or Fourteenth Amendments, and (5) the Complaint did not sufficiently allege
6   that the street vending ordinances conflicted with state law. During this meet and
7   confer, Plaintiff's counsel agreed to file a First Amended Complaint which
8   dismissed the claims against Mayor Acquanetta Warren, Phillip Burum, the City
9   Council, and the Code Compliance Department, but otherwise disagreed that its
10  Complaint was deficient.

11       On October 9, 2023, Plaintiff filed its FAC which "dismiss[ed] each of the
12  City Council, Mayor, Mr. Burum and the Fontana Code Compliance Department as
13  Defendants" and "add[ed] additional facts explaining how two individual members
14  of Plaintiff have suffered serious harms when Plaintiff's members were subjected to
15  unlawful conduct by the City . . . ." (Dkt. 35 at 2:12-13; 3:1-4). On October 15,
16  2015, the City sent a second meet and confer letter which focused on how the
17  additional allegations in the FAC did not cure the deficiencies discussed in the
18  City's October 2 letter and again requested to meet and confer by telephone or video
19  conference. On October 16, 2025, the City's counsel (Jonathan Phillips and
20  Jonathan Gershon) met and conferred with Plaintiff's counsel (consisting of at least
21  Matthew Heartney, Daniel Shimell, Ritu Mahajan, and Summer Quintana) via video
22  conference for approximately 25 minutes. Defendant 4LEAF's general counsel,
23  John Dooling, also attended. During this meet and confer, Plaintiff's counsel
24  reiterated that the FAC still failed to sufficiently allege a constitutional violation or
25  state preemption and that the additional allegations in the FAC failed to cure the
26  deficiencies related to standing. The Parties were unable to come to an agreement on
27  any of these issues. As a result, Plaintiff's counsel indicated that Plaintiff would
28  oppose the instant Motion.

CITY OF FONTANA'S NOTICE OF MOTION AND MOTION TO DISMISS, PURSUANT TO FED. R. CIV.
PROC. 12(b)(6)

1  Dated:  October 23, 2025          LARSON LLP

2                                    By: */s/ Stephen G. Larson*

3                                        Stephen G. Larson
                                         Jonathan E. Phillips
4                                        Jonathan Gershon

5                                    Attorneys for Defendant CITY OF FONTANA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  RELEVANT FACTUAL ALLEGATIONS ......................................... 2

III. LEGAL STANDARD .......................................................................... 3

IV.  ARGUMENT ....................................................................................... 4

    A.   Plaintiff Has Failed to Sufficiently Allege Article III Standing ............ 4

        1.   Plaintiff Lacks Organizational Standing ...................................... 4

        2.   Plaintiff Lacks Associational Standing ........................................ 5

    B.   The EOC Provision Is Not Unconstitutional ....................................... 8

        1.   The EOC Provision Is Not Overbroad .......................................... 9

        2.   The EOC Provision Is Not Vague ................................................ 10

    C.   The Seizure Provisions Are Not Facially Unconstitutional ................. 11

        1.   Plaintiff's Facial Due Process Challenge Fails .......................... 11

            a.   Governmental Interest ..................................................... 12

            b.   Risk of Erroneous Deprivation .......................................... 15

            c.   Private Interests ............................................................... 16

        2.   Plaintiff's Facial Fourth Amendment Challenges Fail ............... 16

            a.   Administrative Search Exception ...................................... 17

            b.   Evidence of a Crime Exception .......................................... 19

            c.   Community Caretaking Exception ..................................... 20

    D.   Plaintiff's Preemption Claim Fails ...................................................... 21

V.   CONCLUSION ................................................................................... 22

LARSON
LOS ANGELES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................3, 4, 6

*Barstow Proprietor Ass'n v. City of Barstow*,
    2024 WL 5134349 (9th Cir. Dec. 17, 2024) ......................................16

*Boone v. Redevelopment Agency of City of San Jose*,
    841 F.2d 886 (9th Cir. 1988).............................................................16

*Cady v. Dombrowski*,
    413 U.S. 433 (1973) ..........................................................................20

*City of Houston v. Hill*,
    482 U.S. 451 (1987) .......................................................................9, 10

*Clement v. City of Glendale*,
    518 F.3d 1090 (9th Cir. 2008)......................................................14, 20

*Coal. on Homelessness v. City & Cnty. of San Francisco*,
    758 F. Supp. 3d 1102 (N.D. Cal. 2024)................................................6

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ...............................................................4

*Fed. Deposit Ins. Corp. v. Mallen*,
    486 U.S. 230 (1988) ..........................................................................16

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ...............................................................4, 5, 9, 16

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir. 1998) .............................................................11

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ...................................................................4, 5, 6

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ............................................................................5

1

*Hisp. Taco Vendors of Washington v. City of Pasco*,
   994 F.2d 676 (9th Cir. 1993) ............................................................................... 16

*Holder v. Humanitarian L. Project*,
   561 U.S. 1 (2010) ................................................................................................. 10

*Hum. Life of Washington Inc. v. Brumsickle*,
   624 F.3d 990 (9th Cir. 2010) ............................................................................... 10

*Hunt v. Washington State Apple Comm'n*,
   432 U.S. 333, 343 (1977) ....................................................................................... 6

*Kaahumanu v. Hawaii*,
   682 F.3d 789 (9th Cir. 2012) ............................................................................... 22

*Killgore v. City of S. El Monte*,
   3 F.4th 1186 (9th Cir. 2021) ................................................................................ 18

*Leslie v. City of Sand City*,
   615 F. Supp. 2d 1121 (N.D. Cal. 2009) ............................................................. 12

*California ex rel. Lockyer v. F.E.R.C.*,
   329 F.3d 700 (9th Cir. 2003) ............................................................................... 12

*Martinelli v. City of Beaumont*,
   820 F.2d 1491 (9th Cir. 1987) ............................................................................. 11

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ....................................................................................... 12, 16

*McQuiston v. City of Los Angeles*,
   560 F. App'x 684 (9th Cir. 2014) .......................................................................... 8

*Miranda v. City of Cornelius*,
   429 F.3d 858 (9th Cir. 2005) .......................................................... 12, 14, 17, 20

*Mojica v. S.M. Healthcare, Inc.*,
   2025 WL 2096177 (C.D. Cal. June 24, 2025) ...................................................... 5

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ................................................................................. 4

