UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-02092-SSS-SPx | Date | January 15, 2026 |
|---|---|---|---|
| Title | *Inland Coalition for Immigrant Justice v. City Counsel of Fontana et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [DKT. NOS. 41, 45]**

Before the Court are Defendants' Motions to Dismiss Plaintiff's First Amended Complaint. [Dkt. Nos. 41, 45]. The Motions are fully briefed and ripe for review. [Dkt. No. 41, "City's Motion"; Dkt. No. 45, "4Leaf's Motion"; Dkt. No. 46, Opposition to City or "Opp. to City"; Dkt. No. 47, Opposition to 4Leaf or "Opp. to 4Leaf"; Dkt. No. 48, "City's Reply"; Dkt. No. 49, "4Leaf's Reply"]. The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

**I.   FACTUAL AND LEGAL BACKGROUND**

This case arises from the alleged grievances associated with recently enacted local regulations affecting sidewalk vendors.

Beginning in 2019, the City of Fontana ("the City") enacted Ordinance 1789 ("the Ordinance"), which authorized the seizure of sidewalk vendor property and instituted permitting requirements on sidewalk vendors. [Dkt. No. 36 at 12, "First Amended Complaint" or "FAC"]. Three years later, the City began enforcing

Ordinance 1789 against sidewalk vendors, seizing vendors' perishable goods and deterring vendors from applying for permits.  [*Id.*].  The City's initiatives to further regulate sidewalk vendors intensified in October 10, 2023, when the City's Mayor and City Council announced that it would adopt "a new and more aggressive strategy to combat sidewalk vending."  [*Id.* at 12–13].  Part of this second ordinance, Ordinance 1925, contains a provision titled "Enforcement Obligation Consequences" or "EOC," which made it a criminal misdemeanor to interfere with the City's efforts to enforce its operations.  [*Id.* at 13, 32].  Also part of Ordinance 1925 is an impoundment provision, which authorizes seizure of sidewalk vendor property.  [*Id.* at 47].

Along with Ordinance 1925, the City retained an outside contractor, 4Leaf, to enforce its new and existing regulations.  [FAC at 13].  In doing so 4Leaf's agents have confiscated vendors' property without notice or opportunity to be heard.  [*Id.*].  According to the FAC, 4Leaf's agents have "harass[d], intimidate[d], and ultimately coerce[d] vendors to abandon their rights and leave the City."  [*Id.*].

Inland Coalition for Immigrant Justice ("ICIJ") is a nonprofit organization that was founded in 2008 to support vulnerable communities in San Bernardino and Riverside counties.  [FAC at 14].  ICIJ consists of two types of members: (1) organizational members that pay dues upon signing a coalition agreement, and (2) community members, many of which are sidewalk vendors.  [*Id.* at 15].  ICIJ alleges that it was adversely affected by the City's ordinances; many of its members have left the City and have to shift substantial resources to ensure its members are aware of the ordinances and their consequences.  [*Id.* at 16].

In light of these circumstances, Plaintiff ICIJ filed this suit against the City, 4Leaf, and 4Leaf's Vice President Craig Tole and Director of Code Enforcement Pete Roque on August 11, 2025, alleging violations of its First, Fifth, and Fourteenth Amendment rights.  [*See generally* Dkt. No. 1, "Complaint"].  The FAC contains three causes of action challenging the following: (1) the EOC provision of Ordinance 1925; (2) the impoundment provision of Ordinance 1925; and (3) the permitting provisions of Ordinances 1789 and 1925.  [*See generally* FAC].

Defendants now seek to dismiss the case in its entirety, arguing that Plaintiff lacks Article III standing, among other issues.  [*See* City's Motion; *see* 4Leaf's Motion].

For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motions.

## II.  LEGAL STANDARD

Both the City and 4Leaf seek to dismiss Plaintiff's claims for lack of Article III organizational and associational standing. [City's Motion at 14–18; 4Leaf's Motion at 14–17]. In addition to the alleged grounds for a motion to dismiss under Rule 12(b)(1), Defendants also raise grounds for dismissal under Rule 12(b)(6). [City's Motion at 18–32; 4Leaf's Motion at 18–27].

### A.  Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and possess only the power authorized by federal statute and Article III of the United States Constitution. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Thus, federal courts cannot consider claims for which they lack subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The plaintiff bears the burden of establishing that subject matter jurisdiction exists. *See United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010). Rule 12(b)(1) permits a party to assert the defense of "lack of subject-matter jurisdiction" at any time. *See Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 571 (2004) ("Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment."); *see also* Fed. R. Civ. P. 12(h)(1) (providing that certain Rule 12(b) defenses can be waived but excluding lack of subject matter jurisdiction).

