MATTHEW T. HEARTNEY (Bar No. 123516)
matthew.heartney@arnoldporter.com
DANIEL SHIMELL (Bar No. 300931)
daniel.shimell@arnoldporter.com
KATHRYN CAMPBELL (Bar No. 350536)
katie.campbell@arnoldporter.com
DANIA QAHOUSH (Bar No. 335202)
dania.qahoush@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000

RITU MAHAJAN (Bar No. 252970)
rmahajan@publiccounsel.org
MARK ROSENBAUM (Bar No. 59940)
mrosenbaum@publiccounsel.org
SYLVIA TORRES-GUILLEN (Bar No. 164835)
storres-guillen@publiccounsel.org
CASSIDY J. BENNETT (Bar No. 347811)
cbennett@publiccounsel.org
ELIZABETH R. BROWN (Bar No. 360601)
ebrown@pubclicounsel.org
JACOB MADDOX (Bar No. 354368)
jmaddox@publiccounsel.org
**PUBLIC COUNSEL**
610 South Ardmore
Los Angeles, CA 90005
Telephone: 213.385.2977

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION

| | |
|---|---|
| A.M., A.P., L.C., and INLAND COALITION FOR IMMIGRANT JUSTICE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FONTANA and 4LEAF, INC.,<br><br>Defendants. | Case No. 5:25-CV-2092-SSS-SP<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.   INTRODUCTION ........................................................................................ 1

II.  RELEVANT FACTUAL ALLEGATIONS ................................................. 1

III. LEGAL STANDARD .................................................................................. 3

IV.  ARGUMENT ................................................................................................ 3

    A.    Plaintiffs' Amendments Are Far from Spurious and Do No Prejudice the City ................................................................................. 3

    B.    Plaintiffs' New Claims Succeed and the City's Motion Fails as a Matter of Law .......................................................................................... 6

        1.    Plaintiffs Have Sufficiently Alleged Standing for All of Their Claims ............................................................................... 6

        2.    The City Violated the U.S. Constitution by Illegally Applying its Laws to A.M. and L.C. ............................................. 9

            a.    A.M. and L.C. Have Sufficiently Alleged As-Applied Due Process Claims ............................................... 9

            b.    Governmental Interest ............................................... 10

            c.    Risk of Erroneous Deprivation ................................. 12

            d.    Private Interests ......................................................... 14

        3.    A.M. and L.C. Have Sufficiently Alleged As-Applied Fourth Amendment Claims .......................................................... 15

            a.    Administrative Search Exception ............................. 16

            b.    Community Caretaking Exception ............................ 18

        4.    Plaintiffs Have Sufficiently Alleged Bane Act Claims ................ 19

        5.    Plaintiffs Sufficiently Allege Facial Challenges to the City's Laws ............................................................................... 22

    V.  CONCLUSION ........................................................................................... 22

CERTIFICATE OF COMPLIANCE

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. City of Menlo Park*,
   787 F.2d 1371 (9th Cir. 1986), *cert. denied*, 479 U.S. 1032 (1987) ..................12

*Allen v. Cnty. of Los Angeles*,
   No. CV-07-102-R-SH, 2009 WL 666449 (C.D. Cal. Mar. 12, 2009)..................5

*Allen v. Cty. of Lake*,
   71 F. Supp. 3d 1044 (N.D. Cal. 2014)..................................................................19

*Animal Prot. & Rescue League, Inc. v. Cnty. of Riverside*,
   111 Cal. App. 5th 914, 920, *reh'g denied* (May 27, 2025) ..........................20, 21

*B.D.A.A. v. Bostock*,
   No. 6:25-CV-02062-AA, 2025 WL 3484912 (D. Or. Dec. 4, 2025) .................12

*Beavers v. New Penn Fin. LLC*,
   No. 1:17-cv-00747-JLT, 2018 WL 385421 (E.D. Cal. Jan. 11, 2018).................5

*Benton v. Baker Hughes*,
   No. CV-12-07735-MMM-MRWX, 2013 WL 3353636 (C.D. Cal. June
   30, 2013) .............................................................................................................6

*Brett v. Brooks Bros. Grp., Inc.*,
   No. CV-17-4309-DMG-EX, 2018 WL 8806668 (C.D. Cal. Sept. 6,
   2018) ....................................................................................................................6

*Brewster v. City of Los Angeles*,
   672 F. Supp. 3d 872 (C.D. Cal. 2023) ...............................................................18

*City of Stockton v. Sup. Ct.*,
   42 Cal. 4th 730 (2007) ........................................................................................20

*City of Los Angeles v. Patel*,
   576 U.S. 409 (2015)......................................................................................16, 17

*Clement v. City of Glendale*,
   518 F.3d 1090 (9th Cir. 2019) ...........................................................................11

*Clements v. Airport Auth. of Washoe Cnty.*,
   69 F.3d 321 (9th Cir. 1995) ...............................................................................13

ii

*Cruz v. Bank of N.Y. Mellon*,
  No. 12-cv-00846, 2012 WL 2838957 (N.D. Cal. July 10, 2012)..........................4

*Cuviello v. City of Vallejo*,
  944 F.3d 816 (9th Cir. 2019) ...............................................................................11

*Donovan v. Dewey*,
  452 U.S. 594 (1981)..............................................................................................17

*Est. of McCrary v. Victorville Police Dep't*,
  No. 5:23-CV-02602-SSS-SPX, 2025 WL 806383 (C.D. Cal. Jan. 6,
  2025) .....................................................................................................................21

*Fed. Deposit Ins. Corp. v. Mallen*,
  486 U.S. 230 (1988)..............................................................................................14

*Feduniak v. California Coastal Com.*,
  148 Cal. App. 4th 1346 (2007) .............................................................................21

*Fredrichsen v. City of Lakewood*,
  6 Cal. 3d 353 (1971) .............................................................................................20

*Friedman v. 24 Hour Fitness USA, Inc.*,
  580 F. Supp. 2d 985 (C.D. Cal. 2008) ...................................................................3

*Garcia v. City of Los Angeles*,
  611 F. Supp. 3d 918 (C.D. Cal. 2020).............................................................21, 22

*Gonzalez v. Arizona*,
  677 F.3d 383 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter
  Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)...............................................7

*Herrera v. City of Palmdale*,
  No. cv-16-9453-MWF-FFMX, 2020 WL 6064015 (C.D. Cal. July 6,
  2020) .....................................................................................................................19

*J.M. v. Huntington Beach Union High School Dist.*,
  2 Cal. 5th 648, 657 (2017) ....................................................................................21

*Jairo Espinoza Palacios, et al., v. Laura Hermosillo, et al.*,
  No. 2:26-CV-491-JNW, 2026 WL 686138 (W.D. Wash. Mar. 11,
  2026) .....................................................................................................................12

