UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-02092-SSS-SPx | Date | May 18, 2026 |
|---|---|---|---|
| Title | *Inland Coalition for Immigrant Justice v. City Counsel of Fontana et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS TO STRIKE [DKT. NOS. 70, 71, 72]**

Before the Court are Defendants' Motions to Dismiss and Motions to Strike Plaintiff's Second Amended Complaint.  [Dkt. Nos. 70, 71, 72].  The Motions are fully briefed and ripe for review.  [Dkt. No. 70, "City's MTD"; Dkt. No. 71, "City's MTS"; Dkt. No. 72, "4Leaf's Motion"; Dkt. No. 78, Opposition to City or "Opp. to City"; Dkt. No. 79, Opposition to MTS or "MTS Opp." Dkt. No. 80, Opposition to 4Leaf or "Opp. to 4Leaf"; Dkt. No. 48, "City's Reply"; Dkt. No. 49, "4Leaf's Reply"].  The Court **DENIES** Defendants' Motion.

## I.   FACTUAL AND LEGAL BACKGROUND

For sake of brevity, the Court incorporates the factual background section from its Prior Order that granted in part and denied in part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.  [Dkt. No. 54, "Prior Order"].

Following the Prior Order, Plaintiff filed a Second Amended Complaint on February 13, 2026.  [Dkt. No. 65, "Second Amended Complaint" or "SAC"].  The

SAC had added three individual plaintiffs—A.M., L.C., and A.P.—as well as new § 1983 claims under *Monell* and a Bane Act claim. [*See generally id.*].

Defendants filed their respective motions on March 6, 2026. [*See* City's MTD; City's MTS; 4Leaf'sMotion]. Defendants renew many arguments raised in their previous motions to dismiss and again seek to dismiss the case in its entirety due to Plaintiff's inability to cure deficiencies relating to Article III standing, among other issues. [*See* City's MTD; *see also* 4Leaf's Motion].

For the reasons discussed below, the Court **DENIES** the Motions.

## II.    LEGAL STANDARD

Both the City and 4Leaf argue that the SAC fails to cure the previously identified issues with Plaintiff's lack of Article III organizational and associational standing. [City's MTD at 11–15; 4Leaf's Motion at 14–18]. In addition to the alleged grounds for a motion to dismiss under Rule 12(b)(1), Defendants also raise grounds for dismissal under Rule 12(b)(6). [City's MTD at 15–29; 4Leaf's Motion at 20–26].

### A.    Rule 12(b)(1)

As stated before, federal courts cannot consider claims for which they lack subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Again, Plaintiff bears the burden of establishing subject matter jurisdiction. *See United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010).

The "irreducible constitutional minimum" of Article III standing has three elements: (1) the plaintiff must have suffered an "injury in fact," meaning a concrete and particularized injury that is actual or imminent; (2) the injury must be causally related to the defendant's challenged actions; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted); *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013).

An organization may have standing to sue "in its own right ... to vindicate whatever rights and immunities the association itself may enjoy," and in doing so, "may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). To establish organizational standing, an organization must "meet the

same standing test that applies to individuals." *Spann v. Colonial Vill. Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (internal quotations and citations omitted). "In those cases where an organization is suing on its own behalf, it must establish concrete and demonstrable injury to the organization's activities—with a consequent drain on the organization's resources—constituting more than simply a setback to the organization's abstract social interests. Indeed, the organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *Common Cause v. Federal Election Comm'n*, 108 F.3d 413, 417 (D.C. Cir. 1997) (internal quotations and citations omitted); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Moreover, even if the organization has not suffered injury to itself, it may have standing to assert the rights of its members if: (1) its members would have standing to sue on their own; (2) the interests it seeks to protect are germane to its purpose; and (3) its claim and requested relief do not require participation by individual members. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Warth*, 422 U.S. at 511 ("Even in the absence of injury to itself, an association may have standing solely as the representative of its members."). "The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy." *Id.*

## B.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim is proper under Rule 12(b)(6) when a plaintiff "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In analyzing a motion to dismiss, a court must accept as true all material factual allegations and draw all reasonable inferences in the non-moving party's favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). A court need not accept, however, "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). When reviewing a Rule 12(b)(6) motion, a court must consider the complaint in its entirety and any attached documents,

documents incorporated by reference, or matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If a complaint fails to state a plausible claim, a court should freely grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) even if such a request was not made, unless amendment would be futile. *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

