RITU MAHAJAN (SBN 252970)[1]
  rmahajan@publiccounsel.org
MARK ROSENBAUM (SBN 59940)
  mrosenbaum@publiccounsel.org
AMANDA MANGASER SAVAGE (SBN 325996)
  asavage@publiccounsel.org
**PUBLIC COUNSEL**
610 South Ardmore Ave.
Los Angeles, CA 90005
Telephone: 213.385.2977

ARIANA E FULLER (SBN 301797)
  afuller@kslaw.com
JEANNE A. FUGATE (SBN 236341)
  jfugate@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: 213.443.4355

MATTHEW T. HEARTNEY (SBN 123516)
  matthew.heartney@arnoldporter.com
DANIEL SHIMELL (SBN 300931)
  daniel.shimell@arnoldporter.com
**ARNOLD & PORTER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000

*Attorneys for Plaintiffs A.M., A.P., L.C., and Inland Coalition for Immigrant Justice*

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M., A.P., L.C., and INLAND COALITION FOR IMMIGRANT JUSTICE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FONTANA and 4LEAF, INC.,<br><br>Defendants. | Case No. 5:25-CV-2092-SS-SP<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Declarations of California Senator Maria Elena Durazo, Dr. Catherine Brinkley, Plaintiff A.M., Plaintiff A.P., and Javier Hernandez; [Proposed] Order filed concurrently herewith]*<br><br>Date: July 31, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Hon. Sunshine S. Sykes |

---

[1] Due to space limitations, all attorneys of record for Plaintiffs are listed in full in the signature of this document

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on July 31, 2026 at 2:00 p.m. before the Honorable Sunshine S. Sykes, in Riverside Courtroom 2, Second Floor, 3470 12th Street, Riverside, California 92501, Plaintiffs A.M., A.P., L.C., and the Inland Coalition for Immigrant Justice (collectively "Plaintiffs") will, and hereby do, respectfully move the Court for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Civil Rule 65-1 of the U.S. District Court for the Central District of California.

Plaintiffs respectfully request that the Court grant a preliminary injunction that enjoins Defendants City of Fontana and 4LEAF, Inc. (collectively, "Defendants"), and Defendants' officers, agents, servants, employees, and attorneys, and all other persons who are in active concert with them, from (1) enforcing the challenged impoundment provisions of Ordinances 1789 and 1925—specifically FMC §§ 15-828, 15-829(b)(1)-(6), (8)-(9), (c), and (h); (2) enforcing the enforcement obstruction consequences ("EOC") provision, Or. 1925, FMC § 1-14, against sidewalk vendors or any person engaged in constitutionally protected speech; (3) enforcing the challenged permit provisions—FMC §§ 15-820(a)(9)(14), and (b)—to the extent they impose requirements not directly related to objective health, safety, or welfare concerns as required by SB 946; and (4) seizing, impounding, or destroying sidewalk vendor property without a warrant, probable cause, or constitutionally adequate pre-deprivation process.

Plaintiffs' Motion is based on this Notice of Motion and Motion for Preliminary Injunction, the accompanying Memorandum of Points and Authorities, the declarations and all exhibits in support of the same, including attachments, all pleadings, and all other papers on file in this action, and all oral and documentary evidence that may be presented at the time of the hearing.

/ / /

/ / /

/ / /

/ / /

Dated: July 1, 2026

PUBLIC COUNSEL

By: */s/ Ritu Mahajan*
   Ritu Mahajan (SBN 252970)
   *rmahajan@publiccounsel.org*
   Mark Rosenbaum (SBN 59940)
   *mrosenbaum@publiccounsel.org*
   Amanda Mangaser Savage (SBN 325996)
   *asavage@publiccounsel.org*
   Cassidy J. Bennett (SBN 347811)
   *cbennett@publiccounsel.org*
   Elizabeth R. Brown (SBN 360601)
   *ebrown@publiccounsel.org*
   Jacob Maddox (SBN 354368)
   *jmaddox@publiccounsel.org*
   Brittnee Bui (SBN 333372)
   *bbui@publiccounsel.org*
   610 South Ardmore Ave.
   Los Angeles, CA 90005
   Telephone: 213.385.2977

Respectfully submitted,

KING & SPALDING LLP

By: _____
   Ariana E. Fuller (SBN 301797)
   *afuller@kslaw.com*
   Arwen R. Johnson (SBN 247583)
   *arwen.johnson@kslaw.com*
   Jeanne A. Fugate (SBN 236341)
   *jfugate@kslaw.com*
   633 West Fifth Street, Suite 1600
   Los Angeles, CA 90071
   Telephone: 213.443.4355

ARNOLD & PORTER LLP

By: */s/ Matthew T. Heartney*
   Matthew T. Heartney (SBN 123516)
   *matthew.heartney@arnoldporter.com*
   Daniel Shimell (SBN 300931)
   *daniel.shimell@arnoldporter.com*
   Kathryn Campbell (SBN 350536)
   *katie.campbell@arnoldporter.com*
   Dania Qahoush (SBN 335202)
   *dania.qahoush@arnoldporter.com*
   777 South Figueroa Street, 44th Floor
   Los Angeles, CA 90017-5844
   Telephone: 213.243.4000

## SIGNATURE ATTESTATION

Pursuant to L.R. 5-4.3.4(a)(2)(i), the undersigned, counsel of record for Plaintiffs, hereby attests that all other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:       July 1, 2026

By: _____
       ARIANA E. FULLER

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................9

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................11

    A.    Fontana's Ordinances 1789 and 1925 Unlawfully Criminalize Sidewalk Vending and Impose Harsh Penalties on Vendors ......................11

        1.    In 2018, the California Legislature Enacted SB 946 to Decriminalize Street Vending ...........................................................11

        2.    In 2019, Fontana Contravened SB 946 with Unlawful Permitting Requirements and Seizure Provisions (Ordinance 1789) ......................................................................................................12

        3.    In 2022, the Legislature Enacted SB 972 to Fully Decriminalize Sidewalk Vending ...................................................13

        4.    In 2023, Fontana Unlawfully Criminalized Sidewalk Vending and Permitted Impoundment Through Ordinance 1925 .....................13

    B.    Fontana and Its Contractor 4LEAF Enforce the Unlawful Ordinances, Seize  Property Without Warrants, and Threaten Arrest ..............................14

    C.    The Individual Plaintiffs and ICIJ Members Suffered Harm Due to Fontana's Enforcement of the Unlawful Ordinances ....................................14

III.  LEGAL STANDARD ....................................................................................16

IV.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ....................16

    A.    The City and 4LEAF Are Violating the Fourth Amendment .......................16

        1.    The City's Challenged Impoundment Provisions Facially Violate the Fourth Amendment ........................................................16

