RITU MAHAJAN (SBN 252970)
  *rmahajan@publiccounsel.org*
MARK ROSENBAUM (SBN 59940)
  *mrosenbaum@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
  *asavage@publiccounsel.org*
**PUBLIC COUNSEL**
610 South Ardmore Ave.
Los Angeles, CA 90005
Telephone: 213.385.2977

ARIANA E FULLER (SBN 301797)
  *afuller@kslaw.com*
JEANNE A. FUGATE (SBN 236341)
  *jfugate@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: 213.443.4355

MATTHEW T. HEARTNEY (SBN 123516)
  *matthew.heartney@arnoldporter.com*
DANIEL SHIMELL (SBN 300931)
  *daniel.shimell@arnoldporter.com*
**ARNOLD & PORTER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000

*Attorneys for Plaintiffs A.M., A.P., L.C., and
Inland Coalition for Immigrant Justice*

### UNITED STATES DISTRICT COURT FOR THE

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M., A.P., L.C., and INLAND COALITION FOR IMMIGRANT JUSTICE, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FONTANA and 4LEAF, INC., <br><br> Defendants. | Case No. 5:25-CV-2092-SS-SP <br><br> **DECLARATION OF JAVIER HERNANDEZ** <br><br> Date: July 31, 2026 <br> Time: 2:00 p.m. <br> Courtroom: 2 <br><br> Hon. Sunshine S. Sykes |

I, Javier Hernandez, make the following statements on behalf of myself and the Inland Coalition for Immigrant Justice. I declare under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.

## ICIJ'S HISTORY, MISSION, AND STRUCTURE

1. I am the Executive Director of the Inland Coalition for Immigrant Justice ("ICIJ" or the "Coalition"). I have held this position since 2022. In this capacity, I oversee all of ICIJ's programs, staff, and operations, and am responsible for strategic planning and ICIJ's annual budget.

2. ICIJ is a 501(c)(3) nonprofit headquartered in San Bernardino, California. ICIJ was founded in 2008 by Roman Catholic Auxiliary Bishop Rutilio del Riego, who convened immigrant leaders in the Inland Empire on the belief that faith-based, grassroots, and community organizations working together as a coalition could deliver a unified message of justice for immigrants.

3. ICIJ's mission is to convene organizations to collectively advocate and work to improve the lives of immigrants. We are dedicated to increasing access to resources, education, and policy decision-making for low-income and immigrant communities throughout the Inland Empire.

4. ICIJ serves the Inland Empire region—San Bernardino and Riverside Counties—spanning more than 27,000 square miles. Approximately one in five people in the Inland Empire is an immigrant. ICIJ's sidewalk vending work also touches Los Angeles County. Each year, ICIJ reaches approximately 100,000 people with resources and serves as a trusted messenger and partner for immigrant communities throughout the region.

5. ICIJ is a membership organization. It is a coalition of approximately 35 community, faith-based, legal service, and workers' rights organizations. ICIJ has more than 500 individual members, more than half of whom are sidewalk vendors. ICIJ's individual members are predominantly low-income, working-class, monolingual Spanish speakers, many with limited formal education.

DECLARATION OF JAVIER HERNANDEZ

6.      Some of ICIJ's members pay annual dues that help fund the organization's operations. Other members become members through their voluntary participation in ICIJ's meetings, programs, and policy campaigns.

7.      ICIJ's annual operating budget is approximately $2 million. No portion of that budget is separately dedicated to street-vendor work; our vendor programming is funded by general operating funds.

## ICIJ'S CORE ACTIVITIES AND PROGRAMS

8.      ICIJ provides a range of direct services and programs to the immigrant community of the Inland Empire, including but not limited to the following:

9.      **Legal Department.** ICIJ operates a legal department recognized by the U.S. Department of Justice ("DOJ") as a provider of immigration legal services. The department is staffed by DOJ Accredited Representatives who assist members with immigration applications, referrals, and related matters. ICIJ's legal department also helps sidewalk vendors respond to and appeal citations. In addition, ICIJ provides eviction defense referrals for members facing eviction. ICIJ's legal department serves immigrants and refugees across Riverside and San Bernardino Counties.

