RITU MAHAJAN (SBN 252970)
  *rmahajan@publiccounsel.org*
MARK ROSENBAUM (SBN 59940)
  *mrosenbaum@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
  *asavage@publiccounsel.org*
**PUBLIC COUNSEL**
610 South Ardmore Ave.
Los Angeles, CA 90005
Telephone: 213.385.2977

ARIANA E FULLER (SBN 301797)
  *afuller@kslaw.com*
JEANNE A. FUGATE (SBN 236341)
  *jfugate@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: 213.443.4355

MATTHEW T. HEARTNEY (SBN 123516)
  *matthew.heartney@arnoldporter.com*
DANIEL SHIMELL (SBN 300931)
  *daniel.shimell@arnoldporter.com*
**ARNOLD & PORTER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000

*Attorneys for Plaintiffs A.M., A.P., L.C., and Inland Coalition for Immigrant Justice*

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M., A.P., L.C., and INLAND COALITION FOR IMMIGRANT JUSTICE,<br><br>          Plaintiffs,<br><br>     v.<br><br>CITY OF FONTANA and 4LEAF, INC.,<br><br>          Defendants. | Case No. 5:25-CV-2092-SS-SP<br><br>**DECLARATION OF CATHERINE L. BRINKLEY, PH.D., V.M.D.**<br><br>Date: July 31, 2026<br>Time: 2:00 p.m.<br>Courtroom:  2<br><br>Hon. Sunshine S. Sykes |

DECLARATION OF DR. CATHERINE BRINKLEY, PH.D., V.M.D.

I, Catherine Brinkley, Ph.D., V.M.D., declare that:

1.      I have personal knowledge of the matters stated herein, and if called to testify, I could and would do so competently.

2.      I submit this declaration in support of Plaintiffs' Motion for Preliminary Injunction. I offer my expert opinions regarding the impact of street-food vending regulations on food access, food justice, public health, and community development.

## I.      EDUCATION AND PROFESSIONAL EXPERIENCE

3.      I am an Associate Professor in Human Ecology, Community and Regional Development, at the University of California, Davis, College of Agricultural and Environmental Sciences. I lead the Equity, Land, and Food Systems (ELFS) laboratory, which uses spatial analytics, comparative policy analysis, qualitative field methods, and quantitative analysis to investigate disparities in health, policy and environmental outcomes.

4.      I have a Doctor of Philosophy (Ph.D.) in City and Regional Planning and a Doctor of Veterinary Medicine (V.M.D.) from the University of Pennsylvania. I also graduated from Göteborg University, Sweden with a Masters of Science (M.S.) in Virology, and from Wellesley College with a Bachelor of Arts in Biology and Russian Area Studies. My curriculum vitae is attached as Exhibit A.

5.      I am a recipient of a National Science Foundation CAREER Award (2018– 2023), an American Fulbright Fellowship (2005), and a Watson Fellowship (2004). My research has been funded by the National Science Foundation; the U.S. Department of Agriculture; the Pew Charitable Trusts; the National Institutes of Health/National Institute of Environmental Health Sciences; and several California state agencies. My scholarship is used internationally by the United Nations Food and Agriculture Organization and by local communities to guide plans and policies.

6.      My interdisciplinary training spans public health, urban and regional planning, veterinary medicine, and the life sciences. My research focuses on health equity, One Health (the interconnection of human, animal, and environmental health), food systems planning, local governance, and sustainable community development.

DECLARATION OF DR. CATHERINE BRINKLEY, PH.D., V.M.D.

7.     I have authored or co-authored peer-reviewed publications and policy briefs directly relevant to the issues raised by this motion, including studies on curbside produce vending, sidewalk-food vending as a public-health intervention, municipal regulatory compliance with the Safe Sidewalk Vending Act (Gov. Code §§ 51036–51039) ("SB 946"), and food justice. A selected list of relevant publications is attached as Exhibit B.

8.     I have not previously testified as an expert in litigation.

## II.     MATERIALS CONSIDERED

9.     In forming the opinions below, I reviewed and relied on applicable California statutes, including SB 946; city and county municipal codes; the peer-reviewed literature and policy briefs identified in Exhibit B; and my prior published research.

## III.     METHODOLOGY

10.     My opinions are based on methodologies generally accepted in food-systems planning, public-health research, and urban-planning scholarship, including:

(a) Comparative policy analysis of municipal codes and sidewalk-vending ordinances across California jurisdictions;

(b) Spatial analysis of food access, vendor locations, and regulatory environments;

(c) Field-based interviews with curbside vendors;

(d) Price and variety comparisons between mobile vendors and conventional retail outlets; and

(e) Systematic review and synthesis of peer-reviewed public-health and planning literature.

11.     These methods are standard in my fields of expertise and have been applied in my peer-reviewed publications cited herein.

## IV.     OPINIONS AND SUMMARY OF FINDINGS

12.     Based on my research and the peer-reviewed literature, sidewalk-food vending is a low-cost public-health intervention. Supporting vendors improves food access and community health, whereas overly restrictive regulations, expensive fees, and harsh

DECLARATION OF DR. CATHERINE BRINKLEY, PH.D., V.M.D.

enforcement undermine vendors' ability to operate safely and reduce the health benefits they provide to neighborhoods.

***Opinion 1: Sidewalk-food vending functions as a low-cost public-health intervention.***

13.    Sidewalk-food vending—including curbside produce vending and mobile food operations selling fresh fruits, vegetables, and prepared foods—is a low-cost public-health intervention because it increases access to affordable, culturally relevant, healthy food, especially in communities and neighborhoods that otherwise lack adequate food retail infrastructure. This intervention is especially useful in neighborhoods that lack a grocery store and/or areas in which more "eyes on the street" can improve safety and the vibrancy of the community.

