RITU MAHAJAN (SBN 252970)
  *rmahajan@publiccounsel.org*
MARK ROSENBAUM (SBN 59940)
  *mrosenbaum@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
  *asavage@publiccounsel.org*
**PUBLIC COUNSEL**
610 South Ardmore Ave.
Los Angeles, CA 90005
Telephone: 213.385.2977

ARIANA E FULLER (SBN 301797)
  *afuller@kslaw.com*
JEANNE A. FUGATE (SBN 236341)
  *jfugate@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: 213.443.4355

MATTHEW T. HEARTNEY (SBN 123516)
  *matthew.heartney@arnoldporter.com*
DANIEL SHIMELL (SBN 300931)
  *daniel.shimell@arnoldporter.com*
**ARNOLD & PORTER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000

*Attorneys for Plaintiffs A.M., A.P., L.C., and*
*Inland Coalition for Immigrant Justice*

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M., A.P., L.C., and INLAND COALITION FOR IMMIGRANT JUSTICE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FONTANA and 4LEAF, INC.,<br><br>Defendants. | Case No. 5:25-CV-2092-SS-SP<br><br>**DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO**<br><br>Date: July 31, 2026<br>Time: 2:00 p.m.<br>Courtroom:  2<br>Hon. Sunshine S. Sykes |

I, Maria Elena Durazo, declare:

1.    I have personal knowledge of the matters stated herein, and if called to testify, I could and would do so competently.

2.    I submit this declaration in support of Plaintiffs' Motion for Preliminary Injunction. I offer my testimony, based on my legislative experience and my firsthand knowledge of California's statutory framework governing sidewalk vending, regarding the purpose and design of that framework, and how the policies and practices of the City of Fontana ("the City") and its contractor 4LEAF, Inc. ("4LEAF'") conflict with it.

## I.    Background and Qualifications

3.    I am a Member of the California State Senate. where I represent the 26th Senate District, which includes Central Los Angeles, Northeast Los Angeles, East Los Angeles, and the City of Vernon. The neighborhoods I represent, among them Boyle Heights, Pico-Union, Westlake-MacArthur Park, Koreatown, Highland Park, and East Los Angeles, are home to large immigrant and working-class communities in which sidewalk vending is a longstanding source of livelihood, food access, and cultural life.

4.    In the Senate, I chair the Local Government Committee, and I serve as a member of the Budget and Fiscal Review Committee, the Judiciary Committee, and the Labor, Public Employment and Retirement Committee. My role as Chair of the Local Government Committee has given me direct experience with the legal relationship between statewide standards adopted by the Legislature and the ordinances and enforcement practices of cities and counties.

5.    My commitment to immigrant workers and to low-wage entrepreneurs did not begin in the Legislature. I was born to migrant farmworker parents, and as a child I traveled with my family following the crops across California and Oregon, experiencing firsthand the exploitative conditions that migrant laborers endure. That experience shaped a lifetime of work on behalf of immigrant and low-paid workers before and during my service in the Legislature.

6.    I have made the protection of immigrant entrepreneurs and sidewalk

DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO

vendors a central focus of my legislative work. In 2025, I authored Senate Bill 635, the Street Vendor Protection Act, which Governor Newsom signed into law (Chapter 463, Statutes of 2025). I have also authored and advanced numerous measures to protect working families and immigrants, including eleven bills signed into law in a single legislative session focused on those communities and I have publicly pressed to restore and protect health coverage and other services for immigrant Californians and to expand free tax-preparation services for low-income families. In 2021, I secured $5 million in our State Budget for New Economics for Women (NEW) to create a customized mobile small business training program, which included micro-grants, on-the-street community outreach, and technical assistance to immigrant women and limited English proficient entrepreneurs who face significant barriers to business technology and resources to help navigate the impact of COVID-19 and to create a pathway toward growth and economic mobility. As vice chair and then chair of the California Latino Legislative Caucus, member of the Senate Budget Subcommittee 4, and chair of the Senate Budget Subcommittee 5, I prioritized funding for Social Entrepreneurs for Economic Development ("SEED") which has received millions of dollars in funding from our State Budget. Established in 2020, the SEED program provides entrepreneurial training, microgrants, technical assistance and support, and outreach and education to individuals with limited English proficiency or who are undocumented to establish or maintain a small business in California. My work on these measures reflects a consistent legislative purpose: to bring immigrant micro-entrepreneurs into the formal economy and to protect them from being driven back into the shadows.

