RITU MAHAJAN (SBN 252970)[1]
 *rmahajan@publiccounsel.org*
MARK ROSENBAUM (SBN 59940)
 *mrosenbaum@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
 *asavage@publiccounsel.org*
**PUBLIC COUNSEL**
610 South Ardmore Ave.
Los Angeles, CA 90005
Telephone: 213.385.2977

ARIANA E. FULLER (SBN 301797)
 *afuller@kslaw.com*
JEANNE A. FUGATE (SBN 236341)
 *jfugate@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: 213.443.4355

MATTHEW T. HEARTNEY (SBN 123516)
*matthew.heartney@arnoldporter.com*
DANIEL SHIMELL (SBN 300931)
*daniel.shimell@arnoldporter.com*
**ARNOLD & PORTER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000

*Attorneys for Plaintiffs A.M., A.P., L.C., and
Inland Coalition for Immigrant Justice*

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.M., A.P., L.C., and INLAND COALITION FOR IMMIGRANT JUSTICE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FONTANA and 4LEAF, INC.,<br><br>Defendants. | Case No. 5:25-CV-2092-SS-SP<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [96]**<br><br>*[Filed concurrently with: Declaration of Ritu Mahajan; Response to Defendants' Objections to Evidence]*<br><br>Date: July 31, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2<br><br>Hon. Sunshine S. Sykes |

---

[1] Due to space limitations, all attorneys of record for Plaintiffs are listed in full in the signature of this document.

## I.   <u>INTRODUCTION</u>

The City's and 4LEAF's oppositions demonstrate that the core facts underlying Plaintiffs' constitutional and preemption claims are not in dispute. *First*, pursuant to the challenged impoundment provisions, the City's agents seize and destroy vendors' property without obtaining warrants or even invoking, let alone establishing, any exception to the warrant requirement. *Second*, the City and 4LEAF do not provide vendors pre-deprivation notice or opportunity to be heard before seizing—and, in many cases, summarily destroying—their property. *Third*, even though State law prohibits localities from punishing vending violations by anything other than civil administrative fines, the City and 4LEAF respond to such violations by impounding vendors' property.

Unable to contest Plaintiffs' evidence, Defendants resort to relitigating Plaintiffs' standing and, notwithstanding that constitutional violations are by definition irreparable, attacking the timing of Plaintiffs' motion. On the merits, Defendants ignore not only controlling authority but also the plain text of the ordinances they seek to defend. The Court should grant the preliminary injunction.

## II.   <u>THE COURT ALREADY DETERMINED PLAINTIFFS HAVE STANDING</u>

At the preliminary injunction stage, "plaintiffs may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their preliminary-injunction motion to meet their burden" of demonstrating standing. *Cal. Trucking Assoc. v. Bonta*, 996 F.3d 644, 652-53 (9th Cir. 2021). As this Court has already determined, Plaintiffs have standing based on the allegations in the Second Amended Complaint ("SAC"), May 18 Order at 5–7, which Plaintiffs' supporting evidence substantiates.

*First*, Plaintiff ICIJ has organizational standing where, as here, it "sue[s] on [its] own behalf for injuries [it has] sustained." *FDA v. Alliance For Hippocratic Med.*, 602 U.S. 367, 393 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Defendants' policies and practices have "perceptibly impair[ed]" ICIJ's ability to carry out its "core business activities," *Hippocratic Med.*, 602 U.S. 367 at 395, by expelling nearly all sidewalk vendors from the City of Fontana. *See, e.g.*, Hernandez Decl. ¶¶ 41–44. As this

Court has acknowledged, Defendants have "prevent[ed] ICIJ from being able to continue their business activities in a meaningful manner." May 18 Order at 6.

Defendants have also actively frustrated ICIJ's ability to provide permit assistance, trainings, and other direct services. Hernandez Decl. ¶¶ 33–34, 37–38. The City's suggestion that ICIJ could "simply move its clinics, workshops, and outreach events to a location outside of Fontana," Opp. 5, misses the point. The City obstructed ICIJ's efforts to provide advice by imposing impossible and confusing requirements, even telling ICIJ and vendors that "no permits were available and that there was nothing to do." *Id.* ¶ 33. The vague Enforcement Obstruction Consequences ("EOC") Provision further chilled ICIJ's efforts to provide guidance or assistance in line with its mission. *Id.* ¶ 38.