*New York v. Burger*,
   482 U.S. 691 (1987) ............................................................................................. 18

LARSON
LOS ANGELES

*Oregon Clinic, PC v. Fireman's Fund Ins. Co.*,
   75 F.4th 1064 (9th Cir. 2023) ................................................................ 22

*Palmer Kearny Mesa Props., LP v. City of San Diego*,
   2024 WL 3907049 ........................................................................... 8

*Ramirez v. City of Buena Park*,
   560 F.3d 1012 (9th Cir. 2009) ......................................................... 20

*S. Dakota v. Opperman*,
   428 U.S. 364 (1976) ........................................................................ 20

*Soldal v. Cook Cnty., Ill.*,
   506 U.S. 56 (1992) .......................................................................... 19

*United States v. Braxton*,
   61 F.4th 830 (10th Cir. 2023) ......................................................... 20

*United States v. Brice*,
   926 F.2d 925 (9th Cir. 1991) .................................................... 10, 11

*United States v. Murphy-Ellis*,
   47 F. App'x 488 (9th Cir. 2002) .............................................. 10, 11

*United States v. Rohrig*,
   98 F.3d 1506 (6th Cir. 1996) ......................................................... 20

*United States v. Salerno*,
   481 U.S. 739 (1987) ........................................................................ 12

*United States v. Stewart*,
   420 F.3d 1007 (9th Cir. 2005) .......................................................... 9

*Vasquez Perdomo v. Noem*,
   148 F.4th 656 (9th Cir. 2025) ........................................................... 6

*Verdun v. City of San Diego*,
   51 F.4th 1033 (9th Cir. 2022) .................................................. 17, 18

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ........................................................................ 10

*Virginia v. Hicks*,
   539 U.S. 113 (2003) .......................................................................... 9

LARSON
LOS ANGELES

CITY OF FONTANA'S NOTICE OF MOTION AND MOTION TO DISMISS, PURSUANT TO FED. R. CIV. PROC. 12(b)(6)

*Virginia v. Moore*,
    553 U.S. 164 (2008) ...................................................................................... 17

*W. Min. Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ........................................................................ 4

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................ 8

*Whren v. United States*,
    517 U.S. 806 (1996) ...................................................................................... 19

*William Jefferson & Co. v. Bd. of Assessment & Appeals No. 3 ex rel.*
    *Orange Cnty.*,
    695 F.3d 960 (9th Cir. 2012) ...................................................................... 12

**California Cases**

*In re Andre P.*,
    226 Cal. App. 3d 1164 (1991) .................................................................... 10

*Big Creek Lumber Co. v. Cnty. of Santa Cruz*,
    38 Cal.4th 1139 (2006) ................................................................................ 21

*People v. Lanthier*,
    5 Cal. 3d 751 (1971) .................................................................................... 20

*People v. Quiroga*,
    16 Cal. App. 4th 961 (1993) .......................................................................... 9

**Federal Statutes**

28 U.S.C
    § 1367(c) ...................................................................................................... 21

Americans with Disabilities Act ...................................................................... 21

**California Statutes**

Cal. Gov't Code
    § 51036 . ........................................................................................................ 2
    § 51037-39 .................................................................................................. 21
    § 51038(c) .......................................................................................... 13, 21, 22
    § 51038(c)(7) .............................................................................................. 19

Cal. Penal Code
   § 148 ...................................................................................................10, 11

**Other Authorities**

36 C.F.R. § 261.3(a) ...............................................................................10, 11

41 C.F.R. § 101-20.305 ..........................................................................10, 11

Federal Rules of Civil Procedure 12(b)(6) ..........................................1, 3

Local Rule 7-3 ............................................................................................1

LARSON
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In 2018, the California Legislature enacted SB-946, creating statewide standards for local regulation of street-vendors. Shortly thereafter, Defendant City of Fontana (the "City") enacted street-vending ordinances adhering to these standards. Through these ordinances, the City sets forth the requirements for obtaining a street-vending permit, and places reasonable restrictions on the time, manner, and place of street-vending in the City—all carefully designed to balance the rights of street-vendors who wish to conduct business in the City with the City's legitimate interest to regulate that business in a way that protects the City and its citizens.

Plaintiff Inland Coalition for Immigrant Justice's ("Plaintiff") agenda in bringing this lawsuit is clear: It seeks to gut the City's ability to regulate street-vending in any meaningful way. To accomplish this goal, Plaintiff's First Amended Complaint ("FAC") challenges various key provisions in these ordinances, contending that they facially violate the First, Fourth, Fifth, and Fourteenth Amendments and are preempted by state law. Plaintiff's theories—and thus its claims—are all fundamentally flawed.

As a threshold matter, Plaintiff lacks Article III standing to challenge the ordinances. Plaintiff does not have organizational standing because its only alleged direct injury—spending resources on public advocacy and education—has recently been rejected by the Supreme Court. As for associational standing, Plaintiff has not sufficiently alleged that any of its members were injured by the ordinances. Plaintiff's lack of standing is itself sufficient grounds for dismissal.

But even if Plaintiff had standing, the FAC should still be dismissed because Plaintiff's claims are substantively meritless. Plaintiff's First Cause of Action erroneously characterizes the City's "Enforcement Obstruction Consequences" provision ("EOC Provision") as unconstitutionally overbroad and vague. Not so. The ordinance is targeted at specific criminal conduct—obstruction of City

1

LARSON
LOS ANGELES

1  employees in the course of their official duties—not at protected speech, and it is
2  more than sufficiently specific to satisfy the Due Process clause. Indeed, the Ninth
3  Circuit has upheld similar laws—as this Court should do here.

4      As for Plaintiff's challenge to the provisions allowing the City to seize
5  evidence of a crime or impound property that violates the City's regulations,
6  Plaintiff's claims fail under the well-established standard for facial constitutional
7  challenges. Put simply, Plaintiff cannot establish that seizures under these
8  ordinances will *never* be constitutional—which is what a facial challenge requires.
9  To the contrary, these ordinances are necessary to abate any ongoing nuisance,
10  hazard, obstruction, or disturbance caused when a street-vendor refuses to obtain a
11  permit and/or abide by the regulations. Courts have routinely found that a post-
12  deprivation hearing in these circumstances provides sufficient due process and is
13  reasonable under the Fourth Amendment.

14      Finally, Plaintiff's preemption claim fails because there is no conflict between
15  the City's ordinances and state law.