A plaintiff must "have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (citation omitted). The "irreducible constitutional minimum" of Article III standing has three elements: (1) the plaintiff must have suffered an "injury in fact," meaning a concrete and particularized injury that is actual or imminent; (2) the injury must be causally related to the defendant's challenged actions; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted); *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013).

An organization may have standing to sue "in its own right ... to vindicate whatever rights and immunities the association itself may enjoy," and in doing so, "may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). To establish organizational standing, an organization must "meet the same standing test that applies to individuals." *Spann v. Colonial Vill. Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (internal quotations and citations omitted). "In those cases where an organization is suing on its own behalf, it must establish concrete and demonstrable injury to the organization's activities—with a consequent drain on the organization's resources—constituting more than simply a setback to the organization's abstract social interests. Indeed, the organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *Common Cause v. Federal Election Comm'n*, 108 F.3d 413, 417 (D.C. Cir. 1997) (internal quotations and citations omitted); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Moreover, even if the organization has not suffered injury to itself, it may have standing to assert the rights of its members if: (1) its members would have standing to sue on their own; (2) the interests it seeks to protect are germane to its purpose; and (3) its claim and requested relief do not require participation by individual members. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Warth*, 422 U.S. at 511 ("Even in the absence of injury to itself, an association may have standing solely as the representative of its members."). "The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy." *Id.*

### B.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim is proper under Rule 12(b)(6) when a plaintiff "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In analyzing a motion to dismiss, a court must accept as true all material factual allegations and draw all reasonable inferences in the non-moving party's favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). A court need not accept, however, "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). When reviewing a Rule 12(b)(6) motion, a court must consider the complaint in its entirety and any attached documents, documents incorporated by reference, or matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If a complaint fails to state a plausible claim, a court should freely grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) even if such a request was not made, unless amendment would be futile. *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

## III. DISCUSSION

The Court first considers Defendants' arguments regarding Plaintiff's organizational and associational standing.

### A. Article III Organizational Standing

Defendants' Motions argue that Plaintiff's claims advance "frustration-of-mission" and "diversion-of-resources" theories that cannot support organizational standing because "spending resources on public advocacy or education is insufficient." [City's Motion at 14–15; *see also* 4Leaf's Motion at 14–15]. Plaintiff disputes Defendants' contention, arguing that the City's conduct and 4Leaf's actions as an agent of the City have "forced Plaintiff to expend significant time and resources to assist vendors (including its members), educate vendors, and generally respond to the City's increasing attacks on street vendors," or caused burdens to Plaintiff's core organizational activities. [Opp. to City at 12–13; Opp. to 4Leaf at 10–11]. Plaintiff insists that its injuries are not a mere setback to its abstract social interests, but manifest in the form of interference with its core business activities. [Opp. to City at 12–13; Opp. to 4Leaf at 10].

An organization may establish independent standing by showing "both a diversion of resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Standing emerges from the fact that the organization itself could not avoid either suffering an injury as a result of the challenged policy or diverting resources to avoid the injury. *Id.* (denying organizational standing because organization

failed to make any factual allegations that it was forced to divert resources because of the defendants' actions).

Nevertheless, the Supreme Court has clarified that an organization does not have standing to sue simply because it diverts resources in response to a defendant's actions. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024). In *Hippocratic Medicine*, the Supreme Court determined that organizations that pleaded the defendant had "impaired their ability to provide services and achieve their organizational missions" did not demonstrate standing, as "[a]n organization cannot manufacture its own standing" "simply by expending money to gather information and advocate against the defendant's action." *Id.* at 394–95 (internal quotation marks omitted). Nevertheless, an organization may have standing if the defendant's "actions directly affect[ ] and interfere[ ] with [the plaintiff's] core business activities." *Id.* at 395; *see Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024) ("*Hippocratic Medicine* clarified that the distinctive theory of organizational standing reflected in *Havens Realty* extends *only* to cases in which an organization can show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action.").

Accepting as true the facts as alleged in the FAC, Plaintiff was founded in 2008 and seeks to improve the lives of those residing in San Bernardino and Riverside counties. [FAC at 14]. As part of its activities, Plaintiff increases its members' "access to needed resources, education, and policy decision-making." [*Id.*]. Sidewalk vending is a "core focus of Plaintiff's programs" because it "represents one of the primary means for these vulnerable individuals to earn a living and provide for their families." [*Id.* at 15]. Plaintiff has thus provided "small business training, peer-to-peer technical assistance," hosted legal clinics and workshops, and other individualized assistance to sidewalk vendors as part of its organizational goals. [*Id.* at 19].