*John R. v. Oakland Unified School Dist.*,
  48 Cal. 3d 438 (1989)...........................................................................................20

iii

*Kansas v. Glover*,
589 U.S. 376 (2020) (Sotomayor, J., dissenting) ...................................13

*Killgore v. City of S. El Monte*,
3 F.4th 1186 (9th Cir. 2021) ...................................................16, 17

*Knudson v. City of Ellensburg*,
832 F.2d 1142 (9th Cir. 1987) .......................................................13

*Lamumba Corp. v. City of Oakland*,
No. C-05-2712-MHP, 2006 WL 3086726 (N.D. Cal. Oct. 30, 2006)..................5

*Lavan v. City of Los Angeles*,
693 F.3d 1022 (9th Cir. 2012) .......................................................15

*Libertarian Party of L.A. v. Bowen*,
709 F.3d 867 (9th Cir. 2013) ..........................................................8

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982)...................................................................10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................................................................6

*MacRae v. HCR Manor Care Services*,
LLC, No. SA-CV-14-0715-DOC-RNBX, 2018 WL 10164063 (C.D.
Cal. Mar. 5, 2018)......................................................................5

*Marshall v. Barlow's, Inc.*,
436 U.S. 307 (1978)...................................................................16

*Mathews v. Eldridge*,
424 U.S. 319 (1976)...........................................................9, 10, 14

*Miranda v. City of Cornelius*,
429 F.3d 858 (9th Cir. 2005) .............................................11, 15, 18

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) .........................................................5

*New York v. Burger*,
482 U.S. 691 (1987)...................................................................17

iv

*Nishimoto v. City of Torrance*,
   No. cv-09-8328-SVW-AJWX, 2011 WL 13213634 (C.D. Cal. Jan. 6, 2011) .........................................................................................................19

*People v. Lanthier*,
   5 Cal. 3d 751 (1971) ...............................................................................19

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
   352 F. Supp. 2d 1048 (N.D. Cal. 2004)........................................................3

*Ponce v. U.S. Gov't*,
   No. 3:11-CV-172-AC, 2013 WL 6177812 (D. Or. Nov. 21, 2013), *aff'd,* 639 F. App'x 511 (9th Cir. 2016) *and aff'd,* 667 F. App'x 921 (9th Cir. 2016) .......................................................................................14

*Porter v. Martinez*,
   68 F.4th 429 (9th Cir. 2023) .....................................................................8

*Recchia v. City of Los Angeles Dep't of Animal Servs.*,
   889 F. 3d 553 (9th Cir. 2018) ...................................................................15

*Rios v. Cnty. of Sacramento*,
   562 F. Supp. 3d 999 (E.D. Cal. 2021) ........................................................21

*Rush v. Obledo*,
   756 F.2d 713 (1985)...................................................................................16

*Sandoval v. Cnty. of Sonoma*,
   72 F. Supp. 3d 997 (N.D. Cal. 2014), *aff'd,* 912 F.3d 509 (9th Cir. 2018) ...................................................................................................18

*Sapiro v. Encompass Ins.*,
   221 F.R.D. 513 (N.D. Cal. 2004).................................................................5

*Smith v. Cnty. of Los Angeles*,
   No. CV-11-10666-DDP-PJWX, 2015 WL 1383539 (C.D. Cal. Mar. 25, 2015) ...................................................................................................5

*Stypmann v. City and Cty. of San Francisco*,
   557 F.2d 1338 (9th Cir. 1977) ...................................................................10

*Tran v. Smith*,
   No. 1-19-CV-00148-DAD-SAB-PC, 2021 WL 2142622 (E.D. Cal. May 26, 2021).........................................................................................6

*United States v. Cervantes*,
  703 F.3d 1135 (9th Cir. 2012) .................................................................15

*United States v. Jacobsen*,
  466 U.S. 109 (1984)................................................................................15

*United States v. James Daniel Good Real Property*,
  510 U.S. 43 (1993)...................................................................................9

*United States v. Rohrig*,
  98 F.3d 1506 (6th Cir. 1996) ..................................................................19

*Untalan v. Stanley*,
  No. 2:19-cv-07599-ODW-JEMx, 2020 WL 6078474 (C.D. Cal. Oct.
  15, 2020) .................................................................................................12

*Verizon Delaware, Inc. v. Covad Commun. Co.*,
  377 F.3d 1081 (9th Cir. 2004) ..................................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution...................................................................................2, 9

U.S. Const., amend. I ................................................................................8

U.S. Const., amend. IV ...............................................................15, 18, 19

U.S. Const., amend. XIV ........................................................................10

U.S. Const., amend. XIV, Due Process Clause ........................................9

**STATE STATUTES**

Cal. Civ. Code § 52.1 (Bane Civil Rights Act)............................19, 20, 22

Cal. Civ. Code § 52.1(k) .........................................................................20

Cal. Gov't Code § 911.2 ..........................................................................20

Cal. Gov't Code § 51036(c).....................................................................12

Cal. Gov't Code § 51039(d)(1).................................................................11

**RULES**

Fed. R. Civl. P. 12(f)..................................................................................3

Fed. R. Civl. P. 15...................................................................................3, 4

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

Fed. R. Civl. P. 15(a)(2)................................................................................22

**LEGISLATIVE MATERIALS**

SB 946, § 1(a)(3).................................................................................11, 17

**CITY CODES AND ORDINANCES**

Fontana Municipal Code

     § 1-14 ...............................................................................................2, 8

     § 15-820 ................................................................................................1

     § 15-826 ......................................................................................7, 13, 14

     § 15-828 ................................................................................................1

     § 15-829 ................................................................................................7

     § 15-829(b) ...........................................................................................2

     § 15-829(g) .........................................................................................13

     § 15-829(h) ...........................................................................................7

Fontana Ordinances

     Ordinance 1789.......................................................................................1

     Ordinance 1925.......................................................................................2

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

## I.    INTRODUCTION

The City of Fontana ("City" or "Fontana") and its third-party contractor 4LEAF, Inc. ("4LEAF," together with the City, "Defendants") are engaged in a lawless and harrowing campaign designed to eradicate sidewalk vendors from the City.  First, Fontana enacted permit requirements that place compliance out of reach for most vendors, many of whom are low-income monolingual Spanish-speaking immigrants.  Then, using compliance with the permit requirements as a fig leaf for their animus, Defendants corner vendors, destroy their merchandise and confiscate their property without any pre-deprivation process, and threaten to criminally prosecute anyone who objects.  The City's conduct violates basic constitutional guarantees and California state law.