### C.    Rule 12(f)

Under Rule 12(f), "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted. A motion to strike eliminates from consideration that which "can have no possible bearing on the subject matter of the litigation." *Naton v. Bank of California*, 72 F.R.D. 550, 552 n. 4 (N.D. Cal. 1976). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial," and grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Similar to a motion for judgment on the pleadings, the court, in considering a motion to strike, views the challenged pleadings in the light most favorable to the plaintiffs. *See Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1301 (9th Cir. 1992). "[B]ecause of the limited importance of pleadings in federal practice and because [a motion to strike] is usually used as a delaying tactic," *In re New Century*, 588 F. Supp. 2d 1206, 1220 (C.D. Cal. 2008) (citation omitted) (edits in original), federal courts generally disfavor motions to strike unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation, *see Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1209 (C.D. Cal. 2008). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, No. 12-846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

## III.    DISCUSSION

The Court first considers Defendants' Rule 12(b)(1) Motion, as these issues implicate Article III standing and subject matter jurisdiction.

## A.      Article III Organizational Standing

Defendants' Motions once again argue that Plaintiff lacks organizational standing due to an impermissible diversion-of-resources theory.  [City's MTD at 11–12; 4Leaf's Motion at 14–16].  Plaintiff maintains that it has "gathered additional facts to address the deficiencies . . . as to ICIJ's organizational standing."  [Opp. to 4Leaf at 13; *see also* Opp. to City at 12–15].

The Court must first determine whether ICIJ has organizational standing, or whether it relies on a resource-diversion theory of standing that the Supreme Court has rejected.  *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024).  In *Hippocratic Medicine*, the Supreme Court determined that organizations that pleaded the defendant had "impaired their ability to provide services and achieve their organizational missions" did not demonstrate standing, as "[a]n organization cannot manufacture its own standing" "simply by expending money to gather information and advocate against the defendant's action."  *Id.* at 394–95 (internal quotation marks omitted).  Nevertheless, an organization may have standing if the defendant's "actions directly affect[ ] and interfere[ ] with [the plaintiff's] core business activities."  *Id.* at 395;  *see Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024) ("*Hippocratic Medicine* clarified that the distinctive theory of organizational standing reflected in *Havens Realty* extends *only* to cases in which an organization can show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action.").

The SAC adds background on ICIJ as an organization, describing its core business activities as "including its provision of direct services to sidewalk vendors," which "have been directly affected and interfered with by Defendants' policies and practices."  [SAC ¶ 22].  However, merely stating that one's core business activities have been directly affected and interfered does not confer Article III organizational standing.

To demonstrate organizational standing, ICIJ must be able to demonstrate that Defendants "perceptibly impaired" ICIJ's ability to provide direct services— "not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer."  *Hippocratic Medicine*, 602 U.S. at 395 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368–379 (1982).

Here, the SAC does so.  The SAC specifies that ICIJ's activities includes "assist[ing] vendors with permit applications," "help[ing] vendors respond to

citations, impoundments, and enforcement actions," and "fundrais[ing] for and distribut[ing] grants to vendors, including . . . funds to pay for permits." [SAC ¶ 167]. Accepting these factual allegations as true, ICIJ more resembles the plaintiffs in *Havens Realty* than those in *Hippocratic Medicine*. Like in *Havens Realty*, ICIJ suffers concrete and demonstrable injury to its activities—with a consequent drain on its resources—due to Defendants' practices relating to confiscation of goods and denial of permits. Such an injury to ICIJ is "far more than simply a setback to the organization's abstract social interests." *Havens Realty*, 455 U.S. at 379. It prevents ICIJ from being able to continue their business activities in a meaningful manner. That is an injury more extensive than mere diversion of resources.

Based on the current pleadings, the Court finds ICIJ has demonstrated organizational standing. In light of this finding, the Court **DENIES** Defendants' Rule 12(b)(1) Motion as to organizational standing.