        2.    The City and 4LEAF Seized A.M. and L.C.'s Property in Violation of the Fourth Amendment..................................................17

    B.    The Challenged Ordinances Violate Due Process ........................................18

        1.    The City's Impoundment Scheme Facially Violates Due Process ...............................................................................................18

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

2.    The City and Its Agents Violated A.M. and L.C.'s Due Process Rights ..................................................................................20

C.    The EOC Provision is Facially Overbroad and Unconstitutionally Vague..........................................................................................20

1.    The EOC Provision Criminalizes a Substantial Amount of Protected Conduct..................................................................20

2.    The EOC Provision is Unconstitutionally Vague ..............................21

D.    The Challenged Provisions are Preempted by State Law ............................22

1.    The City Ordinances are Preempted Because They Attempt to Regulate an Area Fully Occupied by California Law ........................23

2.    The City Ordinances Are Preempted Because They Contradict California Law ........................................................................24

V.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION...............................................................................................27

VI.    THE BALANCE OF HARDSHIPS WEIGHS HEAVILY IN FAVOR OF PLAINTIFFS AND AN INJUNCTION IS IN THE PUBLIC INTEREST.......27

VII.    CONCLUSION............................................................................................28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fin. Servs. Assn. v. City of Oakland*,
  34 Cal. 4th 1239 (1993) ......................................................................23

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) ............................................................21

*City of Houston v. Hill*,
  482 U.S. 451 (1987).............................................................................21

*City of Riverside v. Inland Empire Patients Health & Wellness Ctr., Inc.*,
  56 Cal. 4th 729, 743 (2013) ...........................................................22, 24

*Clement v. City of Glendale*,
  518 F.3d 1090 (9th Cir. 2008) ............................................................19

*Clements v. Airport Auth. of Washoe Cnty.*,
  69 F.3d 321 (9th Cir. 1995) ................................................................20

*Coates v. Cincinnati*,
  402 U.S. 611 (1971).............................................................................22

*Desertrain v. City of Los Angeles*,
  754 F.3d 1147 (9th Cir. 2014) ............................................................22

*Ex parte Lane*,
  58 Cal. 2d 99 (1962) ...........................................................................24

*Garcia v. City of Los Angeles*,
  11 F.4th 1113 (9th Cir. 2021) .............................................................18

*Garcia v. City of Los Angeles*,
  611 F. Supp. 3d 918 (C.D. Cal. 2020) ................................................17

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972).............................................................................22

*Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*,
  799 F.2d 547 (9th Cir. 1986) ..............................................................27

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

*Johnson v. Couturier*,
    572 F.3d 1067, 1086 (9th Cir. 2009) ................................................................28

*Kirby v. Cnty. of Fresno*,
    242 Cal. App. 4th 940, 954 (2015) ...........................................................22, 23

*Kolender v. Lawson*,
    461 U.S. 352 (1983)..........................................................................................21

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2012) .................................................................16, 17

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982)..........................................................................................19

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)..........................................................................................18

*Melendres v. Arpaio*,
    695 F.3d 990, 1002 (9th Cir. 2012) .........................................................27, 28

*Mustaqeem v. City of San Diego*,
    118 Cal. App. 5th 22, 30 (2026) ...............................................................25, 26

*Pimental v. Drefus*,
    670 F.3d 1096 (9th Cir. 2012) .........................................................................16

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ...........................................................................28

*Recchia v. City of Los Angeles Dep't of Animal Servs.*,
    889 F. 3d 553 (9th Cir. 2018) ..........................................................................17

*Sherwin–Williams Co. v. City of Los Angeles*,
    4 Cal. 4th 893, 897 (1993) ...............................................................................23

*Smith v. Goguen*,
    415 U.S. 566 (1974)..........................................................................................22

*Stypmann v. City and Cty. of San Francisco*,
    557 F.2d 1338 (9th Cir. 1977) .........................................................................18

*Thakur v. Trump*,
    787 F. Supp. 3d 955 (N.D. Cal. 2025)..............................................................28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

*United States v. Brice*,
    926 F.2d 925 (9th Cir. 1991) ...............................................................21

*United States v. Hansen*,
    599 U.S. 762 (2023) ...........................................................................21

*United States v. James Daniel Good Real Property*,
    510 U.S. 43 (1993)...............................................................................18

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) ...............................................................27

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..................................................................................16

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983) ...............................................................28

**Statutes**

Cal. Gov't Code § 51037 ...............................................................11, 23, 24

Cal. Gov't Code § 51038 ...........................................................12, 13, 23, 26

Cal. Gov't Code § 51039 .......................................................................*passim*

Cal. Health & Safety Code, Div. 104, Part 7 ..........................................23

Cal. Health & Safety Code § 114368.8 ...................................................25

Cal. Health & Safety Code § 113705 ......................................................23

Cal. Health & Safety Code §§ 113773-74 ...............................................23

Cal. Health & Safety Code § 113831 ......................................................13

**Other Authorities**

CA CONST. Art 11, § 7................................................................................22

Fed. R. Civ. P. 65-1.....................................................................................2

Notice of Motion and Motion for Preliminary Injunction

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In flagrant violation of the U.S. Constitution and California law, the City of Fontana has forced sidewalk vendors outside its boundaries via a relentless campaign of unlawful regulation, seizure and destruction of property, and intimidation. The City's war on sidewalk vendors began with regulations (i) singling out vendors for onerous permitting requirements far beyond what the City requires of comparable small businesses, including multi-million-dollar insurance requirements, background checks, and an "own risk" waiver for using public sidewalks, and (ii) purporting to authorize what are in fact unlawful seizures. These measures deterred vendors from applying for permits, which subjected them to penalties for unauthorized vending, including City agents seizing and discarding vendors' goods hundreds of times. But the City remained unsatisfied. In 2023, it enacted a sweeping impoundment provision and created a new misdemeanor, punishable by fines up to $1,000 or up to six months' imprisonment, for "interfer[ing] in any way" with City officials. Chillingly, the City paid nearly $645,000 to retain outside enforcers, the contractor 4LEAF and its agents, to whom it gave the locations of targeted vendors for six-night-a-week enforcement operations.

The results have been devastating and irreparable. 4LEAF agents have confronted vendors in groups, wearing all black and concealing their faces beneath masks or hoods. Despite claiming authority from the City, they wear no badges or nametags, and refuse to identify themselves when asked. 4LEAF agents have used their vehicles to box in vendors; threatened them with arrest; pushed them aside; thrown away their food; and hauled off the tables, grills, canopies, carts, utensils, and other equipment they need to operate their businesses. Plaintiffs A.M.[2] and L.C., Fontana residents who sold pupusas and other food to support their families, had their food thrown out more than 30 times and lost their table, chairs, canopy, and grill because they could not afford the City's $250 impoundment fee.