10.      **Immigration Legal Clinics.** ICIJ operates immigration legal clinics and coordinates the Inland Empire Legal Roundtable, which brings together community-based organizations to provide legal clinics addressing naturalization, DACA renewals, asylum screenings, and other immigration matters.

11.      **Know-Your-Rights Workshops.** ICIJ conducts Know-Your-Rights ("KYR") workshops and educational workshops for community members, schools, and educators, covering topics including immigration law, workers' rights, sidewalk vending, and financial literacy.

12.      **Resource and Rapid Response Hotline.** ICIJ operates the IC4IJ Resource Hotline, also known as the Inland Empire Emergency Response Network, a community-led hotline that has been serving undocumented community members in Riverside and San Bernardino Counties for close to a decade. Community members can call to report

DECLARATION OF JAVIER HERNANDEZ

enforcement actions and citations, and volunteers are dedicated to responding. This has become particularly crucial to the community in the wake of ICE raids throughout the Inland Empire.

13. **Small Business and Sidewalk Vendor Support.** ICIJ provides direct services to small business owners and sidewalk vendors, including legal clinics, peer-to-peer technical assistance groups, vendor marketplace partnerships, support applying for grant funding opportunities, and small grants for equipment. During the pandemic, ICIJ helped vendors obtain food-handling courses, certifications, and permits, and provided small grants for equipment; some vendors we assisted later opened brick-and-mortar shops.

14. In addition to these direct services, ICIJ engages in policy advocacy and community organizing, deportation defense, CalEITC outreach, and operates the San Bernardino Workers Center.

## ICIJ'S WORK SUPPORTING SIDEWALK VENDORS

15. Sidewalk vending is a core focus of ICIJ's programs because it is one of the primary means for economically vulnerable and immigrant individuals in the Inland Empire to earn a living and provide for their families.

16. In 2018, ICIJ joined the California Street Vending Campaign and advocated for the passage of Senate Bill 946, which legalized and decriminalized sidewalk vending across California. Since that time, ICIJ has worked with vendors to develop and improve street vending ordinances in cities across San Bernardino and Riverside Counties, including the Cities of San Bernardino, Palm Springs, Ontario, Redlands, and Coachella, among others, supporting those cities in ensuring their ordinances comply with California law while expanding entrepreneurship opportunities for vendors.

17. ICIJ's sidewalk vendor services include legal clinics, peer-to-peer assistance groups, marketplace partnerships, support seeking grant opportunities, Know-Your-Rights trainings, educational workshops, and a hotline to report enforcement

DECLARATION OF JAVIER HERNANDEZ

actions and citations. Through these programs, workshops, and advocacy, we have built strong relationships with sidewalk vendors operating throughout the Inland Empire.

### ICIJ'S WORK IN FONTANA

18.    ICIJ began working with street vendors in Fontana in approximately 2019. ICIJ was first engaged with vendors in the City of San Bernardino and was then invited by Fontana vendors to support them in the spring of 2019. Our role was to provide broad support to vendors, including information about the state sidewalk vending law and Fontana's ordinance, help obtaining Individual Taxpayer Identification Numbers ("ITINs") and identification documents, immigration legal support, business start-up assistance, and help finding liability insurance brokers and providers.

19.    ICIJ organized and communicated with approximately fifty vendors in Fontana. About half of those vendors regularly attended ICIJ events. ICIJ hosted a workshop series at St. Joseph's Catholic Church in Fontana—a March 2019 sidewalk vendor workshop alone drew fifteen to twenty participants—and canvassed the area to learn about issues facing vendors.

20.    In 2019, after Senate Bill 946 passed and Fontana's City Council began discussing a vending ordinance, ICIJ reached out to City officials—including a City Council member and the Chief of Police—to discuss the impacts of the ordinance's provisions on vendors. ICIJ was unsuccessful in changing what became Ordinance 1789 ("Or. 1789").