14.    My 2013 study of curbside produce vendors in low-income Philadelphia, for example,  found that produce trucks offered significantly lower prices on common fruits and vegetables than nearby conventional retailers, while providing a variety of produce comparable to limited-assortment grocery stores. Because sidewalk-food vendors require little start-up capital and do not need commercial real estate, they are able to serve schools and neighborhoods which otherwise have limited access to healthful foods while offering entrepreneurial pathways to establish brick-and-mortar businesses.

15.    Policies that encourage sidewalk-food vending are a low-cost public-health intervention that can improve dietary outcomes at the neighborhood level and boost economic development in the neighborhood.

***Opinion 2: Sidewalk-food vending particularly benefits low-income communities and communities with poor access to healthy food.***

16.    In particular, Sidewalk-food vending benefits low-income communities and communities experiencing food insecurity or limited access to healthy food. Mobile vendors can serve areas that lack grocery stores or other full-service food retail, effectively reducing so-called "food-desert" conditions.

17.    Research demonstrates that customers using SNAP/EBT benefits are more likely to shop at sidewalk vendors than at any other produce source, and spend more on

fruits and vegetables when doing so.  Sidewalk-food vending also promotes economic development by providing low-barrier entrepreneurial opportunities for micro-entrepreneurs with limited access to capital, contributing to community wealth-building in underserved areas.

***Opinion 3: Overly restrictive regulations that go beyond genuine public-health concerns impede food access and exacerbate health disparities.***

18.    Municipal sidewalk-food vending regulations not directly related to genuine health, safety, or welfare concerns—such as onerous limits on operating hours, locations, equipment, or requirements for the consent of adjacent businesses—can restrict food access, increase informal and unpermitted vending, expose vendors to exploitation and unsafe conditions, and worsen health disparities in the communities they serve.

19.    My research, conducted in 2020, has found that 85% of California cities and 75% of counties maintain sidewalk-food vending regulations that go beyond what public-health rationales can justify. These include labor-law restrictions, time-of-day limitations, adjacency requirements, permit requirements, and equipment mandates with no demonstrated connection to safety or consumer welfare.

20.    When vendors cannot comply with non-health-based regulatory barriers, the result is not the elimination of vending but rather its displacement into unpermitted, unregulated activity—where vendors lack legal protections and suffer from economic precarity.

***Opinion 4: Restrictions on time, location, equipment, permitting, and adjacent-business permission should be evaluated for their actual connection to public-health objectives.***

21.    Any municipal restriction on sidewalk-food vending—including restrictions on operating hours, location, equipment, permitting requirements, or permission from adjacent brick-and-mortar businesses—should be objectively evaluated for its actual, evidence-based connection to public-health objectives such as food safety, sanitation, consumer protection,

DECLARATION OF DR. CATHERINE BRINKLEY, PH.D., V.M.D.

and neighborhood safety. Considerations should align with those for brick and mortar businesses.

22. SB 946 reflects this principle by forbidding California municipalities from regulating sidewalk vending unless there is an objective health, safety, or welfare concern. My research has demonstrated that a substantial majority of local ordinances failed to meet this standard in 2020, shortly after SB 946 took effect in 2019.

**Opinion 5: Available research does not support treating sidewalk-food vendors as categorically more dangerous than fixed food establishments or food trucks.**

23. Based on my review of the empirical literature, it is my opinion that available research does not support the claim that sidewalk-food vendors present categorically greater food-safety risks than fixed food-service establishments or food trucks. Mobile food operations exhibit risk attributes that are statistically comparable to those of fixed food facilities.

24. The public-health literature has often overemphasized food-safety risks associated with sidewalk food without adequate empirical basis. In reality, enforcement data indicate that regulatory action against mobile vendors focuses overwhelmingly on zoning violations rather than genuine health-code infractions. In one comprehensive study of 97,773 violations issued to mobile food vendors in Manhattan over five years, less than 2% were health-code violations.

25. To the extent that a municipality's regulatory scheme treats sidewalk-food vendors as inherently more hazardous than comparable food-service operations without empirical justification, that differential treatment is not supported by the available public-health evidence.

**Opinion 6: Properly tailored regulation can protect food safety while preserving the public-health and community benefits of vending.**

26. Sidewalk-food vending regulations can protect legitimate food-safety and sanitation interests while preserving—and promoting—the public-health and community-development benefits of vending. These goals are not mutually exclusive.

DECLARATION OF DR. CATHERINE BRINKLEY, PH.D., V.M.D.

27.     Policy reforms or judicial relief that reduce non-health-based barriers to sidewalk-food vending can measurably serve public-health and community-equity goals, because the evidence shows that such barriers impede food access, displace vendors into unregulated activity, and exacerbate health disparities.

28.     Specifically, where a municipal ordinance or enforcement practice restricts sidewalk-food vending based on rationales that are not connected to genuine public-health concerns, the removal or enjoining of those restrictions would be expected to: (a) increase the availability of affordable produce and prepared food in underserved areas; (b) allow existing vendors to operate within a regulated, inspectable framework; (c) reduce the vulnerability of vendors and their customers; and (d) advance the public interest in equitable access to healthy food.

## V.     EXHIBITS

29.     The following exhibits are attached hereto and incorporated by reference:

**Exhibit A:** Curriculum Vitae of Catherine Brinkley, Ph.D., V.M.D.

**Exhibit B:** Selected Publications

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 26, 2026, at Davis, California.

_____

Catherine Brinkley, Ph.D., V.M.D.

Associate Professor, Human Ecology

University of California, Davis

DECLARATION OF DR. CATHERINE BRINKLEY, PH.D., V.M.D.