## II.    Scope and Purpose of This Declaration

7.    The purpose of this declaration is to explain, from the vantage point of a legislator who helped create the legal framework for sidewalk vending in California, what the state's sidewalk vending laws intended to accomplish and why the City of Fontana's challenged ordinances and enforcement practices are contrary to it. My opinions rest on the public legislative record, on the express findings and declarations contained in the statutes

DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO

themselves, and as to SB 635 on my firsthand knowledge as the bill's author. I do not offer legal conclusions on the ultimate questions of preemption or constitutionality, which are for the Court; I offer testimony about legislative purpose and about how the City's conduct maps onto, and frustrates. that purpose.

### III.   Materials Considered

8.     In forming the opinions below, I reviewed and relied upon the following: the Second Amended Complaint filed in this action and the City ordinances it describes, including Fontana Municipal Code provisions adopted by Ordinances 1789 and 1925: the text and legislative findings of SB 946 (the Safe Sidewalk Vending Act), SB 972, and SB 635; the declarations of sidewalk vendors and Inland Coalition for Immigrant Justice ("ICIJ") submitted in this case; and my own experience as a legislator and as the author of SB 635. As in any matter of this kind, I have accepted the factual accounts in the declarations as true for purposes of forming my opinions, and I reserve the right to supplement these opinions should additional information become available.

### IV.   California's Three-Part Statewide Framework and Its Purpose

9.     Over the past several years, the Legislature has acted three times-in 2018, 2022, and 2025-to build a single, coherent statewide policy to decriminalize sidewalk vending, to bring vendors into the formal economy as legitimate micro-businesses, and to stop local governments from using permitting and enforcement tools to exclude, punish, or endanger them. Each statute built on the one before it, and together they reflect a deliberate and escalating legislative judgment that vendors, who are disproportionately immigrants and low-income workers, deserve protection rather than suppression.

#### A.     SB 946 (2018): The Safe Sidewalk Vending Act

10.     In 2018, the Legislature enacted SB 946, the Safe Sidewalk Vending Act, which became effective January 1, 2019. The express intent of the Legislature was "to promote entrepreneurship and support immigrant and low-income communities." The Legislature found that sidewalk vending "contributes to a safe and dynamic public space," and that "the safety and welfare of the general public is promoted by encouraging local

DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO

authorities to support and properly regulate sidewalk vending," and by "prohibiting criminal penalties for violations of sidewalk vending ordinances and regulations."

11.    SB 946 accomplished three core objectives. It decriminalized sidewalk vending statewide; it established a comprehensive, uniform framework governing how local governments may regulate vendors; and it strictly limited the penalties localities may impose, providing that violations are punishable only by a prescribed range of civil administrative fines. The statute provides that "[a] local authority shall not regulate sidewalk vendors except in accordance with" its terms, and that any local restriction must be "directly related to an objective health, safety, or welfare concern" supported by observable facts rather than speculation, generalized fears, or conclusory assertions. Critically, the Legislature foreclosed two rationales entirely: a local government may never justify restrictions by invoking "perceived community animus" or the "economic competition" between vendors and other businesses.

12.    The Legislature drew these lines because it understood the history it was correcting. For decades, cities had criminalized vending, and misdemeanor enforcement had fallen hardest on immigrant vendors--often at the urging of competing brick-and-mortar businesses and frequently driven by racial, ethnic, or immigration-based animus. SB 946 was the Legislature's response to that history: it replaced criminalization with a civil, non-punitive system designed to protect vendors and to remove the unnecessary barriers that block aspiring entrepreneurs from accessing the formal economy, harm California's economy, and disrupt the regulation of business.

**B.    *SB 972 (2022): Bringing Sidewalk Food Vendors Into the Retail Food Code***

13.    In 2022, the Legislature enacted SB 972 (a bill that I co-authored) to close a gap that remained after SB 946. After decriminalization, many food vendors still could not obtain health permits because the Retail Food Code recognized only "Mobile Food Operations," food trucks whose infrastructure requirements far exceeded what a sidewalk cart could provide. SB 972 created a new category, the "compact mobile food operation" (CMFO), defined as a food operation conducted from a pushcart, stand, display, pedal-

DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO

driven cart, wagon, or other nonmotorized conveyance, and placed sidewalk food vending within a uniform statewide public-health framework.