*Second*, ICIJ has associational standing because "its members would otherwise have standing to sue in their own right." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).[2] As the Court recognized in its May 18 Order, the SAC includes facts that "A.M., L.C., and other individual ICIJ members have been directly threatened by 4LEAF personnel with arrest and jail under [Ordinance 1925]." May 18 Order at 6; *see also* A.M. Decl. ¶ 4. Plaintiffs have self-censored because of their well-founded fears that City and 4LEAF agents would enforce the EOC Provision against them based on agents' explicit threats. A.M. Decl. ¶ 4; SAC ¶¶ 104–07. For purposes of standing, Plaintiffs are not required to show they were denied a permit or sought exemption under FMC § 15-826, where "applying for a permit would have been futile." *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002) (citing *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996)). When ICIJ members, such as A.M., attempted to obtain vending permits, City officials repeatedly stated they could not obtain them. A.M. Decl. ¶ 6; Hernandez Decl. ¶ 33; SAC ¶ 168.

The City's redressability arguments also fail. The onerous and preempted permitting provisions and threat of impoundment are instruments used by the City to discourage and limit sidewalk vending. Enjoining the City's ability to use these unlawful enforcement tools

---

[2] Defendants do not challenge the other elements of associational standing.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [96]

will allow ICIJ's members to resume vending in Fontana.

## III. THE IMPOUNDMENT PROVISIONS VIOLATE THE FOURTH AMENDMENT

The City does not—and cannot—dispute that its challenged impoundment provisions purport to authorize warrantless seizures without requiring agents to determine whether an exception applies. Instead, it argues that because those seizures could be permissible under certain hypothetical circumstances, the challenged provisions are not facially unconstitutional. *See* Opp. 16. That is not the law. The Supreme Court considered and rejected this precise argument in *City of Los Angeles v. Patel*, 576 U.S. 409, 417–19 (2015) (rejecting contention "that facial challenges to statutes authorizing warrantless searches must fail because such searches will never be unconstitutional in all applications"). As the Court explained: "[W]hen addressing a facial challenge to a statute authorizing warrantless searches, the proper focus of the constitutional inquiry is *searches that the law actually authorizes*, not those for which it is irrelevant." *Id.* at 418 (emphasis added). That is because a warrantless seizure that is justified by an exception "proceed[s] irrespective of whether it is authorized by statute." *Id.* at 418–19. Put differently, facial challenges consider only instances in which "the challenged law *alone* [] authorizes the government's conduct," *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1119 n.7 (9th Cir. 2021) (emphasis added). Conduct "independently authorized by a legal provision or doctrine other than the challenged law"—such as a warrant exception not incorporated into Fontana's impoundment provisions—is "not relevant" in determining facial constitutionality. *Id.*

The relevant question is whether the City may seize and summarily destroy vendors' property pursuant to the challenged provisions themselves, *i.e.*, based solely on alleged violations of the City's sidewalk vending regulations. It may not. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1029 (9th Cir. 2012) ("Violation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property.").[3]

---

[3] The City does not contest Plaintiffs' as-applied claims on the merits, thereby conceding that Plaintiffs are likely to succeed on the merits. Further, Plaintiffs are likely to succeed on their as-applied claims for the reasons set forth in Plaintiffs' Motion for Preliminary Injunction (Dkt. 96 at 17-18, 20), Plaintiffs'