16      Accordingly, the City respectfully requests that the Court dismiss the FAC in
17  its entirety.

18  ## II.    RELEVANT FACTUAL ALLEGATIONS

19      Plaintiff is a nonprofit organization purportedly "dedicated to supporting
20  vulnerable communities throughout the Inland empire" through work focused on
21  "improving the quality of life for these communities by increasing their access to
22  needed resources, education, and policy decision-making." FAC ¶ 12. Plaintiff
23  claims to have over 260 members who are street-vendors. *Id*. ¶ 13.

24      In 2018, the California Legislature enacted SB-946 (Cal. Gov't Code §§
25  51036 *et seq*.) which provides statewide standards for the local regulation of street-
26  vendors, and then enacted SB-972 in 2022, providing standards regarding food
27  street-vendors. FAC ¶ 3.

28      In 2019, the City enacted Ordinance 1789 (FMC §§ 15-818–15-828), which

2

LARSON
LOS ANGELES

established street-vending regulatory provisions that included requirements for obtaining a street-vending permit, restrictions on the time, place, and manner of street-vending, and provisions relating to impounding street-vending property that violated these requirements. FAC ¶ 5. In 2022, the City enacted Ordinance 1925 (FMC §§ 1-14, 15-829). FAC ¶ 6.

Plaintiff alleges that 14 provisions from these two ordinances are unlawful (the "Challenged Ordinance Provisions"). *Id.* ¶ 4. Specifically, Plaintiff challenges: (a) the EOC Provision (FMC § 1-14), (b) three permitting provisions (FMC §§ 15-820(A)(10),(15) and 15-820(B), the "Permit Provisions"), and (c) one provision regarding the seizure of evidence and nine provisions permitting City officials to impound street-vending property under specified conditions (FMC § 15-828, 15-829(b)(1)-(6),(8)-(9), and 18-529(c), the "Seizure Provisions").

Plaintiff contends the Challenged Ordinance Provisions caused Plaintiff to divert significant resources to "educating its vendors," "mobilizing other City residents to petition the City Council," and "conducting numerous media interviews." FAC ¶¶ 15-16, 19. Plaintiff also generally alleges that "a significant number of Plaintiff's sidewalk vendor members have been seriously harmed" by the Challenged Ordinance Provisions. FAC ¶ 13. Plaintiff only specifically identifies two of its members who allegedly suffered harm: (a) A.M., who allegedly was refused permits and had perishable goods and vending equipment seized; and (b) A.C., who allegedly "found Fontana permit requirements impossible to meet, particularly insurance." FAC ¶ 20 n.5.

## III.  LEGAL STANDARD

Dismissal under F.R.C.P. Rule 12(b)(6) is appropriate where the complaint fails to state a claim for relief "'that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although the "plausibility standard is not akin to a 'probability requirement,'" it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Thus, it is settled that "non-

1  conclusory 'factual content,' and reasonable inferences from that content" must

2  plausibly suggest a claim entitling the plaintiff to relief. *See Moss v. U.S. Secret*

3  *Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal,* 556 U.S. at 678).

4      While the Court must accept as true facts alleged in a complaint, it need not

5  accept legal conclusions. *See W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

6  1981). Conclusory allegations or legal conclusions masquerading as factual

7  conclusions will not defeat a motion to dismiss. *Epstein v. Wash. Energy Co.*, 83

8  F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678-79 (noting that "the

9  doors of discovery" do not unlock "for a plaintiff armed with nothing more than

10 conclusions").

11 **IV.**    **ARGUMENT**

12     **A.**    **Plaintiff Has Failed to Sufficiently Allege Article III Standing**

13         To have Article III standing, a plaintiff must allege a concrete and

14 particularized injury that is fairly traceable to the defendant's conduct. *Friends of*

15 *the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

16 Plaintiff fails to meet this standard.

17             1.    Plaintiff Lacks Organizational Standing

18         Organizational standing arises when an organization suffers a direct injury

19 that meets the traditional Article III requirements: injury in fact, causation, and

20 redressability. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 369

21 (2024). Plaintiff alleges it has organizational standing because the City's ordinances

22 caused it to divert significant resources. FAC ¶ 19. However, the Supreme Court has

23 recently rejected frustration-of-mission and diversion-of-resources theories to

24 establish standing. *See Hippocratic Med.*, 602 U.S. at 369-70.

25         In *Hippocratic Med.*, medical associations claimed that the FDA "'forced' the

26 associations to 'expend significant time, energy, and resources' drafting citizen

27 petitions to FDA, as well as engaging in public advocacy and public education" and

28

CITY OF FONTANA'S NOTICE OF MOTION AND MOTION TO DISMISS, PURSUANT TO FED. R. CIV. PROC. 12(b)(6)

that this "caused the associations to spend 'considerable resources' to the detriment of other spending priorities." *Id.* at 394.

In rejecting these arguments, the Supreme Court explained that "an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct." *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)). The Court then explained that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* The Court found that *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-379 (1982), was distinguishable because it involved "an unusual case" where the government provided false housing information to the plaintiff's employees which directly interfered with and impaired the plaintiff's core mission of providing housing counseling services. *Id.*

Put simply, spending resources on public advocacy or education is insufficient to confer organizational standing. *See e.g. Mojica v. S.M. Healthcare, Inc.*, 2025 WL 2096177, at *3 (C.D. Cal. June 24, 2025) (finding that after *Hippocratic Med.*, allegations that plaintiff "expended time, effort and resources to 'counteract' and 'eliminate' Defendants' allegedly discriminatory conduct" were insufficient). Yet, this is precisely the organizational injury that Plaintiff alleges. *See* FAC ¶¶ 15-16, 19. Accordingly, Plaintiff has failed to sufficiently allege organizational standing.

### 2. Plaintiff Lacks Associational Standing

Associational standing allows an organization to bring claims on behalf of its members when: (1) its members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth,* 528 U.S. at 181.