The FAC states that the City has passed ordinances and contracted with 4Leaf to confiscate and discard the property of sidewalk vendors, limit permits to sidewalk vendors, and potentially criminally charge or fine sidewalk vendors who interfere with the City's efforts. [*Id.* at 20]. This has caused Plaintiff to expend additional resources that it would not have otherwise expended given the strain and burden Defendants' conduct has caused the individuals that Plaintiff serves. Moreover, the City enacted the EOC provision of Ordinance 1925 and required 4Leaf and its personnel to "use the EOC provision to silence vendors while

vendors' essential equipment and goods [were] confiscated." [*Id.* at 59]. In other words, Defendants' enactment and enforcement of the relevant ordinances makes Plaintiff's mission difficult to achieve. *See Garcia v. City of Los Angeles*, 611 F. Supp. 3d 941, 950 (C.D. Cal. 2020).

Although individuals have undoubtedly been injured by the City's ordinances and implementation of the ordinances, the FAC nevertheless provides scant factual support to illustrate how Plaintiff ICIJ was injured to support organizational standing.

The FAC states that Ordinances 1789 and 1925 has "directly affected and interfered with" its core organizational goal of assisting sidewalk vendors. [FAC ¶ 19]. However, there is little support to show *how* Plaintiff has done more than merely expend resources in response to the ordinances.

Thus, Plaintiff has pleaded facts to raise a plausible inference that the City's ordinances and enforcement of those ordinances have adversely impacted its preexisting core business activities. To the extent Plaintiff alleges an injury based on its inability to continue servicing sidewalk vendors as a result of Defendants' actions relating to the Ordinances, Plaintiff's theory of organizational standing is not sufficiently pled.

Because the Court finds that Plaintiff has not provided factual support to demonstrate organization standing, the City and 4Leaf's Motion to Dismiss for lack of Article III standing is **GRANTED**. Plaintiff is provided with **LEAVE TO AMEND** to cure any deficiencies.

### B.   Article III Associational Standing

Defendants also argue that Plaintiff lacks associational standing. Although the discussion above confirms Plaintiff's failure to bring claims under a theory of organizational standing, the Court still evaluates the viability of associational standing. *Cf. Garcia*, 611 F. Supp. 3d at 950–52 (determining that an organization possessed organizational standing but not associational standing).

An association can sue on behalf of its members if it demonstrates: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual

members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The first element demands "specific allegations establishing that at least one *identified member* had suffered or would suffer harm.'" *Associated Gen. Contrs. of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). However, an organization need not identify an injured member at the pleading stage "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

Because the grounds for their arguments differ for each cause of action brought by Plaintiff, the Court considers the Defendants' arguments in turn.

### 1. The City's Motion

The City contends that the FAC is "devoid of any allegations regarding what specific harm [ICIJ's] members suffered, let alone how any specific ordinance provision was the cause of this harm." [City's Motion at 16]. Consequently, the City asserts that Plaintiff lacks associational standing to bring each of its three causes of action.

The FAC identifies two specific members who have suffered "serious harms" attributable to the City. [FAC at 22 n.5]. Accepting the facts in the FAC as true and making all reasonable inferences in favor of Plaintiff, these two members—A.M. and A.C.—have had their property from street vending seized by the City or 4Leaf. [*Id.*] Moreover, these two individuals have also been denied permits as a result of the City's enactment and enforcement Ordinance 1789 and/or Ordinance 1925. [*Id.*]. In being denied permits, the City threatened one of the individuals with jail time for vending. [*Id.*].

Plaintiff's allegations of injury to its members are therefore neither vague nor conclusory. The FAC's allegations squarely implicate the impoundment and permitting provisions of Ordinance 1789 and 1925. As articulated in its Opposition to the City, serving and protecting these sidewalk vendors is plainly an interest germane to Plaintiff's organizational purpose. [Opp. to City at 14]. Because the interests Plaintiff seek to protect are germane to its purpose, and the relief requested does not require those individuals to participate in this action, the

Court finds that the FAC contains adequate factual support for associational standing as to the City's actions relating to seizing property or issuing permits. The City's Motion is **DENIED** as to Claim 2 and Claim 3.