Just three months ago, the City represented to the Court that: "If there is . . . [any] particular person or persons being adversely affected by the City's enforcement of one of these ordinances . . . [we] welcome that case . . . ."  Hearing Tr. 21:24–22:2, January 9, 2026.  Plaintiffs—three sidewalk vendors and an organization dedicated to supporting and serving vendors—have brought that case.  Now, the City has reversed course, seeking to strike the individual Plaintiffs' claims.

The Court should reject this effort.  As the City's counsel represented, the addition of three individual Plaintiffs does not prejudice Defendants and aids the Court in adjudicating this dispute.  And Plaintiffs' additional claims are far from futile.

## II.    RELEVANT FACTUAL ALLEGATIONS

In 2019, the City adopted Ordinance 1789, severely curtailing sidewalk vendors' rights through: (1) FMC § 15-828, which authorizes its officers to "seize as evidence any item used [by a vendor] in . . . a violation of any provisions" of that Ordinance without a warrant and (2) § 15-820, which requires vendors to obtain permits with onerous conditions not imposed on other small businesses,

1

including mandates to purchase multi-million-dollar insurance policies, submit to yearly Livescan background checks, and commit to using public sidewalks at their own risk.  California state law forbids these demands.  Second Amended Complaint ("SAC"), ¶¶ 35–40, Dkt. 65.

The City adopted these unlawful provisions to justify widespread warrantless seizures of vendors' property in violation of the U.S. Constitution and California state law.  A City report boasted that, in 2023, its officers had "confiscated [vendors] perishable goods over 400 times."  *Id.* ¶ 38.  Still dissatisfied with the results of Or. 1789, the City Council and Mayor enacted Ordinance 1925 in October 2023, implementing a new and more aggressive strategy to exclude sidewalk vendors from Fontana and vitiate their state and constitutional rights.  *Id.* ¶ 45.

Specifically, Or. 1925 added two more provisions that conflict with state law and violate the U.S. Constitution.  *Id.* ¶ 46.  First, the City enacted the Enforcement Obstruction Consequences ("EOC") Provision making it a criminal misdemeanor for sidewalk vendors to "interfere in any way" with City personnel.  FMC § 1-14.  Second, the City's "impoundment provisions" illegally authorize City officers to "impound a sidewalk vendor's vending cart, equipment, food, utensils, goods . . . or merchandise" whenever a vendor was deemed to be "in violation" of any of the enumerated offenses, nine of which are challenged here.  FMC § 15-829(b).

Using the challenged impoundment provisions, the City seized and destroyed A.M.'s and L.C.'s property more than 30 times.  SAC ¶ 61.  Because of these seizures, A.M. and L.C. "lost over $15,000 in food and $2,000 in equipment," leaving them unable to "pay their rent and other expenses."  *Id.* ¶ 89.  Further, City personnel repeatedly threatened A.M. and L.C. with arrest pursuant to the EOC Provision.  *See* SAC ¶ 60 (city officers "threatened to arrest A.M. and L.C. if they interfered with them"); *id.* ¶ 92 (City officers threatened "A.M. and L.C. . . . with prosecution under Or. 1925, FMC § 1-14—silencing [them] and

2

preventing them from speaking up and challenging the decisions of officers that result in the deprivation of their property"); *see also id.* ¶¶ 3, 19–22, 54, 60, 92, 106–07.  Similarly, City personnel confronted A.P. while he was selling beverages and forced A.P. to stop vending in Fontana out of fear.  *Id.* ¶ 65.  Finally, the City's unlawful permitting requirements prevented A.M., L.C., and A.P from obtaining vending permits altogether.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are strongly disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation" or "unless prejudice would result to the moving party from denial of the motion."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion."  *Id.*; *see also Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008).

### IV.   ARGUMENT

**A. Plaintiffs' Amendments Are Far from Spurious and Do Not Prejudice the City.**

Lacking substantive arguments, the City contends that Plaintiffs' SAC should be stricken for exceeding the Court's leave to amend.  Motion to Strike ("City MTS"), 4-5, Dkt. 71.  The City's argument is without merit.  First, the City misinterprets the Court's Order  on Motion to Dismiss First Amended Complaint ("Order"), which, consistent with Rule 15's policy of liberal amendment, permitted Plaintiffs to amend "as to the surviving claims."  Order at 11, Dkt. 54.  Even if Plaintiffs' amendments exceeded the scope of the Court's leave to amend, the Court should deny the City MTS as Plaintiffs' amendments bear on the core

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

subject of this litigation and as the City fails to show—or even claim—any prejudice whatsoever.

Plaintiffs' amendments are consistent with the Court's Order.  In keeping with Rule 15's policy of liberal amendment, *see Verizon Delaware, Inc. v. Covad Commun. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004), the Court granted Plaintiffs leave to amend "as to the claims brought against the City and 4Leaf."  Order at 10; *see also id.* at 7 (granting "leave to amend to cure *any* deficiencies" as to organizational standing); *id.* at 9 (granting "leave to amend *any* pleading deficiencies as to Claim 1"); *id.* at 10 ("Plaintiff is granted leave to amend as to all claims.").  Nowhere did the Court prohibit Plaintiffs from amending their remaining claims.  Indeed, the Court's Order contemplated amendments to Plaintiffs' remaining claims by deferring a ruling on the merits "*[b]ecause* the Court grants Plaintiff leave to amend as to the claims brought against the City and 4Leaf." *Id.* at 10 (emphasis added).

Plaintiffs did as the Court ordered.  Plaintiffs gathered additional facts to address the deficiencies identified by the Court, including as to Inland Coalition for Immigrant Justice's ("ICIJ") organizational standing—facts which also support Plaintiffs' substantive claims. *Id.* at 7 (granting leave to amend to "cure any deficiencies" as to organizational standing).  In the interest of judicial economy, Plaintiffs amended their factual allegations and legal claims to conform to its new allegations as to standing.  During this process, three individual ICIJ members bravely stepped forward to join the lawsuit as plaintiffs alongside ICIJ.  Since their claims are so substantially similar and related to those made by ICIJ and bear on the core claims of Plaintiffs' case, Plaintiffs amended to include them in the SAC.

Even if Plaintiffs' amendments exceeded the scope of the Court's Order, the Court retains discretion to decline to strike. *Cruz v. Bank of N.Y. Mellon*, No. 12-cv-00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012).  "Exceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a

pleading or portions thereof." *Allen v. Cnty. of Los Angeles*, No. CV-07-102-R-SH, 2009 WL 666449, at *2 (C.D. Cal. Mar. 12, 2009); *Beavers v. New Penn Fin. LLC*, No. 1:17-cv-00747-JLT, 2018 WL 385421, at *3 (E.D. Cal. Jan. 11, 2018) (citation omitted) (same); *Lamumba Corp. v. City of Oakland*, No. C-05-2712-MHP, 2006 WL 3086726, at *4 (N.D. Cal. Oct. 30, 2006) (same). Courts decline to strike amendments that exceed the scope of the court's leave to amend, so long as the new allegations or claims are not "wholly specious" or do not cause defendants "'undue prejudice.'" *Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (denial of leave to amend warranted due only to "inordinate delay, prejudice to the defendants, the fact that the amended complaint would greatly change the nature of the litigation, and the potential futility of the claims").