### B.    Article III Associational Standing

Defendants further argue that Plaintiff lacks associational standing. [City's MTD at 12–15; 4Leaf's Motion at 16–18].[1]

Previously, the Court observed that Plaintiff provided no factual allegations as to "whether any of [ICIJ's] members have been charged or will be charged with violating the EOC provision." [Dkt. No. 54 at 9]. The SAC includes facts that indicate "A.M., L.C., and other individual ICIJ members have been directly threatened by 4LEAF personnel with arrest and jail under [Ordinance 1925]." [SAC ¶ 103]. Specifically, Defendants have "told A.M., L.C., and other ICIJ members that they will be arrested if they interfere with the confiscation of their property." [*Id.* ¶ 106]. Because A.M. and L.C. are identified members of ICIJ and have demonstrated how they would suffer harm by Defendants, the Court finds that Plaintiff has cured the previous deficiencies as to associational standing. [*See id.* ¶¶ 19, 20].

---

[1] The Court notes that it previously found that Plaintiff had demonstrated associational standing for Claims 2 and 3, which have now been converted into Claims 1, 3, and Claims 6–7. [Dkt. No. 54 at 7–8]. The Court declines to reevaluate whether ICIJ has demonstrated associational standing for those claims.

Accordingly, the Court **DENIES** Defendants' Rule 12(b)(1) Motion as to arguments regarding associational standing.

### C.      Motion to Strike

The First Amended Complaint contained three causes of action: (1) a § 1983 claim against the City's EOC provision alleging violations of Plaintiff's First, Fifth and Fourteenth Amendment rights; (2) another § 1983 claim against the impoundment provisions in violation of Plaintiff's First, Fifth and Fourteenth Amendment rights; and (3) a preemption challenge to the City's Ordinances.  [Dkt. No. 36 ¶¶ 75–91, "First Amended Complaint"].

The Second Amended Complaint now names new plaintiffs and adds new claims.  [*See* SAC at ¶¶ 19–20 (including individual plaintiffs previously not joined to the suit); *id.* ¶¶ 165–171 (adding a new as-applied challenge brought by the individual plaintiffs); *id.* ¶¶ 177–182 (same); *id.* ¶¶ 203–208 (adding a new Bane Act claim against all Defendants)].

Although the Prior Order granted Plaintiff leave to amend, such amendment was limited to curing the pleading deficiencies associated with organizational and associational standing.  [Prior Order at 7, 9–11].  In particular, the Court previously observed that "the FAC lack[ed] any actual allegation regarding whether any of Plaintiff's members have been charged or will be charged with violating the EOC provision."  [*Id.* at 9].  To the extent Plaintiff has added the individuals to identify the organization's members, the Court finds these factual allegations to be within the scope of the leave to amend.  The Court **DENIES** Defendants' Motion to Strike as to the factual allegations pertaining to the individual plaintiffs.[2]

Defendants further observe that Plaintiff's additional claims exceed the scope of amendment granted by the Court.  [City's MTS at 12–13; 4Leaf's Motion at 14].  Plaintiff has further changed the relief sought.  [City's MTS at 13 (observing that Plaintiff initially sought declaratory and injunctive relief, but now seek monetary damages as well)].  Nevertheless, the Court finds these claims appropriate for consideration for sake of judicial economy.  *See Allen v. Cty. of Los Angeles*, No. CV 07-102-R (SH), 2009 WL 666449, at *2 (C.D. Cal. Mar. 12,

---

[2] If Plaintiff seeks to add these individuals as parties to the suit, Plaintiff is permitted to amend their complaint to add new parties.

2009) (observing that "[e]xceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof.").

As such, the Court **DENIES** Defendants' Motions to Strike.

### D.      Rule 12(b)(6) Motions

In light of the Court's consideration of Plaintiff's new claims, the Court **DENIES WITHOUT PREJUDICE** Defendants' Rule 12(b)(6) Motions. Defendants are permitted to refile their Rule 12(b)(6) Motions to address the entirety of the Second Amended Complaint.

## IV.   CONCLUSION

For the above reasons, the Court rules as follows:

- Defendants' Motions to Strike are **DENIED**.

- Defendants' Motion to Dismiss for lack of organizational and association standing is **DENIED** as to all surviving claims.

- Defendants Rule 12(b)(6) Motions to Dismiss are **DENIED WITHOUT PREJUDICE**.

Parties are **ORDERED** to meet and confer as to the operative complaint and to determine whether any subsequent amendments are necessary to include additional claims or parties.  In the event parties intend to proceed on the existing pleadings, Defendants are **ORDERED** to file an Answer or responsive pleading **on or before June 19, 2026**.

**IT IS SO ORDERED.**