---

[2] Each of the individual Plaintiffs is referred to herein by their initials. Defendants have agreed that these Plaintiffs can proceed pseudonymously. Plaintiffs anticipate filing a joint stipulated protective order to that effect shortly.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

Plaintiff A.P., a Fontana resident and sidewalk vendor, went to City Hall to apply for a permit, only to be told that there was no way to get one. After watching agents summarily seize and discard another vendor's grill spit, A.P. rightly concluded that Fontana's sidewalks were no longer safe for him or his business.

This is no ordinary code enforcement. It is an intentional municipal campaign—carried out against vendors who are disproportionately low-income, monolingual Spanish-speaking immigrants that have been excluded from the formal economy—to expel these individuals from the City's public spaces.

California passed a series of laws to protect sidewalk vendors from precisely the conduct Fontana is engaged in. Through SB 946, the Legislature decriminalized sidewalk vending, established uniform statewide limits on local regulation, and barred local governments from justifying restrictions based on perceived community animus or economic competition with brick-and-mortar businesses. And in SB 972, the Legislature created a lawful pathway for compact mobile food operations and again prohibited criminal penalties for food-vending violations. Fontana's challenged provisions fly in the face of these laws and infringe vendors' core constitutional rights by imposing permit requirements unrelated to objective health, safety, or welfare concerns; purporting to authorize the impoundment and punitive destruction of vendors' property; and criminalizing vendors' protected speech and resistance to unlawful enforcement.

Fontana's dehumanizing campaign has deprived individual vendors not only of their livelihood in the form of income, equipment, inventory, and customers, but also of the ability to work near their homes and families. For Plaintiff Inland Coalition for Immigrant Justice ("ICIJ"), whose mission is to improve the lives of economically vulnerable immigrant communities and whose membership includes hundreds of sidewalk vendors, the City's attacks have displaced the very individuals the organization exists to serve, and impeded the organization's ability to perform core services.

The City and its agents have no legitimate interest in enforcing ordinances that State law preempts and the Constitution forbids. The law is clear: Fontana may not evade

California's statewide vending protections, may not seize and destroy vendors' property without constitutional process, and may not threaten vendors with jail for speaking up as the City's agents destroy their livelihoods. Because Plaintiffs are likely to succeed on the merits, because the balance of hardships tips sharply in their favor, and because each day of continued enforcement inflicts irreparable harm on the very vendors the State set out to protect, this Court should preliminarily enjoin Fontana and 4LEAF from enforcing, implementing, or relying on the challenged provisions of Ordinances 1789 and 1925.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Fontana's Ordinances 1789 and 1925 Unlawfully Criminalize Sidewalk Vending and Impose Harsh Penalties on Vendors

#### 1.    In 2018, the California Legislature Enacted SB 946 to Decriminalize Street Vending

In 2018, the California Legislature passed the Safe Sidewalk Vending Act, Senate Bill No. 946 ("SB 946"), Declaration of Ariana Fuller ("Fuller Decl."), **Ex. C**, based upon findings that: (1) "[s]idewalk vending provides important entrepreneurship and economic development opportunities to low-income and immigrant communities"; (2) "[s]idewalk vending increases access to desired goods, such as culturally significant food and merchandise"; (3) "[s]idewalk vending contributes to a safe and dynamic public space"; (4) "[t]he safety and welfare of the general public is promoted by encouraging local authorities to support and properly regulate sidewalk vending"; and (5) "the safety and welfare of the general public is promoted by prohibiting criminal penalties for violations of sidewalk vending ordinances and regulations." *Id.* § 1 (a)(1)-(5). Recognizing the regulation of sidewalk vending to be a "matter[] of statewide concern," the Legislature made SB 946 applicable "to any city, county, or city and county" in the State. *Id.* §§ 1(a)(6), (b).

In particular, SB 946 provides that:

- "a local authority shall not regulate sidewalk vendors except in accordance with" SB 946, Cal. Gov't Code § 51037(a);

- any local vending program "shall comply with" enumerated statewide standards," *id.* § 51038(b); and
- any violations may be "punishable only by" a prescribed range of civil administrative fines—and cannot be treated as a crime, *id.* § 51039(a)(1), (c).

Any restrictions on vending must be justified by an "objective health, safety, or welfare concern" that is "directly related" to the regulated conduct. Cal. Gov't Code § 51038(b), (c); § 51039(a)(1). SB 946 also expressly forecloses local governments from attempting to justify restrictions on sidewalk vending by invoking "perceived community animus" or "economic competition" between vendors and other businesses. *Id.* § 51038(3).

As set forth in the Declaration of California State Senator Maria Elena Durazo, "[t]he Legislature drew these lines because it understood the history it was correcting… it replaced criminalization with a civil, non-punitive system designed to protect vendors and to remove the unnecessary barriers that block aspiring entrepreneurs from accessing the formal economy, harm California's economy, and disrupt the regulation of business." Sen. Durazo Decl. ¶ 12; *see also* ¶ 18.

### 2. In 2019, Fontana Contravened SB 946 with Unlawful Permitting Requirements and Seizure Provisions (Ordinance 1789)

On February 12, 2019, Fontana adopted Ordinance 1789, which provides that:

- Officers may "seize as evidence any item used [by a sidewalk vendor] in the commission of any violation" of Ordinance 1789, § 15-828; and
- To obtain a local vending permit, street vendors must: (1) purchase a multi-million dollar insurance policy, *id.* § 15-820(A)(9)[3]; and (2) agree to utilize public sidewalks "at [their] own risk" (while the City disclaims any obligation "to ensure public property is safe or conducive to sidewalk vending), *id.* § 15-820(A)(14).[4] Fuller Decl., **Ex. A**.

The City has identified no objective, evidence-based justifications for these

---

[3] Plaintiffs' Second Amended Complaint ("SAC") identifies this subsection as (a)(10), ¶ 142; the City has since renumbered this subdivision as (a)(9), with no change in content.
[4] This subdivision was also renumbered from (a)(15) to (a)(14) after the SAC.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

restrictions. *See* Cal. Gov't Code § 51038(c). Rather, available public-health evidence demonstrates that (1) restrictions that go beyond genuine health, safety, or welfare concerns—such as costly permitting and insurance mandates—limit food access and worsen health disparities; and (2) as of 2020, a substantial majority of local ordinances in California failed to meet SB 946's objective-concern standard. *See* Expert Declaration of Dr. Catherine Brinkley ("Brinkley Decl.") ¶¶ 18-22.