21.    In late 2021 and early 2022, as the City ramped up enforcement against vendors, ICIJ met again with a City Councilmember and the City Attorney and compared Fontana's ordinance to other cities' ordinances. City leaders were again resistant to change.

22.    ICIJ tried to help vendors comply with Fontana's requirements: we helped find liability-insurance brokers, connected vendors to vending-cart manufacturers, provided information on food-truck manufacturers, and worked on building marketplaces modeled on what had worked in the City of San Bernardino. However,

DECLARATION OF JAVIER HERNANDEZ

Fontana's requirements—industrial-level insurance of one to two million dollars, LiveScan background checks, and a prohibition on food trucks—made compliance effectively impossible for the vendors we serve. I noted that 4LEAF, Inc. ("4LEAF")—a business conducting six months of vending enforcement on a service contract—carried the same amount of insurance coverage that the City demanded of individual sidewalk vendors.

23.    In the fall of 2023, hearing that the City intended to pass a more restrictive and punitive ordinance, ICIJ mobilized vendors, wrote letters to the City Council, identified impacted vendors to give public comment, hosted fundraisers to support affected Fontana vendors, conducted phone-banking, and gave media interviews. The City closed council chambers during public comment so the community could not share their opinions. The City also changed meeting times—delaying meetings and then moving them to mid-day—so that working people could not attend. The City fast-tracked the ordinance through an emergency docket.

24.    In June of 2026, in response to the years of harassment and mistreatment of Riverside street vendors by code enforcement officers, ICIJ was invited to meet with Riverside's mayor to discuss how Riverside can support vendors going forward and hold the officers accountable.

### FONTANA'S ORDINANCES AND THE 4LEAF CONTRACT

25.    In 2019, the City enacted Or. 1789, imposing burdensome permit requirements on sidewalk vendors not required of other small businesses—including multi-million-dollar insurance, annual LiveScan background checks, and a requirement that vendors use public sidewalks "at their own risk." The ordinance also purported to authorize the seizure of vendor property. By January 2022, the City began confiscating perishable goods from vendors; confiscations grew from a modest number in 2022 to more than four hundred by 2023.

26.    Mayor Warren publicly displayed hostility toward sidewalk vendors, calling them "illegal" and urging the public not to patronize them.

DECLARATION OF JAVIER HERNANDEZ

27.    In October 2023, the City enacted Ordinance 1925 ("Or. 1925"), which created the "Enforcement Obstruction Consequences" ("EOC") provision making it a criminal misdemeanor—punishable by a fine of up to $1,000 or up to six months' imprisonment—to "obstruct, impede, threaten, follow, intimidate, or interfere in any way" with a city official or code compliance officer. Or. 1925 also added an impoundment provision authorizing any City official to impound a vendor's cart, equipment, food, and goods, with perishable items "immediately dispose[d]" of and other property held thirty to sixty days.

28.    At the same October 2023 meeting, the City approved a contract with 4LEAF to supplement City code enforcement. The contract was signed on November 14, 2023. The City committed to pay $644,498 over six months for citywide coverage six evenings per week. The Scope of Work directed 4LEAF to "confiscate all perishable/non-perishable items" from vendors operating without permits and gave 4LEAF access to the police department for support. Mayor Acquanetta Warren declared at the meeting: "It's time for us to take a stand . . . So now it's time to grab a couple of hammers. Done."

29.    4LEAF officers confront vendors unannounced in organized groups. They wear all-black garb and frequently masks, balaclavas, or hoods—so that only their eyes are visible—and sometimes wear tactical vests. They often tell vendors they are "from the City," without badges or nametags. They tell vendors they have no right to vend and must leave, and provide only a written bulletin—in English—advising vendors to get permits or leave.

30.    When our members have had their vending equipment and food confiscated, 4LEAF officers surround the vendor with their unmarked white vans and prevent them from leaving. If vendors resist, 4LEAF officers threaten to call the police. One vendor member responded, "Why would you call the police, I am not bothering anyone," after which the officer radioed for backup and more vehicles arrived, intimidating the vendor into silence.