14. SB 972 made two further choices that matter here. It vested enforcement of food-safety standards exclusively in the California Department of Public Health and its designated local health agencies, in San Bernardino County, the Department of Environmental Health Services, rather than in cities or their agents. And, like SB 946, it limited enforcement to civil administrative fines and prohibited criminal penalties for CMFO violations, providing that a violation "shall not be punishable as an infraction or misdemeanor." The Legislature declared its intent "to occupy the whole field of health and sanitation standards for retail food facilities," a category that includes sidewalk vendors. The purpose, again, was to end the discriminatory treatment of sidewalk food vendors and to enable their full participation in the formal economy.

### C.    SB 635 (2025): The Street Vendor Protection Act

15. In 2025, I authored SB 635, the Street Vendor Protection Act, which Governor Newsom signed into law and which took effect January I, 2026. SB 635 addressed practices that specifically target street vendors, many of whom are immigrant entrepreneurs taking their first steps toward economic independence, by stopping local permitting and enforcement systems from being turned into instruments of surveillance and immigration enforcement.

16. SB 635 contains several protections directly relevant to this case. It prohibits a local authority from inquiring into or collecting information about an applicant's immigration or citizenship status or place of birth, and it prohibits requiring completion of LiveScan fingerprinting or submission of fingerprints or a background check as part of a vending application. It also requires any local authority that previously collected such information to destroy it. It bars local authorities and enforcement agencies from voluntarily providing immigration enforcement agents access to vendors' personally identifiable information absent a subpoena or judicial warrant.

17. The author's statement I submitted for SB 635 captures the bill's purpose:

6

street vendors "are pivotal to California's culture and economy," and "[n]ow more than ever, California must unite to uplift and empower micro-businesses across the State." As I explained when the bill became law, "Street vendors are a cornerstone of our communities and contribute significantly to California's vibrant culture and economy," and the law "ensures that these hardworking entrepreneurs can operate their businesses without fear that their personal information will be turned over to immigration authorities." SB 635 was co-sponsored by the same community organizations that helped pass SB 946 and SB 972, including the ICIJ, a Plaintiff in this action and was supported by more than sixty organizations.

## V.    Opinions

***Opinion 1: California's sidewalk-vending laws reflect a deliberate legislative judgment to decriminalize vending and to protect and promote it as a form of entrepreneurship in immigrant and low-income communities.***

18.    It is my opinion, based on the statutory text and my legislative experience, that California's sidewalk-vending laws embody an intentional state policy choice to treat vending as a legitimate and valuable economic activity rather than a crime. In SB 946, the Legislature expressly found that sidewalk vending provides important entrepreneurship and economic-development opportunities to low-income and immigrant communities, increases access to culturally significant food and merchandise, and that the public's safety and welfare is promoted by prohibiting criminal penalties for vending violations. Taken together, SB 946, SB 972, and SB 635 reflect a single, continuous legislative purpose: to protect vendors, to remove criminal and quasi-criminal barriers, and to invite immigrant micro-entrepreneurs into the formal economy.

***Opinion 2: The Legislature specifically sought to prevent criminalization, property seizures, and exclusionary permitting.***

19.    It is my opinion that the conduct the Legislature most directly intended to prohibit was the use of criminal sanctions, confiscation of vendors' goods, and prohibitive permitting demands as tools to push vendors out of public space. The remedy the

DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO

Legislature chose was deliberately narrow on the enforcement side: civil administrative fines, capped by statute, and in the food context penalties tied to the cost of a permit. The Legislature did not authorize cities to seize and destroy vendors equipment and merchandise as a punitive enforcement tool, and it did not authorize cities to impose permitting conditions, such as multi-million-dollar insurance requirements or background checks, untethered to any objective health, safety, or welfare concern.