4

## IV.   <u>THE IMPOUNDMENT PROVISIONS VIOLATE DUE PROCESS</u>

Defendants do not deny that the challenged impoundment provisions (i) provide for *no pre-deprivation process* in the form of notice or a hearing, leaving vendors to pursue (ii) a post-deprivation appeal that obviously cannot return property summarily destroyed by the City's agents. Instead, they claim that if the challenged provisions would not violate due process in even a single "set of circumstances," a facial challenge must fail. Defendants nowhere identify a specific set of circumstances under which an individual seizure may be justified under the *Mathews* balancing test. Defendants also misunderstand the systemic nature of a facial due process challenge, wherein a court makes categorical determinations about the private interests at stake, the system-wide risk of erroneous deprivation inherent in the statutory scheme, and the government's interests in maintaining that scheme. *See Patel*, 576 U.S. at 415 (facial challenges are "not categorically barred or especially disfavored"); *id.* at 420–21 (facial challenges may succeed where statutory scheme itself authorizes unconstitutional procedures). In *Patel*, for example, the Supreme Court held facially invalid a statute that categorically denied the subject of a search the opportunity for pre-compliance review before a neutral decision-maker, finding the design of the statutory scheme constitutionally deficient. *Id.* at 420–21.

So too here. "[T]he City does not even attempt to argue that [the challenged impoundment provisions] afford[]" vendors "any [pre-deprivation process] . . . whatsoever." *Patel*, 576 U.S. at 421. While a limited number of "'extraordinary situations' may justify postponing notice and opportunity for a hearing" until after a seizure, such situations "must be truly unusual"—for example, where immediate seizure is "directly necessary to secure an important governmental or general public interest." *Fuentes v. Shevin*, 407 U.S. 67, 90 (1972). Fontana purports to have two such interests: (i) its "[i]mplicit . . . ability to prohibit individuals from vending in violation of [its] requirements," and (ii) its "general interest in abating unlawful public nuisances." As to (i), SB 946 prohibits Fontana and other

currently pending Oppositions to the City's Motion to Dismiss (Dkt. 103 at 12, 19) and 4LEAF's Motion to Dismiss (Dkt. 102), and Plaintiffs' Opposition to the City's Motion to Strike (Dkt. 79 at 9-19).

municipalities from penalizing violations of local vending ordinances by any means other than a prescribed range of administrative fines. Gov. Code § 51039(a)(1). And as to (ii), this Court should reject Fontana's post-hoc attempt to circumvent State law by recharacterizing sidewalk vending as unlawful "personal property storage," then defining such "storage" as a public nuisance punishable by infraction or misdemeanor. *See* Or. 1968 (2025), codified at FMC § 16-155; FMC § 1-7. The City's attempt to classify sidewalk vending as a public nuisance plainly contravenes SB 946's prohibition on punishing such violations "as an infraction or misdemeanor." Gov. Code § 51039(d)(1).

Finally, Fontana's constitutionally-deficient post-deprivation appeal process does not cure its failure to provide pre-deprivation notice and opportunity to be heard. The City's bare assertion that "a successful appellant will have seized items returned" is no answer to Plaintiffs' extensive evidence that City and 4LEAF agents summarily destroy vendors' perishable goods and damage their other property during impoundment. *Compare* A.M. Decl., ¶ 8, Dkt. 96-9 with Opp. at 14. Nor does Fontana's conclusory characterization of its city manager as a "neutral decisionmaker" eliminate the unconstitutionally high risk of bias inherent in designating that official—who oversees enforcement of its sidewalk vending regulations—as the sole adjudicator of appeals arising from that same enforcement. *Id.*; *see* FMC §§ 2-72 ("The city manager shall enforce all laws and ordinances of the city . . . ."), 2-73 ("The city manager shall have the authority to control, order and give directions to all heads of departments and to subordinate officers and employees of the city . . . .").