5

Here, Plaintiff fails to meet the first element of associational standing, which requires a demonstration of injury-in-fact, causation, and redressability for the organization's members. *Id.* To satisfy this element, Plaintiff must allege that at least one identified member has suffered or will suffer a concrete and particularized injury. *Hunt v. Washington State Apple Comm'n*, 432 U.S. 333, 343 (1977). "'[W]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury,' the organization is not required to 'identify by name the member or members injured' to establish associational standing." *Vasquez Perdomo v. Noem*, 148 F.4th 656, 676 (9th Cir. 2025) (citing *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

Accordingly, for each Challenged Ordinance Provision, Plaintiff must allege facts sufficient to show that it is "relatively clear" that at least one of its members has (or will) harmed by that provision. *See e.g. Coal. on Homelessness v. City & Cnty. of San Francisco*, 758 F. Supp. 3d 1102, 1122-28 (N.D. Cal. 2024). Plaintiff fails to meet this requirement because it does not sufficiently allege that any of its members has been (or will be) harmed by *any* of the Challenged Ordinance Provisions, let alone that at least one member was (or will be) harmed by *each* of these provisions.

While Plaintiff broadly claims that "a significant number of Plaintiff's sidewalk vendor members have been seriously harmed by the City's Ordinances," the FAC is devoid of any allegations regarding what specific harm these members suffered, let alone how any specific ordinance provision was the cause of this harm. FAC, ¶ 13. The Court should disregard these vague, conclusory allegations of speculative harm. *See Iqbal,* 556 U.S. at 678.

Plaintiff also specifically identifies two of its members, "A.C." and "A.M.," alleging they "suffered serious harm that is attributable to defendants." FAC ¶ 20

6

n.5. These allegations, however, are still insufficient to establish associational standing.

Starting with the EOC Provision, Plaintiff does not allege that either A.C. or A.M. were (or will be) charged with violating this provision—and thus Plaintiff lacks associational standing to challenge the EOC provision.

Moving to the Seizure Provisions, while Plaintiff alleges that A.M. had property taken by the City, FAC ¶ 20 n.5, it does *not* allege which, if any, of the Seizure Provisions led to the alleged seizures. As such, Plaintiff has not sufficiently alleged that any of the Seizure Provisions (let alone all of them) caused A.M. harm, or that invalidating any of the Seizure Provisions would redress A.M.'s injuries.

Plaintiff does not sufficiently allege associational standing related to the Permit Provisions either. Although Plaintiff alleges that A.M. "sought permits" which the City "refused," and that A.C. "found Fontana permit requirements impossible to meet, particularly insurance" (*id.*), these allegations are patently insufficient.

Most fundamentally, Plaintiff does not allege that either A.M. or A.C. were actually denied a permit *because of* a failure to comply with any of the Permit Provisions. Indeed, Plaintiff does not even allege that A.C. applied for a permit at all. Put differently, there are no allegations suggesting that A.M. or A.C. would have otherwise qualified for a permit if not for the Permit Provisions. Of course, if they would not have qualified regardless of the Permit Provisions, these provisions could not have caused them harm, and invalidating the provisions would not redress their alleged injury. This alone renders Plaintiff's theory that the Permit Provisions caused A.M. and A.C.'s alleged harm entirely speculative—and thus they lack standing.

Moreover, even if A.M. or A.C. were denied a permit for failing to meet the Permit Provisions, there are no allegations suggesting either individual appealed the denial or sought an exemption—let alone had one denied. *See* FMC § 15-826

7

1   (providing a right to appeal a permit denial to the City Manager). As such, any

2   purported injury caused by the Permit Provisions is, again, speculative. *See*

3   *McQuiston v. City of Los Angeles*, 560 F. App'x 684, 685 (9th Cir. 2014) (finding

4   that plaintiff lacked standing to challenge zoning ordinance because he "never

5   applied for a variance" and "[h]is alleged injury is therefore hypothetical, because

6   he simply assumes he would not be granted a variance if he applied"); *Warth v.*

7   *Seldin,* 422 U.S. 490, 516, (1975) (finding alleged injury insufficient where there

8   was no evidence that "any of its members has taken advantage of the remedial

9   processes available under the ordinance").

10      Similarly, both A.M. and A.C. lack standing under the administrative

11  exhaustion rule, which "requires that 'where an administrative remedy is provided

12  by statute, relief must be sought from the administrative body and this remedy

13  exhausted before the courts will act.'" *Palmer Kearny Mesa Props., LP v. City of*

14  *San Diego*, 2024 WL 3907049, at *10 (citing *Abelleira v. District Court of Appeal*,

15  17 Cal. 2d 280, 292 (1941)). It "is 'a jurisdictional prerequisite to resort to the

16  courts.'" *Id.* (citing *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000)).

17      Accordingly, Plaintiff has not sufficiently alleged that A.M. or A.C. have

18  standing related to the Challenged Ordinance Provisions—and thus Plaintiff does

19  not have associational standing.

20      **B.    The EOC Provision Is Not Unconstitutional**

21      Plaintiff's First Cause of Action challenges the EOC Provision, which

22  provides that "it shall be unlawful for any person to obstruct, impede, threaten,

23  follow, intimidate, or interfere in any way with any city official … engaged in the

24  performance of their respective duties … and/or enforcement authority…." FMC §

25  1-14. According to Plaintiff, this EOC Provision violates the First, Fifth, and

26  Fourteenth Amendment because it is facially overbroad and unconstitutionally

27  vague. FAC ¶ 76. Both arguments fail as a matter of law.

28

LARSON
LOS ANGELES

8

1        1.        <u>The EOC Provision Is Not Overbroad</u>

2        "The First Amendment doctrine of overbreadth" provides that a "showing that

3    a law punishes a 'substantial' amount of protected free speech, 'judged in relation to

4    the statute's plainly legitimate sweep,' suffices to invalidate *all* enforcement of that

5    law, 'until and unless a limiting construction or partial invalidation so narrows it as

6    to remove the seeming threat or deterrence to constitutionally protected

7    expression[.]'" *Virginia v. Hicks*, 539 U.S. 113, 118 (2003) (citing *Broadrick v.

8    Oklahoma,* 413 U.S. 601, 615 (1973)). Plaintiff erroneously claims that the EOC

9    Provision criminalizes a "broad swath of constitutionally protected conduct" and is

10    therefore "constitutionally overbroad and facially invalid in its entirety." FAC ¶ 43.

11        Plaintiff's reliance on *City of Houston v. Hill,* 482 U.S. 451 (1987) to support

12    its position is misplaced. In *Hill*, an ordinance provided that "it shall be unlawful for

13    any person to assault, strike or in any manner oppose, molest, abuse or interrupt any

14    policeman in the execution of his duty, or any person summoned to aid in making an

15    arrest." *Id.* at 454. Although the Supreme Court found that the statute was

16    overbroad, it did so because the language regarding assaulting or striking a police

17    officer was preempted by state law and thus "the enforceable portion of the

18    ordinance deal[t] not with core criminal conduct, but with speech." *Id.* at 460.