Nevertheless, the FAC lacks any actual allegation regarding whether any of Plaintiff's members have been charged or will be charged with violating the EOC provision of Ordinance 1925. The FAC does state that one of Plaintiff's members has been threatened with jail time for vending; however, this threat appears to have been made in connection with the permitting process or sidewalk vending in general as opposed to interfering with City official's performance of their duties as outlined in the EOC provision. Therefore, the FAC has not adequately demonstrated associational standing to challenge that aspect of Ordinance 1925. The City's Motion is **GRANTED** as to Claim 1. The Court provides Plaintiff **LEAVE TO AMEND** any pleading deficiencies as to Claim 1.

### 2.    4Leaf's Motion

Much like the City, 4Leaf contends that Plaintiff fails to allege how its members were injured or how the interests Plaintiff seeks to protect are germane to its purpose. [4Leaf's Motion at 15–17]. For the same reasons discussion above, the Court finds that Plaintiff seeks to protect interests germane to its purpose: advocating for the economic empowerment and rights of sidewalk vendors. [*See* Opp. to 4Leaf at 11].

However, 4Leaf also asserts that the FAC lacks factual allegations to demonstrate causation such that Plaintiff's injury could be fairly traced to its conduct. [4Leaf's Motion at 16–17].[1] In particular, 4Leaf observes that the FAC identifies only two individuals that are members of ICIJ, both of whom suffered injuries at the hands of the City—not 4Leaf. [*Id.*]. Those injuries include having their perishable goods seized and disposed around Christmas of 2023, being denied permits from the City, and being threatened by the City with jail time for vending. [FAC at 22 n.5].

As indicated in the FAC, 4Leaf "has taken over from City officers the role of enforcing the City's sidewalk vending ordinances" since the fall of 2023. [FAC at

---

[1] As indicated by 4Leaf's Motion, Plaintiff has agreed that it will no longer pursue Claim 3 against 4Leaf. Therefore, the Court will consider Claim 3 dismissed as to 4Leaf. [4Leraf's Motion at 27].

23]. In doing so, 4Leaf has also implemented the EOC provision of Ordinance 1925 as a "mechanism . . . to silence sidewalk vendors confronted while vending." [*Id.* at 58]. Drawing all reasonable inferences in favor of Plaintiff, the Court finds that the FAC has plausibly alleged that 4Leaf—operating as the City's agent—seized and disposed of at least one of Plaintiff's member's perishable goods from sidewalk vending. While doing so, 4Leaf exercised the threat of criminal charges outlined in the EOC provision to intimidate vendors into silence or prevent vendors from demanding return of their seizure property. [*Id.* at 59].[2] The FAC's allegations therefore provide sufficient facts for Plaintiff to bring Claims 1 and 2 against 4Leaf.

Accordingly, the Court **DENIES** 4Leaf's Motion as to Claims 1 and 2.

Because the Court grants Plaintiff leave to amend as to the claims brought against the City and 4Leaf, the Court declines to rule on Defendants' Motions as to the merits and will consider the arguments after Plaintiff files the amended complaint. *See Patel v. Cnty. of Orange*, No. 817CV01954JLSDFM, 2018 WL 9537313, at *2 (C.D. Cal. Sept. 19, 2018) ("Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.").

## IV. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss as follows:

- The City's Motion to Dismiss for lack of organizational standing is **GRANTED** as to all claims. Plaintiff is granted **LEAVE TO AMEND** as to all claims.

---

[2] The Court notes that the FAC does not identify specific members who have been subject to these threats; however, the Court's review of the FAC as a whole suggests that it is "relatively clear" that 4Leaf's implementation of the EOC has adversely affected Plaintiff's members, and it is not necessary for 4Leaf to know the identity of any particular member to understand and respond to Plaintiff's claim of injury. *See Cegavske*, 800 F.3d at 1041. [*See* FAC at 22 at n.5; *id.* at 34].

- The City's Motion to Dismiss for lack of associational standing is **GRANTED** as to **Claim 1** but **DENIED** as to **Claims 2 and 3**. Plaintiff is granted **LEAVE TO AMEND** as to **Claim 1**.

- 4Leaf's Motion to Dismiss for lack of organizational standing is **GRANTED** as to all claims. Plaintiff is granted **LEAVE TO AMEND** as to all claims; and

- 4Leaf's Motion to Dismiss for lack of associational standing is **DENIED**.

Plaintiff is **ORDERED** to file an amended complaint by **January 30, 2026,** as to the surviving claims. Plaintiff is also **ORDERED** to email a red-lined version of the amended complaint to SSS_chambers@cacd.uscourts.gov on the date it is filed. If an amended complaint is filed, Defendants must either file a motion to dismiss or responsive pleading within 14 days after being served with the amended complaint.

**IT IS SO ORDERED.**