Here, the City neither claims nor shows any prejudice, and Plaintiffs' claims bear on the core subject of the litigation. *See* City MTS at 4–5. Plaintiffs' First Amended Complaint ("FAC") put the City on notice as to the claims against it, and the information underlying Plaintiffs' new allegations "was always in Defendants' hands." *Smith v. Cnty. of Los Angeles*, No. CV-11-10666-DDP-PJWX, 2015 WL 1383539, at *3 (C.D. Cal. Mar. 25, 2015). Indeed, the City expressed no objection when Plaintiffs' counsel proposed amending "to clarify [Plaintiff's other claims]." Hearing Tr., 11:19-21, January 9, 2026. Nor can the City claim that Plaintiffs' new allegations, which are directly related to Plaintiffs' core claims, are wholly spurious. Where defendants fail to make such a showing, district courts routinely deny motions to strike. *See, e.g., MacRae v. HCR Manor Care Services*, LLC, No. SA-CV-14-0715-DOC-RNBX, 2018 WL 10164063, at *4 (C.D. Cal. Mar. 5, 2018) ("Defendants have not argued that the addition of the Two New Plaintiffs is 'wholly specious' or causes prejudice to Defendants."); *Smith*, 2015 WL 1383539, at *3 (declining to strike additional claim because it was "not immaterial or impertinent to the [existing] claims" and the defendants had access to the

information underlying the claim); *Tran v. Smith*, No. 1-19-CV-00148-DAD-SAB-PC, 2021 WL 2142622, at *2 (E.D. Cal. May 26, 2021) (denying motion to strike and finding good cause to permit the amendment because the defendants failed to show prejudice or that "the factual allegations have no bearing on the subject matter of this litigation.").

The cases the City relies on are inapposite. *See Brett v. Brooks Bros. Grp., Inc.*, No. CV-17-4309-DMG-EX, 2018 WL 8806668, at *2-3 (C.D. Cal. Sept. 6, 2018)) (where the original plaintiff added two plaintiffs before voluntarily dismissing, effectively making a substitution, in lieu of curing the identified deficiencies); *Benton v. Baker Hughes*, No. CV-12-07735-MMM-MRWX, 2013 WL 3353636, at *4 (C.D. Cal. June 30, 2013) (where the plaintiff filed his amended complaint after the deadline for motions to amend, without a showing of good cause).

Plaintiffs' amendments state claims for relief, are not futile, and should not be stricken. Accordingly, the Court should find good cause to permit the amendments.

**B. Plaintiffs' New Claims Succeed and the City's Motion Fails as a Matter of Law.**

1. Plaintiffs Have Sufficiently Alleged Standing for All of Their Claims

Consistent with the Court's Order, Plaintiffs have standing for all their claims. For each claim, Plaintiffs have sufficiently alleged: (1) a concrete and particularized injury in fact; (2) a causal relationship between that injury and the City's challenged conduct; and (3) a likelihood that their injury would be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

6

*First*, Plaintiffs A.M. and L.C. have standing to challenge the City's impoundment provisions.[1]  In finding that Plaintiff ICIJ has associational standing to challenge the City's impoundment provisions based on A.M.'s allegations in the FAC, this Court necessarily found that A.M. has "standing to sue in [her] own right."  Order at 7–8.[2]  The SAC only strengthens A.M.'s standing and establishes that her partner, L.C., likewise has standing to challenge the City's impoundment provisions.[3]  The City repeatedly seized and destroyed A.M.'s and L.C.'s property pursuant to the challenged impoundment provisions.  *See* SAC ¶¶ 3, 19–20, 22, 54, 57–59, 61, 72, 89, 94, 97, 173–174.  Because of these seizures, A.M. and L.C. "lost over $15,000 in food and $2,000 in equipment," leaving them unable to "pay their rent and other expenses."  *Id.* ¶ 89.

*Second*, Plaintiffs A.M., A.P., and L.C. have standing to challenge the EOC Provision.  SAC ¶¶ 4, 21, 60, 62, 92, 171, 173.  City personnel repeatedly threatened A.M. and L.C. with arrest pursuant to the EOC Provision.  *See* SAC ¶

---

[1] A.P. does not assert a claim as to the City's impoundment provisions.  City MTS at 6.

[2] The Court need not revisit that holding.  Under the law of the case doctrine, "a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case."  *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).  None of the exceptions to the law-of-the-case doctrine—i.e., a clearly erroneous decision that would work manifest injustice, intervening controlling authority, or the emergence of substantially different evidence—applies here. *See id.*

[3] FMC §§ 15-826 and 15-829(h)—what the City terms the "Appeal Provisions"—are part of the challenged impoundment provisions.  These provisions impose impermissible financial penalties and conditions for individuals to retrieve impounded items or access the City's deficient post-impoundment appeal process.  Consistent with this Court's Order and as established in the SAC, A.M. and L.C. have standing to challenge FMC §§ 15-826 and 15-829(h) just as they have standing to challenge all the challenged impoundment provisions.  In fact, the fee imposed by § 15-829 prevented A.M. and L.C. from being able to recover "their table, chairs, canopy, and grill that officers impounded."  SAC ¶¶ 6, 94.

7

60 (city officers "threatened to arrest A.M. and L.C. if they interfered with them"); *id.* ¶ 92 (City officers threatened "A.M. and L.C. . . . with prosecution under Or. 1925, FMC § 1-14—silencing [them] and preventing them from speaking up and challenging the decisions of officers that result in the deprivation of their property"); *see also id.* ¶¶ 3, 19–20, 22, 54, 106–07.  Similarly, City personnel confronted A.P. while he was selling beverages and discouraged A.P. from vending in the City.  *Id.* ¶ 65.  Plaintiffs undoubtedly have standing to challenge the City's EOC Provision.

Contrary to the City's suggestion, Plaintiffs need not allege that they "have or will interfere with code enforcement actions" to establish standing for their First Amendment claim.  City MTS at 6.  "First Amendment challenges 'present unique standing considerations' because of the 'chilling effect of sweeping restrictions' on speech."  *Porter v. Martinez*, 68 F.4th 429, 437 (9th Cir. 2023) (citation omitted).  "[W]here a plaintiff has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced."  *Libertarian Party of L.A. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (citation omitted).  A.M. and L.C. have censored themselves and refrained from speaking because of their well-founded fears that City officers would enforce the EOC Provision against them based on officers' explicit threats to arrest them under that law.  *See* SAC ¶¶ 22, 54, 60, 92, 104, 173.  These are paradigmatic First Amendment harms sufficient for standing.