### 3.    In 2022, the Legislature Enacted SB 972 to Fully Decriminalize Sidewalk Vending

In September 2022, the Legislature enacted SB 972, formally recognizing sidewalk vendors as legitimate retail food providers by creating a new category in the Retail Food Code—"compact mobile food operation[s] ("CMFO")." Fuller Decl., **Ex. D** [Stats.2022, c. 489 (S.B.972), § 4, eff. Jan. 1, 2023]. A CMFO is defined as a food operation conducted from "a pushcart, stand, display, pedal-driven cart, wagon or other nonmotorized conveyance." Cal. Health & Safety Code § 113831(c). Like SB 946, SB 972 limits enforcement to civil administrative fines and prohibits criminal penalties for CMFO violations. *Id.* § 114368.8(a), (c), (d). The purpose of this statute, as described by co-author of the bill Senator Durazo, "was to end the discriminatory treatment of sidewalk food vendors and to enable their full participation in the formal economy." Sen. Durazo Decl. ¶ 14.

### 4.    In 2023, Fontana Unlawfully Criminalized Sidewalk Vending and Permitted Impoundment Through Ordinance 1925

Enacted by the City in October 2023, Ordinance 1925 contravened California law by (1) creating a new criminal misdemeanor offense under which sidewalk vendors who "interfere in any way" with officers engaged in their duties could be fined up to $1,000 or imprisoned for up to six months, Or. 1925, § 1-14, and (2) authorizing City officials to "impound a Sidewalk Vendor's vending cart, equipment, food, utensils, goods, flowers, toys, furniture, or merchandise," *id.* § 15-829(b). Fuller Decl., **Ex. B**. Under the latter provision, officers "immediately dispose" of items that are "perishable and/or cannot be

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

safely stored"; the City holds the remaining property for 30 to 60 days. *Id.* § 15-829(d)-(e).

**B.    Fontana and Its Contractor 4LEAF Enforce the Unlawful Ordinances, Seize Property Without Warrants, and Threaten Arrest**

On November 14, 2023, the City contracted with Defendant 4LEAF to enforce the City's regulations against "all non-permitted sidewalk vendors." Fuller Decl., **Ex. E** [City Contract with 4LEAF (the "Contract")]. The City directed 4LEAF to "confiscate all perishable/non-perishable items" from vendors operating without permits. *Id.*

4LEAF thereafter designed its enforcement practices to intimidate sidewalk vendors. Agents confront vendors unannounced, wearing all black garb and often covering their faces with balaclavas, masks, or hoods so that only their eyes are visible. *See* Declaration of Javier Hernandez ("Hernandez Decl.") ¶ 29; Declaration of Plaintiff A.M. ("A.M. Decl.") ¶¶ 4-5. Although they tell vendors that they are "from the City," Hernandez Decl. ¶ 29, 4LEAF agents do not wear badges or nametags, *id.*; A.M. Decl. ¶ 5. 4LEAF agents have warned vendors that they have no right to vend in the City and must leave immediately and threatened to arrest those who resist. *Id.*

**C.    The Individual Plaintiffs and ICIJ Members Suffered Harm Due to Fontana's Enforcement of the Unlawful Ordinances**

Plaintiff A.M., a Fontana resident who has sold pupusas, hot dogs, tacos, and empanadas since 2022, joined ICIJ in 2022 seeking help applying for permits and understanding her rights. A.M. Decl. ¶¶ 1, 3. Beginning in 2023, masked 4LEAF agents in plain clothes visited her many times a day, blocked in her vehicle so she could not leave, pushed her aside, threw out her freshly made food, and threatened to arrest her if she got in their way. *Id.* ¶ 4. They seized and discarded her food more than thirty times, at a cost of at least $500 each time. *Id.* ¶ 4. In December 2023, 4LEAF agents arriving with police told her to step aside or be arrested, then threw out her food and unopened sodas and hauled away all of her equipment—tables, chairs, grill, cooler, and tent worth about $2,000—damaging it in the process. *Id.* ¶ 8. When A.M. went to retrieve her equipment, a City official told her she would have to pay a $250 fee, or else the City would throw away her

property. Because A.M. could not afford the fee, the City never returned her equipment. *Id*. ¶¶ 8-9. Although A.M. went to Fontana City Hall three or four times in 2023 to obtain a permit, City officials repeatedly told her she could not get one. *Id*. ¶ 6. She has stopped vending in Fontana and now sells in unincorporated San Bernardino County, far from her home. *Id*. ¶ 2. A.M. wishes to vend in Fontana, where her family, her customer base, and her children's schools are located. *Id*. ¶¶ 2, 11.

The City's restrictions have likewise driven Plaintiff A.P.—a 56-year-old Fontana resident who began vending tejuino, raspados, and aguas frescas in 2020—out of the City. Declaration of Plaintiff A.P. ("A.P. Decl.") ¶¶ 1, 3-4. About three months after A.P. started vending, a Fontana official told him he could not sell in the City but could move across the street onto San Bernardino County land. *Id.* ¶ 4. He complied to avoid trouble with the police. When he went to Fontana City Hall to obtain a permit, a City employee told him the City does not give permits to food vendors. *Id*. ¶ 5. He also learned that the City required vendors to purchase insurance in excess of what it required of restaurants where he had previously worked. *Id*. ¶ 6. With limited income, A.P. could not afford such insurance. *Id*. A.P. has witnessed Fontana code enforcement officers seize a taco vendor's freshly prepared *trompo*—approximately 80 pounds of meat on a grill spit—and throw it directly into black trash bags with no inspection. *Id.* ¶ 8. He believes the same would happen to his food and equipment if he resumed vending in Fontana. *Id*. ¶¶ 7-8. A.P. wishes to vend in Fontana again, where he lives with his family, especially as he finds it increasingly difficult to travel long distances with his equipment. *Id*. ¶ 12.

For Plaintiff ICIJ, the City's and 4LEAF's conduct has interfered directly with the organization's core activities and forced it to divert scarce resources. Hernandez Decl. ¶¶ 32, 50. Between October and December 2023 alone, ICIJ spent at least 40 to 60 staff hours per week responding to enforcement in Fontana, growing its street-vendor campaign team from one person to five and redirecting staff time away from immigration legal services and faith-community outreach. *Id*. ¶¶ 36-37, 39. The EOC provision's vagueness left ICIJ unable to give clear Know-Your-Rights guidance—when vendors repeatedly asked what

the law meant, staff could only respond, "We don't know what it means." *Id*. ¶ 38. And because the City has driven out nearly all sidewalk vendors, ICIJ has had to cancel clinics, workshops, and outreach events for lack of vendors to serve. *Id*. ¶¶ 41, 43-44.

ICIJ staff have observed 4LEAF agents' patterns of intimidating conduct, and individual ICIJ members have borne the brunt of the City's ordinances and 4LEAF's enforcement practices. Hernandez Decl. ¶¶ 29-45. When—as here— vendors are forbidden from working in their home city, they must seek out other places to vend, travel greater distances at greater cost, and apply for permits in other cities and counties. A.M. Decl. ¶¶ 2, 11; A.P. Decl. ¶¶ 4, 12; Hernandez Decl. ¶ 49.