DECLARATION OF JAVIER HERNANDEZ

31.    Many of our members speak Spanish, have low literacy, and cannot read the English-language bulletin. 4LEAF officials only explain the vending requirements in English.

## HARM TO ICIJ AS AN ORGANIZATION

32.    The City's and 4LEAF's conduct has directly interfered with ICIJ's core activities and forced ICIJ to divert scarce resources to counteract that interference.

33.    After Or. 1789 was enacted in 2019, ICIJ initially helped vendors comply with the permitting scheme by providing information on insurance, LiveScan, and application steps. Many vendors were discouraged or prevented from applying because the requirements were unaffordable or inaccessible. When ICIJ staff accompanied vendors to City Hall, City staff said no permits were available and there was nothing to do. One ICIJ staff member said, "If there's no process, then what help can we give?" ICIJ's permit assistance and trainings were rendered futile.

34.    The City gave ICIJ members false and inconsistent information, forcing repeat trips to the permit office. An ICIJ staff member who was also a vendor accompanied members to City Hall and the impoundment office. One vendor member was told street vending was not allowed in the City and that food trucks were not allowed either.

35.    Before Or. 1925 was enacted in October 2023, ICIJ's street-vendor work was primarily concentrated in Redlands, Palm Springs, and San Bernardino. When Fontana enacted its new laws, ICIJ was forced to pivot and go all out in Fontana, diverting personnel and staff time away from its core activities in other cities.

36.    Between October and December 2023 alone, ICIJ spent at least 40 to 60 staff hours per week responding to enforcement in Fontana, assigning several staff members daily to reach out to vendors and provide resources. ICIJ's street vendor campaign team grew from one person to five people, requiring substantial time and funding drawn from general operating funds.

DECLARATION OF JAVIER HERNANDEZ

37.    As a result, ICIJ provided fewer services, programs, and resources to other Inland Empire communities than it otherwise would have. ICIJ had to redirect staff time from outreach to parishioners and faith communities to serving Fontana's sidewalk vendors and had to turn down other opportunities to accommodate the Fontana workload.

38.    The City's EOC provision's vagueness prevented ICIJ from providing clear and accurate Know-Your-Rights guidance to its members. Vendors repeatedly asked ICIJ staff what the law meant and what they were allowed to do. We could not provide clear guidance because of the law's vagueness—we would tell them, "We don't know what it means." Rather than give inaccurate KYR trainings, ICIJ was unable to provide guidance in line with its mission. The law's ambiguity impaired ICIJ's KYR trainings and chilled vendor speech and advocacy.

39.    4LEAF's conduct forced ICIJ to invest time it would otherwise have spent on core activities such as immigration representation. ICIJ had to respond to members experiencing intimidation and confusion from 4LEAF encounters, develop community education materials about arrest risks under the EOC provision and how to retrieve confiscated items, and inform members how to distinguish a genuine 4LEAF representative from an imposter to avoid theft.

40.    Organizing and mobilizing became more difficult and dangerous. The City used threats—including threats of deportation—against organizers and targeted the most vocal people, silencing them. Police trucks and dozens of officers were stationed at council meetings. ICIJ had to invest time creating safety plans and working with legal observers, and conduct "vendor buy-outs" to support vendors who lost income to confiscations. Eventually ICIJ no longer had the capacity to help at its prior level.

## HARM TO ICIJ'S ABILITY TO SERVE ITS MEMBERS AND THE LOSS OF VENDORS IN FONTANA

41.    Because the City and 4LEAF expelled nearly all sidewalk vendors from Fontana, attendance at ICIJ's programs sharply declined. ICIJ had to cancel clinics,

DECLARATION OF JAVIER HERNANDEZ

workshops, and outreach events because there were no longer vendors in Fontana to serve.

42. Fear of harsh enforcement, impoundment, intimidation, and harassment discouraged community members from participating in ICIJ activities. The atmosphere of fear and repression impaired ICIJ's ability to reach and serve its members.