### *Opinion 3: Fontana's challenged ordinances and enforcement practices do what the legislature forbade and frustrate the statutes' purpose.*

20.    It is my opinion that Fontana's ordinances and enforcement campaign do precisely what the Legislature acted to prevent. The City's reliance on criminal misdemeanor enforcement, its seizure and destruction of vendors' food and equipment, its imposition of a $1-2 million insurance requirement. and its previous LiveScan background check requirements, are tools the Legislature removed from local regulation. These measures are not directly related to any objective, evidence-based health. safety, or welfare concern; they operate instead as barriers to lawful vending of the kind the Legislature foreclosed. While the LiveScan requirement is now removed from Fontana's code, this was only done so to comply with the SB 635, and demonstrates the animus behind Fontana's regulation of sidewalk vending.

### *Opinion 4: Fontana's grounding of its restrictions in animus and economic competition is exactly what the Legislature placed outside the bounds of lawful local regulation.*

21.    The Legislature specifically provided that --perceived "community animus" and "economic competition" between vendors and other businesses can never qualify as an objective basis for restricting vendors. In my opinion, Fontana's stated motivations fall squarely within that prohibition. The record describes local restaurants complaining of competition and rallying the City against vendors, and City officials, including the Mayor, publicly labeling vendors "illegal," urging residents not to patronize them, and speaking of efforts to "grab some hammers" and get rid of vendors. This is the animus and

DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO

competition-driven suppression the Legislature expressly outlawed.

### Opinion 5: Treating vendors as "illegal" and wielding threats inverts the Legislature's recognition of vendors as legitimate micro-entrepreneurs.

22.    A unifying premise of all three statutes is that sidewalk vendors are legitimate participants in California's economy and culture, not a problem to be eradicated. The conduct alleged by Fontana and its agents contravenes our Legislature's intent. The record describes the City and its agents using threats against vendors and organizers and deploying a heavy police presence to intimidate the community. In my view, this is precisely the misuse of local power that motivated me to author SB 635.

### Opinion 6: Fontana's conduct produces exactly the harms the Legislature predicted, and enjoining it would vindicate the statewide framework and the public interest.

23.    The Legislature understood that when vendors cannot comply with non-health-based barriers, the result is not the elimination of vending but its displacement into other jurisdictions and into precarious, unprotected activity, and the loss to communities of an affordable, culturally significant food source. That is precisely what happened in Fontana. The vendor declarations describe being told to relocate across the street onto unincorporated county land, and being forced to abandon vending in Fontana and move farther from home because the City's rules were too restrictive to permit lawful operation. ICIJ staff describe that, by the end of 2023, most of the vendors they worked with in Fontana had stopped vending because repeated confiscations made their businesses impossible to sustain. These are not incidental effects: they are the harms the Legislature foresaw and legislated against.

24.    In my opinion, relief that halts the City's criminalization of sidewalk vendors, seizures and impoundments, unjustified permit conditions, and privatized enforcement would restore the civil and supportive framework the State adopted, and would serve the public interest the Legislature identified in protecting immigrant and low-income micro-entrepreneurs.

DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO

## VI.    Conclusion

25.    For the reasons stated above, it is my opinion that the City of Fontana's challenged ordinances and enforcement practices, and 4LEAF's role in carrying them out are contrary to the purpose and design of SB 946, SB 972, and SB 635, and inflict the very harms those statutes were enacted to prevent. The State of California made a clear and repeated policy choice to decriminalize sidewalk vending, to welcome vendors into the formal economy as legitimate micro-businesses, and to shield them from punitive and discriminatory local treatment, including the use of permitting and enforcement systems as tools of exclusion and immigration enforcement. Fontana's conduct stands in direct opposition to state law.

26.    My opinions are based on the totality of the statutory text, legislative findings, the materials I reviewed, and my decades of experience with these communities and with the legislative process, and they are not contingent on any single fact. I reserve the right to supplement or amend these opinions should additional facts or information become available.

## VII.  Exhibit

27.    The following exhibit is attached hereto and incorporated by reference:

**Exhibit A:** Biography/ Curriculum Vitae of Senator Maria Elena Durazo.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on June 30, 2026, at Sacramento, California.

_____

Maria Elena Durazo

Member, California State Senate, 26th Senate District

10

DECLARATION OF CALIFORNIA SENATOR MARIA ELENA DURAZO