## V.  **THE EOC PROVISION VIOLATES THE FIRST AMENDMENT**

Defendants' own cases confirm the EOC Provision's overbreadth. In *City of Houston v. Hill*—which Fontana cites for the narrow proposition that a municipality is "not powerless to punish physical obstruction of police action," Opp. 9—the Supreme Court in fact struck down an ordinance whose language parallels the language challenged here. *Compare Hill*, 482 U.S. 451, 466 (1987) (holding unconstitutionally overbroad an ordinance making it unlawful to "in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty") *with* Or. 1925, FMC § 1-14 (making it unlawful to "obstruct, impede,

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [96]

threaten, follow, intimidate, or interfere in any way with any city official . . . engaged in the performance of their respective duties, job description, and/or enforcement authority ").[4] Although the City points to cases excluding fighting words, disorderly conduct, and true threats from First Amendment protection, Opp. 9, those categories are not in the challenged ordinance. Rather, just as in *Hill*, Or. 1925 "is not narrowly tailored to prohibit only disorderly conduct or fighting words," instead "provid[ing] the police with unfettered discretion to arrest individuals for words *or conduct* that annoy or offend them." 482 U.S. at 465 (emphasis added).[5]

Nor do the City's cited cases support its argument that the EOC Provision is not unconstitutionally vague. *See* Opp. 10; *U.S. v. Brice*, 926 F.2d 925, 930 (9th Cir. 1991) (no dispute that defendant's conduct "impeded" and "disrupted" within the meaning of 41 C.F.R. § 101-20.305); *Martinelli v. City of Beaumont*, 820 F.2d 1491, 1494 (9th Cir. 1987) (Cal. Penal Code § 148 defined the intent and conduct subject to the provision).[6] Beyond its conclusory statement that the challenged prohibitions are "objectively anchored" in "specific actions," the City argues only that the Ordinance's "requirement that the official be 'engaged in the performance of their respective duties'" does not "grant[] unlimited discretion" in enforcement. Opp. 10. That is no meaningful limitation. Indeed, the ordinance in *Hill* likewise applied to "a policeman in the execution of his duty," yet was found to "accord[] the police unconstitutional discretion in enforcement." 482 U.S. at 461, 466.

## VI.   THE CHALLENGED PROVISIONS ARE PREEMPTED

The Challenged Provisions are clearly preempted by SB 946 and 972 because they regulate an area entirely occupied by California law *and* contradict California statutes. Mot. at 22-24 (Dkt. 96).

---

[4] If anything, the EOC Provision sweeps more broadly than the ordinance struck down in *Hill*, because it (i) targets interference "in any way," without limitation and (ii) applies not just to police officers but to any City official or agent, including the private contractor 4LEAF. Or. 1925, FMC § 1-14.
[5] The City's attempt to characterize the EOC Provision as primarily restricting conduct fails because the First Amendment protects expressive conduct. *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).
[6] Pursuant to Ninth Circuit Rule 36-3, this Court should disregard the City's citation to *United States v. Murphy-Ellis*, 47 F. App'x 488, 489 (9th Cir. 2002), a pre-2007 unpublished opinion not subject to an enumerated exception.

Contrary to Defendants' contention, "[t]here is no presumption against preemption when a local ordinance regulates in an area historically dominated by state regulation." *People v. Nguyen*, 222 Cal. App. 4th 1168, 1187 (2014). SB 946 made the Legislature's intent clear: municipalities "shall not regulate sidewalk vendors except in accordance with" its provisions. Gov. Code § 51038(a). In SB 972, the Legislature declared its intent "to occupy the whole field of health and sanitation standards for retail food facilities," including sidewalk vendors. *Id.* § 113705; *see* Sen. Durazo Decl. ¶¶ 9-11, 18-26. The Legislature intended to make sidewalk vending a matter of state concern, and thus there is not a presumption against preemption. *Nguyen*, 222 Cal.App. 4th at 1187, citing *State Building & Construction Trades Council of California v. City of Vista*, 54 Cal.4th 547, 582 (2012) ("'When there is a doubt as to whether an attempted regulation relates to a municipal or to a state matter, or if it be the mixed concern of both, the doubt must be resolved in favor of the legislative authority of the state.'").

*Big Creek Lumber Co. v. County of Santa Cruz*, the case relied upon by the City, is inapposite because it identifies land use regulation—not at issue here—as "an area in which a local regulation is entitled to a presumption against preemption." 38 Cal.4th 1139, 1149 (2006) (noting that local governments have "traditionally exercised control" over particular land uses).