19        Here, unlike in *Hill*, there is no state law which preempts the EOC Provision

20    and thus it must be evaluated in its *entirety*. When viewed in this context, the vast

21    majority of the EOC Provision criminalizes conduct (actions which physically

22    obstruct, impede, or interfere with City officials) or non-protected speech (i.e. true

23    threats). *See id.* at 463 n.11 (noting that a municipality is not "powerless to punish

24    physical obstruction of police action"); *People v. Quiroga*, 16 Cal. App. 4th 961,

25    968 (1993) ("Fighting words or disorderly conduct may lie outside the protection of

26    the First Amendment."); *United States v. Stewart*, 420 F.3d 1007, 1016-19 (9th Cir.

27    2005) (finding that "true threats", which include genuine threats of violence, fall

28    outside First Amendment protection).

1  Indeed, laws similar have been upheld following *Hill* because they only

2  incidentally restrict speech. *See United States v. Murphy-Ellis*, 47 F. App'x 488, 490

3  (9th Cir. 2002) (finding that 36 C.F.R. § 261.3(a), which prohibits "[t]hreatening,

4  resisting, intimidating, or interfering with any forest officer engaged in or on

5  account of the performance of his official duties in the protection, improvement, or

6  administration of the National Forest System," is not facially overbroad); *United*

7  *States v. Brice*, 926 F.2d 925, 931 (9th Cir. 1991) (finding that 41 C.F.R. § 101-

8  20.305, which criminalized conduct that "impedes or disrupts the performance of

9  official duties by Government employees," is not unconstitutionally overbroad).[2]

### 2.  The EOC Provision Is Not Vague

11  Plaintiff's vagueness challenge fails because the EOC Provision is actually

12  well-defined. An ordinance "fails to comport with due process" if it "fails to provide

13  a person of ordinary intelligence fair notice of what is prohibited, or is so

14  standardless that it authorizes or encourages seriously discriminatory enforcement."

15  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010). An ordinance is

16  unconstitutional "only if the enactment is impermissibly vague in all of its

17  applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489,

18  495 (1982). "'[O]therwise imprecise terms may avoid vagueness problems when

19  used in combination with terms that provide sufficient clarity,' and vagueness

20  challenges will be rejected when it is "clear what the ordinance as a whole

21  prohibits[.]" *Hum. Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th

22  Cir. 2010) (citations omitted).

23  Here, the EOC Provision is neither unclear nor standardless. The prohibited

24  conduct is objectively anchored in the specific actions of obstruction, threats, and

---

[2] *See also In re Andre P.*, 226 Cal. App. 3d 1164, 1174-1177 (1991) (upholding California Penal Code § 148, which provides that it is unlawful to "willfully resist[], delay[], or obstruct[] any public officer, peace officer, or an emergency medical technician … in the discharge or attempt to discharge any duty of his or her office or employment").

10

CITY OF FONTANA'S NOTICE OF MOTION AND MOTION TO DISMISS, PURSUANT TO FED. R. CIV. PROC. 12(b)(6)

intimidation, and enforcement is not based on the content of a speaker's message. Moreover, the requirement that the official be "engaged in the performance of their respective duties" provides a crucial limitation, further focusing enforcement on specific contexts rather than granting unlimited discretion. The EOC Provision is therefore *not* unconstitutionally vague and Plaintiff's facial vagueness challenge fails. *See Murphy-Ellis*, 47 F. App'x at 488 (finding that a similar regulation, 36 C.F.R. § 261.3(a), is not unconstitutionally vague); *Brice*, 926 F.2d at 931 (finding that 41 C.F.R. § 101-20.305 is not unconstitutionally vague); *Martinelli v. City of Beaumont*, 820 F.2d 1491, 1494 (9th Cir. 1987) (finding that Cal. Penal Code § 148 is not unconstitutionally vague).

## C. The Seizure Provisions Are Not Facially Unconstitutional

Although Plaintiff does not expressly characterize its constitutional challenges to the Seizure Provisions as facial, Plaintiff seeks a declaration that these provisions "are unlawful and in violation of the Fourth, Fifth and Fourteenth Amendments." FAC ¶ 87.a. Because Plaintiff seeks to invalidate the ordinance in its entirety and in all circumstances—rather than seeking a declaration that the Seizure Provisions are unconstitutional when applied to street-vendors under certain circumstances only—it is bringing a facial challenge. *See e.g. Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (explaining that "[a] successful challenge to the facial constitutionality of a law invalidates the law itself," while "[a] successful as-applied challenge does not render the law itself invalid but only the particular application of the law"). Indeed, the FAC does not even contain individualized allegations regarding the Seizure Provisions being implemented in any specific circumstances. Accordingly, the FAC *only* asserts a facial constitutional challenge of the Seizure Provisions—and, as explained below, this facial challenge fails as a matter of law.

### 1. Plaintiff's Facial Due Process Challenge Fails

"A facial challenge to a legislative Act is, of course, the most difficult

11

challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, Plaintiff's facial due process challenge fails if "there is at least one set of circumstances where application of [the challenged provision] does not violate … due process rights." *William Jefferson & Co. v. Bd. of Assessment & Appeals No. 3 ex rel. Orange Cnty.*, 695 F.3d 960, 963 (9th Cir. 2012).

Courts "assess due process case-by-case based on the total circumstances." *California ex rel. Lockyer v. F.E.R.C.,* 329 F.3d 700, 711 (9th Cir. 2003). "'(D)ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citation omitted). Critically, "where a predeprivation hearing or notice 'is unduly burdensome in proportion to the liberty interest at stake ... post deprivation remedies might satisfy due process.'" *Leslie v. City of Sand City*, 615 F. Supp. 2d 1121, 1127 (N.D. Cal. 2009) (citing *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)).

In evaluating a pre-notice deprivation, courts balance three factors: "[1] the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Miranda v. City of Cornelius*, 429 F.3d 858, 867 (9th Cir. 2005) (citing *Mathews,* 424 U.S. at 335). Here, applying these factors, Plaintiff cannot establish that there are no set of circumstances in which the post-impoundment hearing procedures would provide sufficient due process to street-vendors.