*Finally*, Plaintiffs A.M., A.P., and L.C. each have standing to sue to challenge the City's permit provisions.  In finding that Plaintiff ICIJ has associational standing to challenge the City's permit provisions based on A.M.'s and A.P.'s allegations in the FAC,[4] this Court also necessarily found that A.M. and A.P. have "standing to sue

---

[4] A.P. is the same individual previously identified as A.C. in the FAC.

in their own right" to challenge the law.  Order at 7-9.  The SAC only strengthens A.M. and A.P.'s standing and establishes that L.C. likewise has standing to challenge the City's permit provisions.  The City's challenged permit provisions have discouraged and prevented A.M., A.P., and L.C. from obtaining sidewalk vending permits.  SAC ¶¶ 3, 4, 19–20, 37, 40, 56, 60, 92, 106–107; *see also id.* ¶ 167.  Contrary to the City's contention, L.C. specifically alleges that the City's permit provisions discouraged and prevented him from obtaining a sidewalk vending permit.  SAC ¶¶ 37, 40, 56.  Moreover, Plaintiffs have not and do not "concede that they failed to obtain a health permit."  City MTS at 7.  Plaintiffs each have standing to challenge the City's permit provisions.

2.  <u>The City Violated the U.S. Constitution by Illegally Applying Its Laws to A.M. and L.C.</u>

a.  *A.M. and L.C. Have Sufficiently Alleged As-Applied Due Process Claims*

In violation of the Fourteenth Amendment's Due Process Clause, the City summarily seized and destroyed A.M. and L.C.'s perishable goods without any process whatsoever, failed to provide them with any pre-deprivation process before seizing their non-perishable property, and offered them only inadequate constitutionally deficient post-deprivation process for their non-perishable property.

Though the amount of process that is due depends on the specific interest, at a minimum, the government must provide "an opportunity to be heard 'at a meaningful time and in a meaningful manner'" before effecting a seizure.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993) ("The general rule [is] that individuals must receive notice and an opportunity to be heard *before* the government deprives them of property.") (emphasis added).  Seizure of property without a pre-deprivation hearing has been sustained only in emergencies and "where the owner

is afforded prompt post-seizure hearing at which the person seizing the property must at least make a showing of probable cause." *Stypmann v. City and Cty. of San Francisco*, 557 F.2d 1338, 1344 & n.3 (9th Cir. 1977) (five-day delay for hearing in justifying auto detention is clearly too long and excessive). The City's seizures of A.M. and L.C.'s private property and destruction of their perishable goods—totaling more than $17,000—violated these constitutional requirements.

The City repeatedly seized and destroyed A.M. and L.C.'s property without providing them with either notice or a pre-deprivation opportunity to be heard. The City itself concedes that it failed to provide A.M. and L.C. with any formal pre-deprivation process. City MTS at 9 (describing the deprivations at issue as "pre-notice deprivation[s]" and defending only "post-impoundment notice and available hearing procedures"). Further, the City fails to defend, *at all*, the permanent deprivations that occurred when officers summarily seized and destroyed A.M. and L.C.'s goods that officers deemed "perishable." *Id.* The City's failure to provide any process whatsoever for their perishable items undeniably violated the Fourteenth Amendment. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) ("[T]o put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement.").

The *Mathews* balancing test weighs decisively in A.M. and L.C.'s favor.

b.    *Governmental Interest*

The City lacked any compelling interest in foregoing ordinary, constitutionally required pre-deprivation procedures. The City's seizures were neither justified under state law nor did they "abat[e] unlawful public nuisances." City MTS at 10. As explained in Plaintiffs' concurrently filed Opposition to the City's Motion to Dismiss, Section IV, the City's impoundment provisions contradict and are preempted by California state law.

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

The City's purported interest in "abating unlawful public nuisances" is irrelevant.  City MTS at 10.  The City did not seize A.M. and L.C.'s property pursuant to the City's public nuisance laws.  A.M. and L.C. never received any document or indication that they were being charged with a criminal offense, as required for public nuisance violations, nor could they have been so charged.  *See* Cal. Gov't Code § 51039(d)(1) (prohibiting punishing alleged noncompliance with local vending laws "as an infraction or misdemeanor").  The City's public nuisance laws have no bearing on its seizures of A.M. and L.C.'s property—and the City's attempt to obfuscate the facts and laws at issue simply underscores that the City had no legitimate interest in seizing their property.[5]

---

[5] Even if the City's public nuisance laws were not preempted, and even if the City had used its public nuisance laws to seize A.M. and L.C.'s property, the City's cited cases are irrelevant.  Two of the cases—*Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005), and *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2019)—dealt with automobiles and not personal property, and the third, *Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019), is a free speech case that did not involve property or due process rights *at all*.  Dicta from *Miranda* quoted by the City referred specifically to "a vehicle" left in a public place—not simply "property" writ large—and it does not support the baseless claim that A.M. and L.C.'s property posed an unspecific "hazard or public safety threat" sufficient to justify seizing and destroying their property without pre-deprivation notice or pre-seizure hearing.  Dicta in *Clement* suggests that while an automobile blocking a driveway or obstructing a fire lane might justify impoundment without pre-deprivation notice, where there is no immediate threat and little risk that the owner would abscond—as was the case with A.M. and L.C.—any "conscientious public servant" could investigate the situation or leave a written ticket.  *Clement* at 1095.  The City could similarly have afforded A.M. and L.C. additional process.  *Id.* Lastly, *Cuviello* held narrowly that cities have a "significant interest[] in preventing noise disturbances that could threaten public health, safety, or welfare."  *Cuviello* at 828.  Such disturbances are not at issue here.  A.M. and L.C. did not make the public space unsafe or inaccessible.  Suggesting that they did directly contradicts the California Legislature's finding that "[s]idewalk vending contributes to a safe and dynamic public space," SB 946, § 1(a)(3), and is irrelevant at the motion to dismiss stage.

Moreover, the City could have—and should have—provided A.M. and L.C. with pre-deprivation notice and hearing.  A.M. and L.C.'s business operation was not "transitory," Motion at 11—indeed, they were "[s]tationary sidewalk vendor[s]," Cal. Gov't Code § 51036(c), with large, difficult to move equipment "including tables, chairs, grill, and canopy."  SAC ¶ 89.  *Untalan v. Stanley*, No. 2:19-cv-07599-ODW-JEMx, 2020 WL 6078474 (C.D. Cal. Oct. 15, 2020) is inapposite.  There, prior to seizing the plaintiff's vehicle pursuant to a state law prohibiting driving "without ever having been issued a driver's license," the government *did* provide formal written pre-deprivation notice.  *Id.* at *1, *7. (plaintiff conceded that, consistent with state law, she received notice citing to the statute under which her vehicle was seized).  Here, the City failed to provide ***any*** pre-deprivation notice or process whatsoever.