## III.   LEGAL STANDARD

A preliminary injunction must issue if Plaintiffs show that (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A stronger showing on one element may offset a weaker showing on another. *See Pimental v. Drefus*, 670 F.3d 1096, 1105 (9th Cir. 2012).

This Court has already determined that Plaintiffs have standing to proceed. Dkt. 85.

## IV.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.   The City and 4LEAF Are Violating the Fourth Amendment

#### 1.   The City's Challenged Impoundment Provisions Facially Violate the Fourth Amendment

Seizures of private property by a local government are subject to Fourth Amendment scrutiny. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012). Warrantless seizures of private property—precisely those at issue here—are "per se unreasonable under the Fourth Amendment," even where the property is in a public area. *Recchia v. City of Los Angeles Dep't of Animal Servs.*, 889 F. 3d 553, 558 (9th Cir. 2018). The City's challenged impoundment provisions—which have been contractually adopted and carried out by 4LEAF—flout the Fourth Amendment by purporting to authorize agents' warrantless

seizure of vendors' property in the absence of any exception to the warrant requirement. *See* FMC §§ 15-828, 15-829(b)(1)-(6), (8)-(9), (c) (neither requiring officers to obtain a warrant nor determine whether an exception applies).

The City concedes the critical facts: vendors have protectable interests in their property, and the City's impoundment provisions authorize warrantless seizures without requiring any exception to the warrant requirement. *See* City's Motion to Dismiss SAC ("City MTD"), Dkt. 91, at 12. The City nevertheless defends its agents' warrantless seizures—and, in many cases, summary destruction—of vendors' property, based solely on alleged noncompliance with its sidewalk vending regulations.

But "[v]iolation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1029 (9th Cir. 2012). Where, as here, the challenged provisions place no constitutional guardrails on the City's seizure authority, the "only work" such provisions do "is to permit seizures of items . . . where there is no other valid reason to remove them"—in plain violation of the Fourth Amendment. *Garcia v. City of Los Angeles*, 611 F. Supp. 3d 918, 928–29 (C.D. Cal. 2020).

### 2. The City and 4LEAF Seized A.M. and L.C.'s Property in Violation of the Fourth Amendment

The City admits that it seized A.M.'s and L.C.'s property and summarily destroyed it without warrants. *See* City MTD, at 17–18; A.M. Decl. ¶¶ 4, 8 (A.M. and L.C. were never shown a warrant). 4LEAF likewise does not dispute that it seized A.M.'s and L.C.'s property and summarily destroyed it without warrants or any applicable exception to the warrant requirement. *See* 4LEAF, Inc.'s Motion to Dismiss SAC ("4LEAF MTD"), Dkt. 90, at 9–14 (arguing only that it is not liable under § 1983 and declining to defend the constitutionality of the seizures).[5]

Neither the City nor 4LEAF can carry its burden to show that any exception to the

---

[5] 4LEAF is subject to liability under Section 1983 for the reasons identified in Plaintiffs' Opposition to 4LEAF's Motion to Dismiss (Dkt. 80 at 13-20) and SAC ¶¶ 153-161. *See also* RJN & Fuller Decl., **Ex. E** [4LEAF Contract with the City].

warrant requirement applied.[6] *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1118 (9th Cir. 2021) ("Because warrantless . . . seizures are per se unreasonable, the government bears the burden of showing that a warrantless . . . seizure falls within an exception to the Fourth Amendment's warrant requirement." (quoting *Recchia*, 889 F.3d 553 at 558)). That ends the Fourth Amendment analysis: because the seizures were conducted without warrants and outside any recognized exception, Defendants violated the Fourth Amendment.

Plaintiffs have therefore demonstrated a likelihood of success on the merits of both their facial and as-applied Fourth Amendment claims.

### B.   The Challenged Ordinances Violate Due Process

#### 1.   The City's Impoundment Scheme Facially Violates Due Process

Before the government deprives a person of her property, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993).

Fontana's impoundment scheme does just the opposite, purporting to authorize its agents' seizure of vendors' property with no process and leaving vendors facing an inaccessible post-deprivation process that falls short of constitutional minimums.

Courts will tolerate a seizure without a pre-deprivation hearing only in (i) emergencies where (ii) the owner receives a prompt post-seizure hearing at which the seizing official must show probable cause. *Stypmann v. City and Cty. of San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977) (five-day delay for hearing to justify auto detention clearly too long and excessive). Neither condition is met here. *First*, FMC §§ 15-828 and 15-829(b) provide no pre-deprivation process. They require neither pre-seizure notice informing a vendor that her property is at imminent risk of confiscation nor a pre-seizure hearing before a neutral decisionmaker at which the vendor may challenge the legal or

---

[6] As explained in Plaintiffs' Opposition to the City's Motion to Strike, neither the administrative search exception or the community caretaking exception applied—or could apply—to the warrantless seizures of A.M. and L.C.'s private property. Defendants' motions attempt to improperly place the burden on Plaintiffs to establish that no exception to the warrant requirement applies (*see* Dkt. 91 at 21:16-17), but it is Defendants—not Plaintiffs—that need to establish an exception exists. They have not, and cannot, do so.

factual basis for the deprivation. Instead, they purport to authorize summary impoundment based solely on an agent's unilateral determination that a violation has occurred. The City contends that a vendor's failure to obtain a permit or otherwise comply with the City's conditions for vending results not only in a violation of the vending regulations *but also* a violation of "generally applicable nuisance laws" regarding storage of property on public sidewalks. Dkt. 91 at 16:1-2. The Court should reject this: section 51039(d)(1) specifically states that a violation of a city's sidewalk vending program "shall not be punishable as an infraction," which is precisely what the City is attempting to do here via the "nuisance laws."

*Second*, the post-deprivation process is constitutionally inadequate: vendors must pay fees, receive no guaranteed deadline for decision, and face a final, nonreviewable decision by the city manager under minimal evidentiary rules. FMC § 15-826; FMC § 15-829(g)–(h). For perishable goods, which the City's agents destroy summarily pursuant to FMC § 15-829(d), post-deprivation seizure is not even an option. *See, e.g.*, A.P. Decl. ¶ 8. (officers seized more than 80 pounds of meat from a vendor and threw it into the garbage); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) ("To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement.").