43. Vendors were very fearful and started going out to sell less and less. Vendors were forced to relocate to other cities and unincorporated areas of the county to avoid the harassment and repeated destruction of their food and equipment. By the end of 2023, most of the vendors ICIJ served in Fontana had been driven out of the City. As of early 2026, nearly *all* vendors have been expelled from Fontana and only a handful of sidewalk businesses remain.

44. Fontana's unlawful conduct has impeded ICIJ's ability to perform its existing services for the Fontana immigrant community. Instead of hosting general Know-Your-Rights workshops, helping individuals access public benefits and grant opportunities, and running immigration legal clinics, ICIJ had to shift its focus to rapid-response street vendor outreach and support, and redirect staff time from parish and faith-community outreach to Fontana's sidewalk vendors. Fontana's policies have resulted in a direct drain on ICIJ's organizational resources. We have had to mobilize additional staff time to conduct educational outreach and help our members navigate the resulting enforcement environment.

## HARM TO ICIJ'S MEMBERS

45. ICIJ's members have been harmed by the City's and 4LEAF's conduct in multiple ways. Members have been: (1) threatened with prosecution under the EOC provision and thereby silenced; (2) had their food, equipment, and other property seized under the impoundment provisions; and (3) been unable to obtain permits because of the City's onerous and inaccessible permit requirement.

46. One ICIJ vendor member—a pupusa vendor and Fontana resident who began street vending in 2022 after leaving the garment industry—joined ICIJ in 2022

DECLARATION OF JAVIER HERNANDEZ

because of our help applying for permits and helping vendors understand their rights. She went to Fontana City Hall at least three times to obtain permits and was told she could not get one—and that food trucks were not allowed either. She and her vending partner have had their food thrown out over thirty times and their table, chairs, canopy, and grill impounded. They could not afford the retrieval fee. They were threatened with arrest. They stopped vending in Fontana and now sell in unincorporated San Bernardino County, far from their home, though they wish to vend in Fontana where they live.[1]

47.    Another ICIJ vendor member—a beverage vendor and Fontana resident in his mid-50s who began vending in 2020 after a construction-job injury—sells tejuino, raspados, and aguas frescas. About three months after he started vending, a Fontana official told him he could not sell in Fontana but could move across the street into San Bernardino County land. He did, and no longer vends in Fontana. A City Hall employee told him the City does not give permits to food vendors, "not even lunch trucks." The required cart cost more than $17,000 and the insurance requirement exceeded what restaurants he had worked in were required to carry—unaffordable on his limited income. He witnessed code enforcement seize a taco vendor's fresh trompo—approximately eighty pounds of meat—and throw it into trash bags without inspection. He worked fourteen years in a kitchen and never saw comparable enforcement against brick-and-mortar businesses.[2]

48.    When our members' carts are impounded, they often must wait approximately thirty days before recovering their equipment, with no hearing to determine whether the confiscation was valid and no opportunity to be heard. All food is discarded. Personal items—permits, cash, identity documents—are often inside the carts, leaving members without them for at least a month and perhaps indefinitely if they cannot afford the impoundment fine of approximately $230 to $300, plus citations such as a $100 citation. In one case, a vendor member who refused to give his name—fearing

---

[1] Plaintiff A.M.
[2] Plaintiff A.P.

DECLARATION OF JAVIER HERNANDEZ

immigration consequences—could not get his cart back even though officials recognized him and knew which cart was his.

49. Members forced to relocate to other cities or unincorporated areas face higher costs—finding a new place to sell, rebuilding a client base, and applying for new permits—and lost income from time spent organizing and speaking at council meetings. Affected members are still unable to vend in Fontana as of early 2026.

50. The harm caused by the City and 4LEAF is ongoing and significant. ICIJ's mission to serve the sidewalk-vending community—including through direct services—has been frustrated, and ICIJ has been forced to divert scarce resources to counteract that frustration. Absent an injunction, ICIJ and its members will continue to be injured by the City's and 4LEAF's unlawful conduct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 30, 2026, at San Bernardino, California.

_____
Javier Hernandez
Executive Director
Inland Coalition for Immigrant Justice

DECLARATION OF JAVIER HERNANDEZ