Nothing Defendants have argued changes the conclusion that the seizure provisions conflict with Gov. Code § 51039. That section limits enforcement mechanisms for sidewalk vending to administrative citations and progressive fines. The Fontana seizure provisions directly conflict with state law by authorizing immediate seizure and impoundment— remedies the Legislature expressly chose not to authorize.

Further, the City's argument that the EOC provision is "generally applicable" and not "specific to vending" ignores the undisputed fact that the provision was enacted as part of an ordinance *specifically targeting* sidewalk vending enforcement. (*See* Dkt. 65-4 at p. 2.) The City's attempt to manufacture a distinction with the holding in *Mustaqeem v. City of San Diego*, 118 Cal. App. 5th 22 (2026), that impoundment provisions are preempted by Gov.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [96]

Code § 51039, is unpersuasive. The City has provided no evidence that its impoundment scheme is *related to* a violation of a nuisance law, or that it has ever cited Plaintiffs or any other sidewalk vendors with violations of nuisance laws. The impoundment provisions are contained *within* the City's ordinances about sidewalk vending (section 15), not its ordinances about nuisance (section 16). On their face, the challenged provisions punish vendors for alleged violations of the City's sidewalk vending laws: "Any city official, including a code compliance officer or inspector… may impound a sidewalk vendor's vending cart, equipment, food, utensils, goods, [etc.] used in violation of this article…." (Or. 1925, § 15-829.) There is no reference to nuisance laws—these provisions authorize impoundment for violating the sidewalk vending regulations. This is precisely what the Court of Appeal in *Mustaqeem* found preempted: "we see no indication that the Legislature intended to permit local authorities to impound vendor equipment and/or goods based solely on a violation of local health, safety, or welfare ordinances…. Rather, the Legislature was quite clear that violations of a local authority's sidewalk vending regulations are punishable *only* by the enumerated monetary fines or the rescission of the vendor's permit." 118 Cal. App. at 40. For the same reason, Section 829(h)'s imposition of impound fees are punishment. The City fails to cite any contrary authority.

Contrary to state law, the challenged permit provisions are neither "based on *direct* and *objective* (i.e., known or observable) concerns resulting from vendor's presence or conduct" nor "adequately explained" by the City. *Mustaqeem,* 118 Cal. App. 5th at 46 (emphasis in original); *see* SAC ¶¶ 142–51. In *Mustaqeem*, the Court of Appeal found that San Diego had not established that its attempted ban of vendors around a stadium was justified when it stated only that the area around the stadium was "busy" during a game or event. *Id.* at 47 ("The record before us does not currently establish [that the restrictions are warranted].").  Here, the City made no findings, produced no evidence, and cited no data showing that the permit provisions were "directly related to objective health, safety, or welfare concerns." SAC ¶¶ 144, 146; Cal. Gov't Code § 51038(b)-(c). Instead, the City relied only on boilerplate assertions that the permit provisions were consistent with SB 946. SAC

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [96]

¶¶ 144, 146. Lastly, the City's reliance on *Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012) is misplaced. *Kaahumanu* addressed the distinct question—irrelevant to the preemption context—of whether state insurance and indemnification requirements were "narrowly tailored to serve a significant governmental interest" such that restrictions on protected speech were justified. *Id.* at 803.

## VII.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM & THE BALANCE OF HARDSHIPS WEIGHS IN FAVOR OF AN INJUNCTION

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The City ignores this controlling authority, arguing that "the only claims harm to Plaintiffs is monetary." (Dkt. 101 at 21.) This is patently false. The chilling of Plaintiffs' speech, alone, as well as their other constitutional injuries, justifies injunctive relief.