### a.    Governmental Interest

The City's compelling interests justify a post-deprivation hearing scheme.

12

Plaintiff acknowledges the City is allowed to require vending permits and to impose conditions "directly related to objective health, safety, or welfare concerns." (FAC ¶ 35; Cal. Gov't Code § 51038(c)). Implicit in this authority is the ability to prohibit individuals from vending without a permit or in violation of the City's conditions.

For example, under the City's generally applicable public nuisance laws, it is unlawful to store property on a public sidewalk without permission from the City Manager or his designee. FMC § 16-155(a)(2). Thus, if a street-vendor receives a permit and adheres to the City's conditions, the street-vendor has permission to store their property on the sidewalk and does not violate public nuisance laws. However, if a street-vendor does *not* have a permit, or is *not* adhering the City's conditions, then the vendor does *not* have permission to store their property on the sidewalk. As such, all of the Seizure Provisions are justified, at a minimum, by the City's general interest in abating unlawful public nuisances.

Moreover, many of the seizures pursuant to the Seizure Provisions involve a *willful* violation of the City's street-vending requirements. For instance, while FMC § 15-829(3) permits impoundment if a vendor lacks a permit, this provision is only enforced for willful violations. *See* FAC, Ex. 2 at p. 14 (stating that code enforcement officers are "expected to address all non-permitted sidewalk vendors by providing education and explaining how to obtain proper permits to conduct business in the City of Fontana" and to impound property for "individuals that chose to continue to operate without" permits). Similarly, FMC § 15-829(5) only permits impoundment for a violation of a street-vending ordinance if the vendor refuses to remove items within 30 minutes of being ordered to do so, and FMC §§ 15-829(b)(9) and (c) authorize impoundments when a vendor refuses to comply with the regulations on multiple occasions. If street-vendors are not willing to abide by the City's regulations, the City has no other way to abate the ongoing public nuisance other than to impound the vendor's property.

Of course, the governmental interest in any specific seizure will necessarily

13

be fact-dependent. For example, the government has an extremely high interest in promptly removing property that is creating a public hazard, obstruction, or disturbance. *See e.g. Clement*, 518 F.3d at 1094-95 (finding pre-notice impoundment of vehicle does not violate procedural due process where "the car is parked in the path of traffic, blocking a driveway, obstructing a fire lane or appears abandoned"); *Miranda*, 429 F.3d at 867 (noting that property "left in a public place" "presumably would not require pre-deprivation notice and a pre-seizure hearing" because "[i]mpoundments in such cases are likely justified by the need to respond immediately to the hazard or public safety threat").

Here, many of the Seizure Provisions involve abating precisely this type of conduct. For example, FMC § 15-829(b)(1) permits the impoundment of food that is being sold without a health permit because there is a legitimate concern that any such food is unsafe, § 15-829(b)(2) permits the impoundment of items that reasonably appear abandoned, § 15-829(b)(6) permits the impoundment of property that "obstructs the free movement of pedestrians on sidewalk," and § 15-829(b)(8) permits the impoundment of items "creating an imminent and substantial danger or environmental hazard." Even §§ 15-829(b)(4) and (b)(5) could be used to impound unlawful obstructions because they allow impoundments for a vendors who operate "in violation of this article"—and one such violation is blocking "any entrance to any building, driveway, parking space or building window." FMC §§ 15-822(b)(5), 15-824(b)(5).

In short, for many of the Seizure Provisions, the City has a strong interest in removing property that is creating an ongoing hazard, obstruction, or disturbance. And because, in most circumstances, the nuisance, hazard, obstruction, or disturbance will be ongoing and require immediate abatement, a pre-deprivation hearing is not possible. *See Miranda*, 429 F.3d at 867.

Accordingly, the City has a compelling interest in conducting pre-notice seizures pursuant to the Seizure Provisions.

14

### b.   Risk of Erroneous Deprivation

The risk of an erroneous deprivation is minimized by the specific, objective criteria for impoundment listed in the Seizure Provisions. Preliminarily, as explained above, officers only impound property from non-permitted vendors *after* they've been informed of the permitting requirement. *See* FAC, Ex. 2 at p. 14. Additionally, applicants who are denied permit applications are provided an opportunity to appeal that decision. *See* FMC § 15-826. As such, there are important procedural safeguards *before* street-vendors have their property impounded for lack of a permit.

Moreover, the seizures under the Seizure Provisions are not left to unfettered discretion of the officers, but instead are triggered by obvious, identifiable violations—and many provisions include built-in safeguards that reduce the possibility of error. For instance, FMC § 15-829(b)(2) requires that unattended items remain for more than 30 consecutive minutes *and* that reasonable attempts are made to locate the owner before impounding the property, § 15-829(b)(5) only allows an officer to impound property if a street-vendor refuses to remove their property within 30 minutes of being instructed to do so, and § 15-829(b)(6) requires that property both block or obstruct the free movement of pedestrians *and* fail to "maintain a minimum of 48 inches of accessible path of travel."

Finally, the City's post-deprivation hearing process provides a direct and meaningful avenue to correct any potential errors. The ordinance guarantees an "aggrieved sidewalk vendor" the right to "appeal the impoundment of their items by requesting an administrative hearing before the city manager or the city manager's designee." FMC § 15-829(g). This is not a mere formality; it is a full administrative appeal that provides tangible relief for a successful appellant, including return of seized items, waiver of impound fees, and refund of any appeal fee. *Id.* Plaintiff's claim that "a successful appeal will likely only result in the return of the vendor's still remaining items at a later time than if there was no appeal" is based on pure speculation. FAC ¶ 68. Nothing precludes a vendor from filing the appeal

15

1  immediately upon the impoundment, and while there is a *maximum* time period of
2  70 days between the appeal and hearing, nothing prohibits the hearing from
3  occurring sooner. In short, the City's framework—a prompt hearing before a neutral
4  decision-maker with the power to return property and refund costs—is a
5  constitutionally adequate post-deprivation process. *See e.g. Fed. Deposit Ins. Corp.*
6  *v. Mallen*, 486 U.S. 230, 243-44 (1988) (finding a 90-day delay in a post-suspension
7  hearing did not violate due process rights).