The City did not have a legitimate interest, let alone a compelling interest, in the pre-notice seizures of A.M. and L.C.'s private property and the summary destruction of their perishable items.

### c.    *Risk of Erroneous Deprivation*

The City's lack of any pre-deprivation procedure creates a serious risk of erroneous deprivation.  *See, e.g., B.D.A.A. v. Bostock*, No. 6:25-CV-02062-AA, 2025 WL 3484912, at *7 (D. Or. Dec. 4, 2025); *Jairo Espinoza Palacios, et al., v. Laura Hermosillo, et al.*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *8 (W.D. Wash. Mar. 11, 2026).

The City not only seized their property without any pre-deprivation process, it prevented A.M. and L.C. from speaking in their defense during the seizures *entirely*.  *See* SAC ¶¶ 3, 92; *Alexander v. City of Menlo Park*, 787 F.2d 1371, 1374 (9th Cir. 1986) (risk of error is high when the government decides a factual issue

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

without allowing the individual affected to participate), *cert. denied*, 479 U.S. 1032 (1987).  When A.M. and L.C. sought to reclaim their goods, they were stymied at every turn.  Officers failed to provide them with an inventory of what items had been seized or explain why they were seized, *see* SAC ¶ 90, exacerbating "the risk of an erroneous factual determination."  *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1148 (9th Cir. 1987).

The City denied A.M. and L.C. ***any*** post-deprivation process for their seized perishable items, worth more than $15,000, which were summarily destroyed without reimbursement.  For their non-perishable property, the City provided A.M. and L.C. with only two post-deprivations options: (1) forgo process and pay the impoundment fees to recover their property after the requisite 30 days, which is no process at all, or (2) "appeal the impoundment of their items by requesting an administrative hearing before the city manager . . . pursuant to the procedures described in section 15-826[.]" FMC § 15-829(g); *see* SAC ¶ 86 (describing post-seizure hearing process).  This structure presented A.M. and L.C. with a coercive choice: either pay insurmountable impoundment fees (ranging from approximately $230 to $300, *see* SAC ¶ 93) despite the seizure's illegality or go without the equipment they need for their livelihood while pursuing an indefinite and unfair appeal process.

Even if A.M. and L.C. had managed to obtain a hearing, the city manager—a biased decisionmaker—would issue a final unreviewable decision with minimal evidentiary rules.  FMC §15-826; *see, e.g.*, SAC, ¶¶1, 14, 44, 50, 58; *see Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 333 (9th Cir. 1995) ("Due Process requires a hearing before an impartial tribunal.").  Further, at that hearing, the City would not be required to bear the burden of justifying the deprivations.  FMC § 15-826; *see Kansas v. Glover*, 589 U.S. 376, 392 (2020) (Sotomayor, J., dissenting) ("The State bears the burden of justifying a seizure.").

Finally, even after the hearing, vendors face an indefinite wait as FMC § 15-826 imposes no deadline to issue a decision. A.M. and L.C. would have been forced to endure prolonged and potentially indefinite deprivations during the pendency of an appeal. *See Ponce v. U.S. Gov't*, No. 3:11-CV-172-AC, 2013 WL 6177812, at *2 (D. Or. Nov. 21, 2013), *aff'd,* 639 F. App'x 511 (9th Cir. 2016), *and aff'd,* 667 F. App'x 921 (9th Cir. 2016) ("the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process") (citation omitted).

The City's reliance on *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 243-44 (1988) fails. There, the Court found that a 90-day period between a suspended bank president's hearing request and decision was justified because of the public interest in a correct and deliberate decision and minimal risk of erroneous deprivation where the bank president had already been indicted. *Id.* at 236-37, 242-43. Here, in contrast, A.M. and L.C. posed no harm to the public—let alone a harm so significant as the loss of "public confidence" in our financial institutions; suffered deprivations without *any* evidence; and enjoyed no guarantee of a decision within 90 days. *Id*. at 231.

### d. *Private Interests*

The City does not contest that the private interests at stake are significant. Nor could it. Seizing A.M. and L.C.'s property without prior notice or an opportunity to be heard, and without any post-deprivation process, imposed immediate and severe financial hardship and destabilized their ability to meet their basic needs. Because of the seizures, A.M. and L.C. "lost over $15,000 in food and $2,000 in equipment." SAC ¶ 89. The loss of their property left Plaintiffs A.M. and L.C. unable to work or to "pay their rent and other expenses." *Id.*

The *Mathews* test weighs strongly in favor of A.M. and L.C.

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

### 3. A.M. and L.C. Have Sufficiently Alleged As-Applied Fourth Amendment Challenges

The warrantless seizures of A.M. and L.C.'s property violated the Fourth Amendment. Seizures of private property by a local government are without exception subject to Fourth Amendment scrutiny. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) ("a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests" (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Seizing private property without a warrant is *per se* unreasonable, even when the property is in a public area. *Recchia v. City of Los Angeles Dep't of Animal Servs.*, 889 F. 3d 553, 558 (9th Cir. 2018).

The City itself concedes that it seized A.M. and L.C.'s property and summarily destroyed their property without warrants. City MTS at 10, 13; SAC ¶¶ 72, 162, 166 (A.M. and L.C. were never shown a warrant or informed that any lawful exception to the warrant requirement applied). "'A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment'[.]" *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (citation omitted); *see also United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). Moreover, "[v]iolation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property." *Lavan*, 693 F.3d at 1029. Both parties agree that the seizures were warrantless and the City fails to show that any exception to the warrant requirement applied. *Miranda*, 429 F.3d at 862 ("'The burden is on the Government to persuade the district court that a [warrantless] seizure comes under one of a few specifically established exceptions to the warrant requirement.'") (citation omitted). Thus, the seizure of A.M. and L.C.'s property violated the Fourth Amendment.

15

a. *Administrative Search Exception*

The administrative search exception is a narrow exception to the warrant requirement, and it did not apply to the seizure of A.M. and L.C.'s property. Unsurprisingly, the City fails to identify a single case where a court applied the "administrative search exception" to the warrantless seizure of property. It is a narrow exception that applies only in rare circumstances—not present here—where a business operator works in a closely regulated business. *City of Los Angeles v. Patel*, 576 U.S. 409, 424 (2015).