Here, the *Mathews* balancing test weighs decisively in Plaintiffs' favor. Pre-deprivation process is not excused where, as here, there is no immediate threat and little risk the owner will abscond. *Clement v. City of Glendale*, 518 F.3d 1090, 1094–95 (9th Cir. 2008). By contrast, there is a grave risk of erroneous deprivation: Fontana provides no pre-seizure procedure *at all*. Moreover, where its agents do not summarily destroy a vendor's goods, the vendor must pay $230 to $300 to recover their unlawfully impounded property or else go without essential equipment while navigating a constitutionally deficient appeal process. *See Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 333 (9th Cir. 1995). Finally, the private interests are substantial. Sidewalk vendors invest their limited funds in carts, grills, furniture, and merchandise to earn a livelihood, and time

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

without that property means lost income, lost customers, and immediate financial hardship. A.M. Decl. ¶¶ 8-9, 11; A.P. Decl. ¶ 7; Hernandez Decl. ¶¶ 48-49.

## 2. The City and Its Agents Violated A.M. and L.C.'s Due Process Rights

In practice, Fontana's impoundment scheme repeatedly denied A.M. and L.C. due process. Even though A.M. and L.C. are stationary sidewalk vendors who pose little risk of flight, City agents seized and destroyed their property *more than 30 times* with no pre-deprivation notice or opportunity to be heard. When A.M. and L.C. tried to reclaim their nonperishable goods and equipment, the agents refused to explain why those items had been seized, leaving the City's constitutionally-deficient post-hearing appeal process as their only recourse. A.M. Decl. ¶ 8; Hernandez Decl. ¶ 48. For their perishable goods—worth more than $15,000—A.M. and L.C. received no post-deprivation process at all. A.M. Decl. ¶¶ 4, 8. Together with their loss of $2,000 in equipment—which also prevented them from continuing to work—A.M. and L.C. suffered severe financial harms and struggled to pay rent and other expenses. *Id.* ¶ 10. By contrast, the City never even applied—indeed, could not have applied—the nuisance laws it now invokes against A.M. and L.C. *See* Cal. Gov't Code § 51039(d)(1) (prohibiting punishment of alleged noncompliance with local vending laws "as an infraction or misdemeanor"). As applied, therefore, the *Mathews* test weighs strongly in A.M. and L.C.'s favor.

## C. The EOC Provision is Facially Overbroad and Unconstitutionally Vague

### 1. The EOC Provision Criminalizes a Substantial Amount of Protected Conduct

Where a statute "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep," the Court must find the statute facially invalid. *United States v. Hansen*, 599 U.S. 762, 770 (2023) (citation modified). Because an overbroad statute "may deter or chill constitutionally protected speech, . . . society's interest in free expression outweighs its interest in the statute's lawful applications." *Id.* at 769–70 (citation

modified); *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983) (overbroad laws may be invalidated even when they could "conceivably have had some valid application"). Where criminal penalties hang in the balance, statutes "must be scrutinized with particular care." *City of Houston v. Hill*, 482 U.S. 451, 459 (1987).

Here, the EOC Provision criminalizes a "substantial amount" of protected speech and expressive conduct, "disproportionate to the statute's lawful sweep." *Hansen*, 599 U.S. at 770.[7] For example, a vendor who trails after an officer to ask how she may recover her impounded property may be charged with "follow[ing]" or "inter[fering]" with law enforcement officers. Or. 1925, FMC § 1-14; *see Hill*, 482 U.S. at 465 ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."). A local journalist or legal observer who records a seizure with their cellphone risks being arrested for "follow[ing]" or even "threaten[ing]" officers. Or. 1925, FMC § 1-14; *see Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) ("The First Amendment protects . . . the right to record law enforcement officers engaged in the exercise of their official duties in public places."). Even a bystander who shouts at an officer to desist from a seizure could be charged with "intimidat[ing]" or "threaten[ing]" that person. Or. 1925, FMC § 1-14; *see Hill*, 482 U.S. at 461 ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

Unsurprisingly, vendors and bystanders alike are choosing to self-censor rather than risk criminal fines, arrest, prosecution, and even imprisonment.  A.M. Decl. ¶ 4; Hernandez Decl. ¶¶ 38, 40, 42. Where, as here, a statute reaches so far into the heartland of constitutionally protected expression, it must be invalidated.

### 2.    The EOC Provision is Unconstitutionally Vague

A law is unconstitutionally vague if it either "fail[s] to provide the kind of notice

---

[7] In contrast to statutes targeting conduct that "impedes or disrupts," *United States v. Brice*, 926 F.2d 925 (9th Cir. 1991), the EOC provision sweeps in a range of speech and expressive conduct that "threaten[s], . . . intimidate[s], or interfer[es] in any way" with an official.

that will enable ordinary people to understand what conduct it prohibits" or "authorize[s] and even[s] encourage arbitrary and discriminatory enforcement." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1155 (9th Cir. 2014) (citation omitted).

The EOC Provision does both. Its undefined and imprecise terms sweep in a broad range of behavior—including constitutionally protected speech—forcing persons "of common intelligence" "to guess" at the Provision's meaning. *Smith v. Goguen*, 415 U.S. 566, 574 (1974) (citation omitted). Since the Provision's passage, ICIJ has been inundated with vendors asking what the EOC Provision prohibits. Hernandez Decl. ¶ 38. Does it prohibit a vendor from "follow[ing]" a 4LEAF agent? From "interfer[ing]" by protesting the seizure of her property? From "imped[ing]" the agent's exit to ask how she might recover her property? Or. 1925, FMC § 1-14. ICIJ could not provide clear answers to these queries, because the EOC Provision does not. *Id*. This uncertainty has chilled ICIJ's and vendors' speech—the very harm that vagueness doctrine is intended to prevent. *See Grayned v. City of Rockford*, 408 U.S. 104, at 109 (1972) ("[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms [by] . . . lead[ing] citizens to steer far wider of the unlawful zone.")

By leaving its terms undefined, the EOC Provision also encourages discriminatory enforcement. Because "enforcement depend[s] on the completely subjective standard of" whether a vendor's conduct "intimidate[s]" an officer, the EOC Provision lends itself to abuse, permitting the City's agents to wield it as a sword against disfavored vendors. *Grayned*, 408 U.S. at 113 (discussing *Coates v. Cincinnati*, 402 U.S. 611 (1971)); Or. 1925, FMC § 1-14; *see* Hernandez Decl. ¶¶ 38, 40; A.M. Decl. ¶ 5.

**D.    The Challenged Provisions are Preempted by State Law**

Under the California Constitution, a local ordinance "in conflict with" a state statute is void. CA CONST Art. 11, § 7; *see also Kirby v. Cnty. of Fresno*, 242 Cal. App. 4th 940, 954 (2015); *City of Riverside v. Inland Empire Patients Health & Wellness Ctr., Inc.*, 56 Cal. 4th 729, 743 (2013). For purposes of California preemption doctrine, a "conflict" exists if the local ordinance (1) duplicates the state statute, (2) contradicts the statute, or

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

(3) enters an area fully occupied by general law. *Id*. The last category requires an examination of the Legislature's intent to fully occupy an area, which may be either expressed or implied. *Id.*; *see also Sherwin–Williams Co. v. City of Los Angeles* 4 Cal. 4th 893, 897 (1993).