Any delay by Plaintiffs in seeking this injunction is irrelevant, particularly where, as here, there are "ongoing, worsening injuries." *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) ("it is unlikely that Arc's putative delay is especially probative here. Usually, delay is but a single factor to consider in evaluating irreparable injury; courts are 'loath to withhold relief solely on that ground.'"). *See* A.M. Decl., ¶ 11; A.P. Decl., ¶ 12. ICIJ's core mission remains compromised so long as the City and 4LEAF's unlawful enforcement continues to drive from the City the populations the organization exists to serve. Hernandez Decl. ¶¶ 41-44, 50. The individual Plaintiffs and other ICIJ members also continue to be deprived of their constitutional and economic rights. The harm they are experiencing, including degradation and lost income, especially in this climate of increased immigration enforcement is intensifying as the Defendants' unlawful practices remain in effect. A.M. Decl., ¶ 11 (Dkt. 96-9); A.P. Decl., ¶ 12 (Dkt. 96-10).

The government cannot be harmed by an injunction against unlawful ordinances, and 4LEAF would not be prejudiced by an injunction against an unlawful contract. *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [96]

## VIII.  **<u>4LEAF IS A STATE ACTOR SUBJECT TO § 1983</u>**

4LEAF is unequivocally a state actor subject to § 1983. 4LEAF's conduct is "fairly attributable to the State," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), and exercised power "'possessed by virtue of state law and made possible only because [it] is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988); *see also Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 912 (9th Cir. 2021) ("[S]eizure of property is of course a core function of the sovereign.").

4LEAF argues Plaintiffs used only a "footnote" to address state action and improperly incorporated by reference. This mischaracterizes the record. Plaintiffs have extensively briefed this issue for the Court multiple times, including in the most recent opposition to 4LEAF's motion to dismiss, which will be heard on the same day as this Motion. (*See* Dkt. 80 at 13–20; Dkt. 102 at 10-17). Incorporation by reference of one's own prior briefing in the same case is permissible where the Court is familiar with the arguments. *See Bush v. Ibarra*, 785 F. Supp. 3d 744, 759, fn. 12 (E.D. Cal. 2025)

## IX.    **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request the Court issue Plaintiffs' requested preliminary injunction.

[SIGNATURE PAGE FOLLOWS]

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [96]

Dated: July 20, 2026

**PUBLIC COUNSEL**

By: */s/ Ritu Mahajan*
    Ritu Mahajan (SBN 252970)
    *rmahajan@publiccounsel.org*
    Mark Rosenbaum (SBN 59940)
    *mrosenbaum@publiccounsel.org*
    Amanda Mangaser Savage (SBN 325996)
    *asavage@publiccounsel.org*
    Cassidy J. Bennett (SBN 347811)
    *cbennett@publiccounsel.org*
    Elizabeth R. Brown (SBN 360601)
    *ebrown@publiccounsel.org*
    Jacob Maddox (SBN 354368)
    *jmaddox@publiccounsel.org*
    Brittnee Bui (SBN 333372)
    *bbui@publiccounsel.org*
    610 South Ardmore Avenue
    Los Angeles, CA 90005
    Telephone: 213.385.2977

Respectfully submitted,

**KING & SPALDING LLP**

By: */s/ Ariana E. Fuller*
    Ariana E. Fuller (SBN 301797)
    *afuller@kslaw.com*
    Arwen R. Johnson (SBN 247583)
    *arwen.johnson@kslaw.com*
    Jeanne A. Fugate (SBN 236341)
    *jfugate@kslaw.com*
    633 West Fifth Street, Suite 1600
    Los Angeles, CA 90071
    Telephone: 213.443.4355

**ARNOLD & PORTER LLP**

By: */s/ Matthew T. Heartney*
    Matthew T. Heartney (SBN 123516)
    *matthew.heartney@arnoldporter.com*
    Daniel Shimell (SBN 300931)
    *daniel.shimell@arnoldporter.com*
    Kathryn Campbell (SBN 350536)
    *katie.campbell@arnoldporter.com*
    Dania Qahoush (SBN 335202)
    *dania.qahoush@arnoldporter.com*
    777 South Figueroa Street, 44th Floor
    Los Angeles, CA 90017-5844
    Telephone: 213.243.4000

## SIGNATURE ATTESTATION

Pursuant to L.R. 5-4.3.4(a)(2)(i), the undersigned, counsel of record for Plaintiffs, hereby attests that all other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:    July 20, 2026

By: _____
    ARIANA E. FULLER

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [96]