8                          **c.    Private Interests**

9          The private interests affected by the impoundments are highly fact specific.
10 Although Plaintiff contends that, as a result of the Seizure Provisions, vendors are
11 deprived "of essential equipment and goods," FAC, ¶ 85, Plaintiff cannot contend
12 that this is always the case. For instance, if a street-vendor is causing a public
13 disturbance using a loudspeaker and refuses to stop, their private interests would
14 likely be minimal—and certainly outweighed by the public interest—if the City
15 impounded that loudspeaker under FMC § 15-829(b)(8).

16         In sum, Plaintiff cannot establish that there are no circumstances in which a
17 seizure would comport with due process under the three *Mathews* factors. As such,
18 Plaintiff's facial due process challenge fails as a matter of law.[3]

19                 2.    Plaintiff's Facial Fourth Amendment Challenges Fail

20         To prevail on its facial Fourth Amendment challenge, Plaintiff must similarly
21 establish that the Seizure Provisions violate the Fourth Amendment in *all*
22 applications. *See Barstow Proprietor Ass'n v. City of Barstow*, 2024 WL 5134349,

23 _____

24 [3] To the extent Plaintiff is alleging a stand-alone Fourteenth Amendment claim for
   deprivation of substantive due process or for violating the equal protection clause, it is
25 subject to rational basis review. *See Boone v. Redevelopment Agency of City of San Jose*,
   841 F.2d 886, 892 (9th Cir. 1988). For the reasons discussed in Section IV.C.1.a, *supra*,
26 the Seizure Provisions clearly satisfy this standard. *See Hisp. Taco Vendors of Washington*
   *v. City of Pasco*, 994 F.2d 676, 681 (9th Cir. 1993) (affirming the district court's rejection
27 of vendors' substantive due process challenge because "the ordinance is rationally related
   to legitimate governmental interests").
28

at *1 (9th Cir. Dec. 17, 2024) ("The district court did not err when it dismissed [a] Fourth Amendment facial challenge because the Amended Ordinance is not invalid in all its applications."). "The Fourth Amendment protects against unreasonable interferences in property interests…" *Miranda*, 429 F.3d at 862. "'A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well delineated exceptions.'" *Id.* (citing *United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir. 2001)). Moreover, if a seizure is permitted under the Fourth Amendment, it is irrelevant whether that seizure is permitted by state law. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("[S]tate restrictions do not alter the Fourth Amendment's protections.").

Here, the City's seizures pursuant to the Seizure Provisions could be justified by three exceptions to the warrant requirement: (1) administrative seizures; (2) the seizure of evidence of a crime; and (3) the "community caretaking" exception. Because Plaintiff cannot establish that these exceptions *never* apply to the Seizure Provisions, its facial challenge fails.

### a.    Administrative Search Exception

One exception to the warrant requirement "is known as the 'administrative search' or 'special needs' exception." *Verdun v. City of San Diego*, 51 F.4th 1033, 1038 (9th Cir. 2022). While the doctrine has most commonly been used in the search context, it has also been applied in the seizure context. *See id.* at 1045 (noting that "the 'administrative search' label has been applied to a wide variety of different types of searches <u>and seizures</u>…") (emphasis added).

The administrative search exception "has also been invoked to justify warrantless searches of certain closely regulated businesses for specified purposes." *Id.* at 1039. "These types of warrantless searches are justified because the regulatory presence 'is sufficiently comprehensive and defined that the owner of the commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.'" *Id.* (citing *Donovan v.*

17

*Dewey*, 452 U.S. 594, 600 (1981)). Here, because SB-946 and Ordinance 1789 place substantial limits on the time, place, and manner of street-vending in the City, street-vending is a closely regulated industry. *See e.g. Killgore v. City of S. El Monte*, 3 F.4th 1186, 1189-90 (9th Cir. 2021).[4]

"[A] warrantless inspection of a commercial business in a 'closely regulated' industry is reasonable under the Fourth Amendment provided three conditions are met: (1) 'there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made'; (2) 'the warrantless inspections must be necessary to further [the] regulatory scheme'; and (3) 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'" *Id.* (citing *New York v. Burger*, 482 U.S. 691, 702-03 (1987)).

Here, Plaintiff cannot establish that the Seizure Provisions are never reasonable when applying the *Burger* factors. As explained in Section C, *supra*, (1) the City has a substantial governmental interest in abating ongoing public nuisances, hazards, obstructions, and disturbances, (2) the seizures are necessary to further the regulatory scheme, particularly if the street-vendors refuse to voluntarily remove the offending property, and (3) the ordinances require clear and obvious violations based on objective standards, and provide an adequate post-seizure hearing process.

While the exact balancing of the government and private interests will depend on the facts of any specific seizure, Plaintiff cannot establish that there are *no* set of circumstances where seizures pursuant to the Seizure Provisions would be reasonable as an administrative seizure. As such, Plaintiff's facial challenge under the Fourth Amendment fails.

---

[4] Notably, the administrative seizure exception is not limited to closely regulated industries. *See Verdun,* 51 F.4th at 1039 ("[N]either the Supreme Court nor this court has limited application of the administrative search exception to particular contexts or factual scenarios."). As such, the seizures could be justified as an administrative seizure, even if street-vending were not considered a closely regulated industry.

18

LARSON
LOS ANGELES

### b.    Evidence of a Crime Exception

It is well-established that "[a]n officer who happens to come across an individual's property in a public area could seize it … if the items are evidence of a crime or contraband" without violating the Fourth Amendment. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 68 (1992). FMC § 15-828 provides that officers are "authorized to seize as evidence any item used in the commission of a violation of any provision of this article." Plaintiff erroneously argues that this provision violates the Fourth Amendment because (a) the officers do not intend to use property seized under this provision for evidence, and (b) the street-vending ordinance are not criminal and thus the seized property cannot be evidence of a crime. FAC ¶ 54.

Whether the officers intend to use the items as evidence is irrelevant to a Fourth Amendment analysis; all that is required is that the items *are* evidence. *See Whren v. United States*, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.").

And while a violation of the street-vending ordinances themselves are not criminal, the violations could nevertheless constitute *other* crimes—and in those situations, it is not unconstitutional to seize the property as evidence of those crimes. As explained in Section C.1.a. *supra*, if a street-vendor is violating one of the street-vending ordinances (such as, for example, vending without a permit), then their storage of property on the public sidewalk violates the City's generally applicable public nuisance laws—which is a misdemeanor. *See* FMC § 16-164(a). The City is authorized to impose this generally applicable public nuisance law on street-vendors. *See* Cal. Gov't Code § 51038(c)(7). Accordingly, while the violation of the street-vending ordinance itself may not be a crime, the violation could lead to a violation of public nuisance laws—and, in those instances, the City is permitted to seize the property as evidence of the crime of public nuisance.