First, sidewalk vending is not a closely regulated industry—and no court has held otherwise. Courts have recognized only a handful of closely regulated industries. *Id.*; *Killgore v. City of S. El Monte*, 3 F.4th 1186, 1189 (9th Cir. 2021). These industries represent the "exception[ally] … unique circumstances" in which there is "such a history of government oversight that no reasonable expectation of privacy … could exist for [the owner] of such an enterprise." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978) (internal citations omitted). No such history of government oversight exists here.

The City attempts to argue that by decriminalizing sidewalk vending, the state legislature (and localities like Fontana) transformed sidewalk vending into a closely regulated industry subject to warrantless searches and seizures. City MTS at 14. The City cites no case supporting this extraordinary proposition. No such case exists. Its position contradicts the premise of the closely regulated industry exception that "an individual choosing to accept a license and engage in a pervasively regulated business [does] so with the knowledge that he w[ill] be subject to effective inspection." *Rush v. Obledo*, 756 F.2d 713, 718 (1985); *see also Barlow's*, 436 U.S. at 313. An individual does not consent to warrantless seizures simply by entering the sidewalk vending industry, particularly where the state statutory scheme regulating that industry prohibits any such seizures (warrantless or otherwise).

16

The City makes no attempt to reconcile, or even acknowledge, the glaring differences between sidewalk vending and existing closely regulated industries. *See Killgore*, 3 F.4th at 1189 (the few closely regulated industries recognized by courts: "sale of sporting weapons, stone quarrying and mining, [ ] automobile junkyards," "salmon fishing, commercial fishing, family day care homes, transportation of hazardous materials, veterinary drugs, foreign trade zones, [ ] commercial trucking," and massage parlors). Unlike these industries, sidewalk vending is not inherently dangerous. *See Patel*, 576 U.S. at 424.[6] Just the opposite. As the California Legislature declared, "[s]idewalk vending contributes to a safe and dynamic public space." SB 946, § 1(a)(3); *see also id.* § 1(a)(4) ("The safety and welfare of the general public is promoted by encouraging local authorities to support . . . sidewalk vending."). The City's reasoning would lead to large swaths of the modern economy being classified as closely regulated— allowing the "narrow exception" to "swallow the rule"—an untenable result irreconcilable with Supreme Court and Ninth Circuit precedent. *Patel*, 576 U.S. at 424–25 (warning against this danger).

Finally, even if sidewalk vending was a closely regulated industry and the attendant administrative search exception extended to seizures of vendors' property, the City still fails to meet the *Burger* factors. *See Killgore* at 1192 (citing *New York v. Burger*, 482 U.S.691 at 702-03).

---

[6] Many industries may lend themselves to dangerous activity, but even where these dangers are concrete and well-documented—not present here—they do not render a business closely regulated unless those dangers are "inherent in the [business's very] operation." *Patel*, 576 U.S. 409, 424; *e.g. Donovan v. Dewey*, 452 U.S. 594, 602 (1981) ("the mining industry is among the most hazardous in the country"); *New York v. Burger*, 482 U.S. 691, 709 (1987) ("[a]utomobile junkyards … provide the major market for stolen vehicles") (emphasis added). Unlike guns, mining, or alcohol, the day-to-day operations of sidewalk vendors simply do not threaten the public welfare.

The administrative search exception did not apply to the warrantless seizure of A.M. and L.C. private property, and A.M. and L.C. have sufficiently alleged an as-applied Fourth Amendment challenge.

b. *Community Caretaking Exception*

The City also cannot justify its warrantless seizures by hiding behind the community caretaking exception. The City's attempt to expand this exception beyond the narrow realm of automobiles and vehicular safety contradicts Supreme Court and Ninth Circuit precedent and should be rejected.

This narrow exception allows "police officers [to] impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." *Miranda,* 429 F.3d at 864 (internal quotation marks omitted). Indeed, "the purpose of the community caretaking function is to remove *vehicles* that are *presently impeding traffic or creating a hazard*." *Id.* at 869 (emphasis added). That purpose is inapplicable here, where the City seized A.M. and L.C.'s personal property—their food, canopy, tables, and grill, not their vehicle—from public sidewalks. SAC ¶¶ 3, 13, 19–20, 59, 61, 89. Further, their property was neither impeding traffic nor creating a hazard.

The City does not claim that A.M. and L.C. were threatening public safety or blocking traffic—nor could it. Instead, the City asserts—contrary to Ninth Circuit law—that the community caretaking exception applies to the abatement of any public nuisance. Not so.

Courts in the Ninth Circuit routinely reject arguments that would "expand the community caretaking exception beyond [the] narrow circumstances [of traffic and vehicular safety]." *Sandoval v. Cnty. of Sonoma*, 72 F. Supp. 3d 997, 1007 (N.D. Cal. 2014), *aff'd,* 912 F.3d 509 (9th Cir. 2018), *and aff'd,* 912 F.3d 509 (9th Cir. 2018). Contrary to the City's claim, courts have "not create[d] some generalized 'public safety' exception to the warrant requirement." *Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872, 938 (C.D. Cal. 2023). "[T]he law in this

18

Circuit has been consistent and clearly established: the need to abate a nuisance is insufficient to establish an emergency or exigent circumstances." *Herrera v. City of Palmdale*, No. cv-16-9453-MWF-FFMX, 2020 WL 6064015, at *7 (C.D. Cal. July 6, 2020) (citation omitted).  In other words, "[w]hile a state or local government has the authority to declare a certain activity to be an 'emergency' or a 'nuisance,' such declaration does not, by itself, justify a warrantless search or seizure under the Fourth Amendment." *Allen v. Cty. of Lake*, 71 F. Supp. 3d 1044, 1051 (N.D. Cal. 2014).  Thus, even if A.M. and L.C. had created a public nuisance—which they did not—the community caretaking exception would not have justified the warrantless seizure of their property.

The out-of-circuit and state court cases cited by the City, *United States v. Rohrig*, 98 F.3d 1506, 1524 (6th Cir. 1996) and *People v. Lanthier*, 5 Cal. 3d 751, 756 (1971), are irrelevant.  Neither represents the law in this circuit.  Indeed, "the reasoning in these cases has not been adopted by the Ninth Circuit, which has never held that the exigent circumstances exception extends to cases where noises, odors, or other such nuisances are presented and instead, the Ninth Circuit has specifically held to the contrary." *Nishimoto v. City of Torrance*, No. cv-09-8328-SVW-AJWX, 2011 WL 13213634, at *10 (C.D. Cal. Jan. 6, 2011) (discussing and rejecting the applicability of *Rohrig* and *Lanthier* in the Ninth Circuit).

### 4. Plaintiffs Have Sufficiently Alleged Bane Act Claims

Plaintiffs A.M., L.C., and A.P. have amply alleged interference with their First and Fourth Amendment rights, in violation of the Bane Act.[7]

To establish a violation of the Bane Act, "plaintiff[s] must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) [that] the interference or attempted

---

[7] Plaintiff ICIJ withdraws its Bane Act claim against Defendants.