Here, the challenged City ordinances both attempt to regulate an area fully occupied by California law and contradict California statutes.

**1.     The City Ordinances are Preempted Because They Attempt to Regulate an Area Fully Occupied by California Law**

The "occupy the field" standard is satisfied where "the Legislature has expressly manifested its intent to 'fully occupy' the area,'" *Am. Fin. Servs. Assn. v. City of Oakland*, 34 Cal. 4th 1239, 1252, 104 P.3d 813, 820 (2005), or where "there are clear indications of the Legislature's implicit intent" to do so. *Id*. One important indicia of the requisite intent is when "the subject is one which . . . requires uniform treatment throughout the state." *Id*. at 1252.

SB 946 and SB 972 easily meet this standard. As to SB 946, the Legislature expressly stated that "[a] local authority shall not regulate sidewalk vendors except in accordance with Sections 51038 and 51039." *Id*. § 51037(a).

In SB 972, the Legislature adopted a similarly comprehensive framework governing food sales, preparation, storage, sanitation, and equipment—as well as inspections and permitting—as set forth in the CMFO provisions of the Retail Food Code. Cal. Health & Safety Code, Div. 104, Part 7. The Legislature chose to limit Retail Food Code enforcement authority to the Department of Public Health and local health agencies such as the Division of Environmental Health Services. Cal. Health & Safety Code §§ 113773-74. Neither the City nor 4LEAF have any authority to enforce SB 972's health inspections or permitting requirements. Indeed, as in SB 946, the Legislature expressly declared its intent "to occupy the whole field of health and sanitation standards for retail food facilities," including sidewalk vendors. *Id*. § 113705; *see* Sen. Durazo Decl. ¶¶ 9-11, 18-26.

In each instance, the Legislature through SB 946 and SB 972 adopted "a general

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

scheme for the regulation" of an important subject requiring statewide treatment, thereby exercising "entire control over . . . the subject[s] . . . covered by state legislation." *Am. Fin Servs.*, 34 Cal. 4th at 1253; *see Lane*, 58 Cal. 2d at 102 ("[W]here the state has fully occupied the field, there is no room for additional requirements by local legislation."). Because the Legislature has occupied the field of sidewalk vending regulation, the challenged Ordinances are preempted.

### 2.    The City Ordinances Are Preempted Because They Contradict California Law

Conflict preemption under California law exists "when the local 'ordinance directly requires what the state statute forbids or prohibits what the state enactment demands.'" *Kirby*, 242 Cal. App. 4th at 955 (quoting *City of Riverside*, 56 Cal. 4th at 743). Under this test, where "it is impossible simultaneously to comply with both" laws, the state statute governs. *Id.*

A "state law may preempt local law when local law prohibits **not only what a state statute 'demands' but also what the statute permits or authorizes**." *Chevron U.S.A. Inc. v. Cnty. of Monterey*, 15 Cal. 5th 135, 149 (2023). (emphasis added). Here, SB 946 specifically permits and authorizes sidewalk vending throughout the State and prohibits local authorities from regulating sidewalk vendors **except** in accordance with SB 946. Cal. Gov. Code, § 51037(a). Thus, local ordinances regarding sidewalk vending that do not comply with SB 946 directly conflict with state law.

In plain violation of SB 946, the challenged provisions expressly purport to prohibit the sidewalk vending activity that the State Legislature determined was in the best interests of Californians to authorize. These provisions fall into five categories:

(1) The EOC Provision (FMC §1-14, Or. No. 1925) attempts to impose criminal misdemeanor liability for violations of the City's sidewalk vending regulations, which is in direct conflict with the prohibition on criminal punishment for such violations. Cal. Gov't Code § 51039. The City and 4LEAF nevertheless claim that, because it only criminalizes "interfere[nce]" with City agents' enforcement of sidewalk vending

regulations, Section 1-14 is not punishment for violating the same. That is wrong. The City enacted Section 1-14 as part of Ordinance 1925, with the express purpose of "more effectively regulating the sale of food, goods, and merchandise..." *See* Fuller Decl., **Ex. B**. In practice, making it a crime to "interfere" with the enforcement of sidewalk vending regulations does the same work as criminalizing the violation itself. *See* Sen. Durazo Decl., ¶¶ 19-20 ("Opinion 2: The Legislature specifically sought to prevent criminalization, property seizures, and exclusionary permitting" *and* "Opinion 3: Fontana's challenged ordinances and enforcement practices do what the legislature forbade and frustrate the statutes' purpose").

(2) FMC §§ 15-828 and 15-829 purport to enable the City and 4LEAF to seize, impound, and/or destroy sidewalk vendors' property and goods. This violates California law. Cal. Gov. Code, § 51039; Cal. Health & Safety Code § 114368.8; *see also Mustaqeem v. City of San Diego*, 118 Cal. App. 5th 22, 30 (2026) ("Regulations that purport to allow the impoundment of [a sidewalk vendor's] items . . . are in direct conflict with the state law."); *id.* at 40 ("Section 51039 does not authorize impoundment of a vendor's equipment and/or goods for any reason . . .").

The City and 4LEAF claim that these seizures and impoundments do not punish the vendors so much as "abate an ongoing nuisance." This is both demonstrably untrue and belied by the ordinance's plain language, which—in addition to saying nothing about nuisance abatement—states simply that any "code enforcement officer is authorized to seize as evidence any item used in the commission of a violation of any provision of this article." Likewise, section 15-829 authorizes the City to impound property for not displaying a valid permit or failing to provide identification. The clear purpose and undeniable effect of these provisions is to punish sidewalk vendors. *See* Sen. Durazo Decl. ¶ 21.

(3) Sections 15-826 and 829(h) both impose fees and financial conditions not permitted under California Government Code § 51039, which strictly limits the fines, fees, and assessments that a locality may impose for violations of a local sidewalk vending

program to those enumerated in the statute. Cal. Gov't Code § 51039(c) ("Additional fines, fees, assessments, or any other financial conditions beyond those authorized in subdivision (a) shall not be assessed.") Contrary to Defendants' arguments, appeal and impound fees—like the impoundment itself—punish vendors for violating local regulations.

(4) Section 15-820(a)(9) requires sidewalk vendors to procure a multi-million dollar public liability insurance policy from "an insurance company approved by the city." This absurd requirement—for which the City singles out sidewalk vendors alone—has nothing to do with the time, place or manner of sidewalk vending, nor is it even remotely related to "objective health, safety or welfare concerns." Cal. Gov. Code, § 51038(c). Rather, the available public-health evidence demonstrates that such mandates operate primarily to suppress vending and have little if any connection to the "objective health, safety or welfare concerns" contemplated by the State statute. Brinkley Decl. ¶¶ 18-22, 25.