1    Because Plaintiff cannot establish that the Seizure Provisions will never result

2    in seizing evidence of a crime, Plaintiff's facial Fourth Amendment challenge fails.

3                    **c.        Community Caretaking Exception**

4        "Local police officers … frequently … engage in … community caretaking

5    functions, totally divorced from the detection, investigation, or acquisition of

6    evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413

7    U.S. 433, 441 (1973). Under the community caretaking exception, officers may

8    seize and remove property which is "impeding traffic or threatening public safety

9    and convenience." *S. Dakota v. Opperman*, 428 U.S. 364, 369 (1976); *see also*

10   *Miranda*, 429 F.3d at 864 ("Whether an impoundment is warranted under this

11   community caretaking doctrine depends on the location of the [property] and the

12   police officers' duty to prevent it from creating a hazard to other [people] or being a

13   target for vandalism or theft."). Although frequently applied to vehicles, this

14   exception has also been applied to personal property. *See e.g. United States v.*

15   *Braxton*, 61 F.4th 830, 834 (10th Cir. 2023).

16       Here, as explained above, a violation of the street-vending ordinances will

17   often result in the creation of a public nuisance and an officer may use its

18   community caretaking powers to abate any such nuisance. *See e.g. United States v.*

19   *Rohrig*, 98 F.3d 1506, 1524 (6th Cir. 1996) ("[N]othing in the Fourth Amendment

20   requires the police … to idly observe and tolerate a late-night, ongoing nuisance to

21   the community while a warrant is sought and obtained."); *People v. Lanthier*, 5 Cal.

22   3d 751, 756 (1971) (finding that a warrantless search was reasonable "for the

23   purpose of discovering and abating [a] nuisance.") Moreover, many of the Seizure

24   Provisions involve the seizure of unattended property, or property causing an

25   obstruction. Courts routinely uphold community caretaking seizures in these

26   situations. *See e.g. Ramirez v. City of Buena Park*, 560 F.3d 1012, 1025 (9th Cir.

27   2009) (impounding car was reasonable under the community caretaking doctrine to

28   prevent vandalism or theft); *Clement*, 518 F.3d at 1094 (impounding a car justified

20

under community caretaking exception if it "is parked in the path of traffic, blocking a driveway, obstructing a fire lane or appears abandoned.").

Because Plaintiff cannot establish that a seizure under the Seizure Provisions will *never* be justified under the community caretaking exception, Plaintiff's facial Fourth Amendment challenge fails.

**D.    Plaintiff's Preemption Claim Fails**

Because the constitutional claims all fail, the Court should exercise its discretion not to exercise supplemental jurisdiction over Plaintiff's Third Cause of Action for preemption. *See* 28 U.S.C § 1367(c). Regardless, Plaintiff's claim should be dismissed because Plaintiff has failed to overcome the strong presumption against preemption. *See Big Creek Lumber Co. v. Cnty. of Santa Cruz*, 38 Cal.4th 1139, 1149 (2006).

Contrary to Plaintiff's contention, the Challenged Ordinance Provisions do not conflict with Cal. Gov't Code §§ 51037-39. Indeed, § 51038(c) allows the City to "adopt additional requirements regulating the time, place, and manner of sidewalk vending if the requirements are directly related to objective health, safety, or welfare concerns"—which include maintaining sanitary conditions, complying with the ADA and other disability access standards, obtaining a permit for sidewalk vending and/or licenses from other state or local agencies as required by law, and complying with other generally applicable laws.[5]

Nor do the City's Seizure Provisions conflict with state law by punishing a street-vending violation. To the contrary, as explained above, they merely allow seizing evidence of a crime or impounding property to abate an ongoing nuisance,

---

[5] Notably, the generally applicable laws the City has applied to street-vendors include public nuisance laws under FMC §§ 155-164 and laws regarding business licenses under §§ 15-26-50. This includes the provision that "[a]ny licensee transacting and carrying on business but not operating at a fixed place of business in the city shall keep the license and identification card upon his person at all times while transacting and carrying on the business for which it is issued." FMC § 15-39(g). As such, a seizure under FMC § 15-829(b)(4) for failing to provide identification is based on the requirements of § 15-39(g).

hazard, obstruction, or disturbance. And the City is not attempting to enforce the Health and Safety Code through the Seizure Provisions. It is merely enforcing its valid requirements that street-vendors must (a) obtain a health permit to sell food and (b) maintain sanitary conditions in order to maintain a City street-vending permit.

Finally, Plaintiff's claim that the Permit Provisions conflict with § 51038 is also incorrect. The City is permitted to impose permitting restrictions which are "directly related to objective health, safety, or welfare concerns." Cal. Gov't Code § 51038(c). Here, the City's requirement for a Livescan background check is clearly related to public safety. Moreover, the requirements for an insurance policy and a risk-acknowledgment from the vendor are related to the public welfare because they protect the City from liability. *See e.g., Kaahumanu v. Hawaii*, 682 F.3d 789, 809 (9th Cir. 2012) (noting that insurance and indemnification/hold-harmless requirements serve a significant governmental interest.).

Accordingly, because there is no conflict between the Challenged Ordinance Provisions and state law, Plaintiff's preemption claim must be dismissed.

## V.    **CONCLUSION**

For the foregoing reasons, the FAC fails as a matter of law. Given the fundamental deficiencies in Plaintiff's claims, the Court should dismiss this action without leave to amend. *See Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1074 (9th Cir. 2023).


Dated:  October 23, 2025                    LARSON LLP

                                            By:  */s/ Stephen G. Larson*
                                                 _____
                                                 Stephen G. Larson
                                                 Jonathan E. Phillips
                                                 Jonathan Gershon
                                            Attorneys for Defendant CITY OF FONTANA

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant CITY OF FONTANA certifies that this brief contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

Dated:  October 23, 2025                    LARSON LLP

                                           By: */s/ Stephen G. Larson*
                                               Stephen G. Larson
                                               Jonathan E. Phillips
                                               Jonathan Gershon
                                           Attorneys for Defendant CITY OF FONTANA

LARSON
LOS ANGELES