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

interference was by threats, intimidation or coercion." *Animal Prot. & Rescue League, Inc. v. Cnty. of Riverside*, 111 Cal. App. 5th 914, 920, *reh'g denied* (May 27, 2025). While "[s]peech alone is not sufficient to support" a Bane Act claim, "speech [that] threatens violence against a specific person or group of persons" suffices, if the target of the threat "reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." Cal. Civ. Code § 52.1(k).

The City is estopped from asserting that Plaintiffs failed to comply with the Government Claims Act's presentation requirement. Cal. Gov. Code § 911.2. Public entities may not hide behind the presentation requirement "where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act," by, for example, making "misleading statements about the need for or advisability of a claim." *City of Stockton v. Sup. Ct.*, 42 Cal. 4th 730, 744 (2007) (quoting *John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438, 445 (1989)); *see Fredrichsen v. City of Lakewood*, 6 Cal. 3d 353, 355–60 (1971) (applying estoppel where the plaintiff relied on Lakewood's representation that a private corporation, not the city, was responsible for maintaining the sidewalk where she fell).

Here, the City used misinformation to deter sidewalk vendors. *See* SAC ¶ 168. Plaintiffs A.M. and L.C. were repeatedly targeted by agents in plain clothes and masks, who threatened them with arrest if they interfered. *Id.* ¶¶ 3, 13, 56–61. A.P. witnessed an enforcement operation against another sidewalk vendor that frightened and intimidated him. *Id.* ¶ 67. The City's actions—calculated to sow confusion and to deter vendors from vindicating their rights—worked exactly as intended. Relying on the City's statements and actions, Plaintiffs believed they lacked any possible recourse. *See id.* ¶ 53 ("4LEAF officers tell vendors that they have no right to vend in the City"); *id.* ¶ 55 ("City staff told A.M. that she could

20

not obtain a permit."); *id.* ¶ 66 ("[A.P] was told by City officials that there was no way to get permits.").[8]  Where, as here, the City deterred Plaintiffs from filing a claim through its premediated campaign to drive vendors from the City, Plaintiffs have plausibly alleged estoppel applies.[9]  *See Feduniak v. California Coastal Com.*, 148 Cal. App. 4th 1346, 1360 (2007).

Plaintiffs have amply alleged intentional interference with their constitutional rights.  On repeated instances, the City interfered with Plaintiffs' free speech rights and their right to be free from unnecessary seizure.  *See, e.g.*, SAC ¶ 57 (blocking A.M.'s and L.C.'s egress); *id.* ¶ 58 ("While A.M. would stammer to try to speak, the officers would begin throwing away the food . . ."); *id.* ¶ 60 (destroying their property and threatening to arrest A.M. and L.C. if they interfered); *id.* ¶ 65 (A.P. confronted by City officers); *id.* ¶ 67 (describing aggressive seizure).  Plaintiffs allege far more than the "bare threat of arrest," City MTS at 17 (quoting *Animal Prot.*, 111 Cal. App. 5th at 921–22).  In contrast to *Animal Protection*, which alleged "only a spoken threat" and no "force of any kind," Plaintiffs allege that Defendants "blocked [their] car, preventing them from leaving," "pushed [them] to the side," "trash[ed their] food merchandise," and "confiscated all their vending equipment." *Id.* at 921, SAC ¶¶ 3, 13, 57–59.  *See Garcia v. City of Los Angeles*, 611 F. Supp. 3d 918, 939 (C.D. Cal. 2020) (finding that threats of arrest if the plaintiff did not leave his belongings behind sufficed); *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1007–08, 1025 (E.D. Cal. 2021)

---

[8] *Est. of McCrary v. Victorville Police Dep't*, No. 5:23-CV-02602-SSS-SPX, 2025 WL 806383, at *3 (C.D. Cal. Jan. 6, 2025) is inapposite.  In contrast to Plaintiffs' voluminous allegations, the plaintiffs there offered "no evidence . . . that the County committed any affirmative act that prevented Plaintiffs from filing a timely claim." *Id.*

[9] Equitable tolling also applies to the limitations period presented by the Government Claims Act. *See J.M. v. Huntington Beach Union High School Dist.*, 2 Cal. 5th 648, 657 (2017).

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF FONTANA'S MOTION TO STRIKE

(holding that unhoused plaintiffs alleged Bane Act violation where the defendants "indiscriminately and summarily confiscate[ed] and dispos[ed] of their belongings").[10]

### 5. Plaintiffs Sufficiently Allege Facial Challenges to the City's Laws

As explained in Plaintiffs' concurrently filed Opposition to the City's Motion to Dismiss, Plaintiffs' facial challenges all succeed and the City's arguments against these claims fail as a matter of law.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to deny the City MTS.  To the extent this Court is inclined to grant any part of the City MTS, Plaintiffs respectfully request leave to amend their complaint pursuant to Rule 15(a)(2), as justice so requires.

///

///

///

///

///

///

///

///

///

///

_____

[10] The City concedes specific intent by failing to contest it.  Nonetheless, Plaintiffs need not allege specific intent here, where they allege coercion independent from the seizure itself. *Garcia v. City of Los Angeles*, 611 F. Supp. 3d 918, 939 (C.D. Cal. 2020).

Date:  April 10, 2026

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

**By:**    */s/ Matthew T. Heartney*

Matthew T.  Heartney (SBN 123516)
Daniel Shimell (SBN 300931)
Kathryn Campbell (SBN 350536)
Dania Qahoush (SBN 335202)

**PUBLIC COUNSEL**

**By**:    */s/ Ritu Mahajan*

Ritu Mahajan (SBN 252970)
Mark Rosenbaum (SBN 59940)
Sylvia Torres-Guillén (SBN 164835)
Cassidy J.  Bennett (SBN 347811)
Elizabeth R.  Brown (SBN 360601)
Jacob Maddox (SBN 354368)

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,954 words, which complies with the word limit of L.R. 11-6.1.

Date:  April 10, 2026                           Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

**By:**   */s/ Matthew T. Heartney*

Matthew T.  Heartney (SBN 123516)
Daniel Shimell (SBN 300931)
Kathryn Campbell (SBN 350536)
Dania Qahoush (SBN 335202)*
*C.D. Cal Admission Pending*

**PUBLIC COUNSEL**

**By**:   */s/ Ritu Mahajan*

Ritu Mahajan (SBN 252970)
Mark Rosenbaum (SBN 59940)
Sylvia Torres-Guillén (SBN 164835)
Cassidy J.  Bennett (SBN 347811)
Elizabeth R.  Brown (SBN 360601)
Jacob Maddox (SBN 354368)

*Attorneys for Plaintiffs*