(5) Lastly, Section 15-820(a)(14) requires sidewalk vendors to acknowledge "that the use of public property is at the vendor's own risk, that the city does not undertake any steps to ensure public property is safe or conducive to sidewalk vending activities, and the sidewalk vendor uses public property at his/her own risk." The City has not even attempted to connect this requirement—imposed only on sidewalk vendors and not any other businesses operating on public sidewalks, such as restaurants with outdoor dining—as being directly related to objective health, safety, or welfare concerns. *See* Fontana Zoning and Development Code § 30-360. And unsurprisingly, targeting sidewalk vendors with such requirements without an evidence-based health rationale finds no support in the public-health literature. Brinkley Decl. ¶¶ 21-25.

Importantly, the City has the burden of showing that its vending regulations are "*directly* related to *objective* health, safety, or welfare concerns" and thus, "any restriction must be based on *direct* and *objective* (i.e., known or observable) concerns resulting directly from vendor's presence or conduct…." *Mustaqeem*, 118 Cal. App. 5th at 47 [finding the City of San Diego had not established that its attempted ban of vendors around a stadium was justified when it stated only that the area around the stadium was "busy"

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

during a game or event). Here, the City relies on bare bone and boilerplate "recitals" to justify its regulations and fails to meet the required legal standard. Fuller Decl., **Exs. A, B**.

Each of the challenged provisions plainly contradicts state law and is therefore preempted.

## V. <u>PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION</u>

Not only are Plaintiffs likely to succeed on the merits of their claims, but without judicial intervention, the City's and 4LEAF's illegal policies and practices will continue to inflict upon Plaintiffs serious and irreparable harm. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres*, 695 F.3d at 1002; *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Plaintiffs need only show "a real possibility" that such irreparable constitutional harm will continue in the absence of an injunction—which, as set forth above, *see, supra*, § II.C—it will. *Melendres*, 695 F.3d at 1002; *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 553 (9th Cir. 1986). Individual Plaintiffs continue to be excluded from vending in their home City, to lose income and customers, and to suffer the destruction of their property and the chilling of their speech. A.M. Decl. ¶¶ 8-11; A.P. Decl. ¶¶ 7, 12. And ICIJ's core mission remains compromised so long as the City and 4LEAF's unlawful enforcement continues to drive from the City the populations the organization exists to serve. Hernandez Decl. ¶¶ 41-44, 50.

## VI. <u>THE BALANCE OF HARDSHIPS WEIGHS HEAVILY IN FAVOR OF PLAINTIFFS AND AN INJUNCTION IS IN THE PUBLIC INTEREST</u>

The balance of hardships weighs heavily in Plaintiffs' favor, and an injunction serves the public interest, because an agency "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *accord Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution"). Indeed, "it is

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation omitted). And it is always in the public interest for the government to follow the law. *Thakur v. Trump*, 787 F. Supp. 3d 955, 997 (N.D. Cal. 2025) *affirmed in part, reversed in part on other grounds by* 176 F.4th 1187 (9th Cir. 2026).

Plaintiffs have presented overwhelming evidence that they face ongoing loss of livelihood and constitutional deprivations absent a preliminary injunction. By contrast, Defendants suffer no cognizable harm from being enjoined from enforcing unconstitutional and preempted ordinances. A government entity does not suffer harm from an injunction that merely requires it to comply with the law. Moreover, the City retains authority to regulate vending through constitutionally permissible means, such as the administrative fines authorized by SB 946 and SB 972, which reflect California's legislative intent to promote and support sidewalk vending by protecting vendors from discrimination and overly punitive enforcement. An injunction prohibiting Fontana from enforcing its unlawful enactments will restore the status quo contemplated by the Legislature. Sen. Durazo Decl., ¶ 23. Finally, because obstacles to vending that are untethered to genuine health and safety concerns restrict underserved communities' access to affordable, culturally relevant, and healthy food, removing those illegal obstacles will in fact advance the very objectives they purport to serve. Brinkley Decl. ¶¶ 12-13, 16-17, 26-28.[8]

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed] Order Granting Plaintiffs' Motion for Preliminary Injunction.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[8] The Court should exercise its discretion and find that Plaintiffs are not required to post a bond. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

Dated: July 1, 2026

Respectfully submitted,

**PUBLIC COUNSEL**

By: _/s/ Ritu Mahajan_
    Ritu Mahajan (SBN 252970)
    *rmahajan@publiccounsel.org*
    Mark Rosenbaum (SBN 59940)
    *mrosenbaum@publiccounsel.org*
    Amanda Mangaser Savage (SBN 325996)
    *asavage@publiccounsel.org*
    Cassidy J. Bennett (SBN 347811)
    *cbennett@publiccounsel.org*
    Elizabeth R. Brown (SBN 360601)
    *ebrown@publiccounsel.org*
    Jacob Maddox (SBN 354368)
    *jmaddox@publiccounsel.org*
    Brittnee Bui (SBN 333372)
    *bbui@publiccounsel.org*
    610 South Ardmore Ave.
    Los Angeles, CA 90005
    Telephone: 213.385.2977

**KING & SPALDING LLP**

By: _____
    Ariana E. Fuller (SBN 301797)
    *afuller@kslaw.com*
    Arwen R. Johnson (SBN 247583)
    *arwen.johnson@kslaw.com*
    Jeanne A. Fugate (SBN 236341)
    *jfugate@kslaw.com*
    633 West Fifth Street, Suite 1600
    Los Angeles, CA 90071
    Telephone: 213.443.4355

**ARNOLD & PORTER LLP**

By: _/s/ Matthew T. Heartney_
    Matthew T. Heartney (SBN 123516)
    *matthew.heartney@arnoldporter.com*
    Daniel Shimell (SBN 300931)
    *daniel.shimell@arnoldporter.com*
    Kathryn Campbell (SBN 350536)
    *katie.campbell@arnoldporter.com*
    Dania Qahoush (SBN 335202)
    *dania.qahoush@arnoldporter.com*
    777 South Figueroa Street, 44th Floor
    Los Angeles, CA 90017-5844
    Telephone: 213.243.4000

## SIGNATURE ATTESTATION

Pursuant to L.R. 5-4.3.4(a)(2)(i), the undersigned, counsel of record for Plaintiffs, hereby attests that all other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:     July 1, 2026

By: _____
ARIANA E. FULLER

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff A.M., A.P., L.C., and INLAND COALITION FOR IMMIGRANT JUSTICE, certifies that the Memorandum of Points and Authorities contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

Dated:        July 1, 2026                                By: _____
                                                                          ARIANA E. FULLER